**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAMON DEJESUS CEDENO, individually and on behalf of a class of all other persons similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-09987-JGK |
| ARGENT TRUST COMPANY, RYAN SASSON, DANIEL BLUMKIN, IAN BEHAR, DUKE ENTERPRISES LLC, TWIST FINANCIAL LLC, BLAISE INVESTMENTS LLC, and STRATEGIC FINANCIAL SOLUTIONS, LLC, | ECF Case |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**
**TO COMPEL INDIVIDUAL ARBITRATION AND STAY THE CASE**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

LEGAL FRAMEWORK ............................................................................................ 7

ARGUMENT .............................................................................................................. 8

   I.   PLAINTIFF SHOULD BE COMPELLED TO PURSUE ALL OF HIS
       CLAIMS VIA BINDING ARBITRATION. ..................................................... 8

       A.  The Plan Document Contains a Valid, Enforceable Arbitration
           Provision that Binds Plaintiff. .................................................................. 8

       B.  Plaintiff's Claims Fall Within the Scope of the Arbitration Procedure. .................. 10

          1.  Section 17.10 of the Plan Document is a "Broad" Arbitration
             Provision that "Justifies a Presumption of Arbitrability." ............................... 10

          2.  All of Plaintiff's Claims Fall Within the Plain Language of the
             Definition of "Covered Claim" in the Plan Document. ..................................... 11

       C.  The Second Circuit Recognizes that ERISA Claims are Arbitrable. ........................ 14

       D.  Plaintiff's Complaint Should Be Stayed While Any Arbitration Proceeds. ............. 14

   II.  PLAINTIFF'S CLAIMS MUST BE ARBITRATED ON AN INDIVIDUAL
       BASIS. ..................................................................................................... 15

       A.  The Enforceability of the Plan Document's Waiver Provision and
           502(a)(2) Remedy Provision is Non-Arbitrable. ...................................... 15

       B.  Waivers of Class or Representative Actions are Enforceable. ............................... 17

  III.  THE COURT SHOULD DIRECT PLAINTIFF TO PAY DEFENDANTS'
       ATTORNEYS' FEES AND COSTS INCURRED IN MOVING TO COMPEL
       ARBITRATION, AS PROVIDED UNDER THE PLAN DOCUMENT. ..................... 19

CONCLUSION .......................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*20/20 Commc'ns, Inc. v. Crawford,*
    930 F.3d 715 (5th Cir. 2019) .................................................................... 16

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.,*
    2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011), *aff'd*, 483 F. App'x 634 (2d Cir. 2012) ........... 20

*Amaro v. Continental Can Co.,*
    724 F.2d 747 (9th Cir. 1984) .................................................................... 9

*Aramony v. United Way Replacement Benefit Plan,*
    191 F.3d 140 (2d Cir. 1999) .................................................................... 11

*Arciniaga v. Gen. Motors Corp.,*
    460 F.3d 231 (2d Cir. 2006) .................................................................... 7

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011) ......................................................................... 7, 17

*Barreto v. Jec II, LLC,*
    2017 WL 3172827 (S.D.N.Y. July 25, 2017)........................................................ 21

*Bird v. Shearson Lehman/Am. Exp., Inc.,*
    926 F.2d 116 (2d Cir. 1991) .................................................................... 14

*Buckeye Check Cashing, Inc. v. Cardegna,*
    546 U.S. 440 (2006) ............................................................................ 7

*Catamaran Corp. v. Towncrest Pharmacy,*
    864 F.3d 966 (8th Cir. 2017) ................................................................... 16

*Collins & Aikman Prods. Co. v. Building Sys., Inc.,*
    58 F.3d 16 (2d Cir. 1995) ...................................................................... 7

*Cooper v. Ruane Cunniff & Goldfarb Inc.,*
    2021 WL 821390 (2d Cir. Mar. 4, 2021) ......................................................... 19

*Curtiss-Wright Corp. v. Schoonejongen,*
    514 U.S. 73 (1995) ............................................................................. 8

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985) ............................................................................ 7

*Del Webb Cmtys., Inc. v. Carlson*,
   817 F.3d 867 (4th Cir. 2016) .................................................................. 16

*Dorman v. Charles Schwab Corp.*,
   780 F. App'x 510 (9th Cir. 2019) ....................................................... 9, 18

*Dorman v. Charles Schwab Corp.*,
   934 F.3d 1107 (9th Cir. 2019) ................................................................. 9

*Emilio v. Sprint Spectrum L.P.*,
   2008 WL 5329955 (S.D.N.Y. Dec. 15, 2008) ....................................... 21

*Epic Sys. Corp.* v. *Lewis*,
   138 S. Ct. 1612 (2018) ........................................................................... 17

*Eshagh v. Terminix Int'l Co., L.P.*,
   588 F. App'x 703 (9th Cir. 2014) .......................................................... 16

*Estate of Kenyon v. L + M Healthcare Health Reimbursement Account*,
   404 F. Supp. 3d 627 (D. Conn. 2019) .................................................... 20

*Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*,
   2016 WL 297311 (S.D.N.Y. Jan. 21, 2016) ............................................ 3

*Hartford Aircraft Lodge 743, Int'l Ass'n of Machinists & Aerospace Workers,*
   *AFL-CIO v. Hamilton Sundstrand Corp.*,
   213 F. App'x 31 (2d Cir. 2007) ............................................................. 10

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
   571 U.S. 99 (2013) ................................................................................... 8

*Hensiek v. Bd. of Dirs. of Casino Queen Holding Co.*,
   2021 WL 267655 (S.D. Ill. Jan. 25, 2021) ............................................ 10

*Herrington v. Waterstone Mortg. Corp.*,
   907 F.3d 502 (7th Cir. 2018) ................................................................. 16

*JPay, Inc. v. Kobel*,
   904 F.3d 923 (11th Cir. 2018) ............................................................... 16

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015) .................................................................. 14

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) ..................................................................... 17, 18

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008) ............................................................................... 19

*McAllister v. Conn. Renaissance Inc.*,
   496 F. App'x 104 (2d Cir. 2012) .................................................................... 7, 14

*Mehler v. Terminix Int'l Co. L.P.*,
   205 F.3d 44 (2d Cir. 2000) ........................................................................... 11, 13

*Murphy v. Canadian Imperial Bank of Commerce*,
   709 F. Supp. 2d 242 (S.D.N.Y. 2010) .......................................................... 3, 14

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ............................................................................. 10

*Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*,
   734 F.3d 594 (6th Cir. 2013) ........................................................................... 16

*Rodriguez v. N.Y. Found. for Senior Citizens Home Attendant Servs., Inc.*,
   2016 WL 11707094 (S.D.N.Y. July 14, 2016) ................................................. 3, 7

*US Airways, Inc. v. McCutchen*,
   569 U.S. 88 (2013) ............................................................................................ 8

*Verdier v. Thalle Constr. Co.*,
   2017 WL 78512 (S.D.N.Y. Jan. 5, 2017), *aff'd*, 771 F. App'x 20 (2d Cir. 2019) ................... 11

## Statutes

9 U.S.C. § 1 ................................................................................................................ 2

9 U.S.C. § 3 .............................................................................................................. 14

9 U.S.C. § 4 ................................................................................................................ 7

29 U.S.C. § 1107(d)(6) ............................................................................................... 1

29 U.S.C. § 1109 ........................................................................................................ 5

29 U.S.C. § 1132 ........................................................................................................ 5

## INTRODUCTION

Plaintiff Ramon Dejesus Cedeno has filed a Complaint in the instant case, which he styles as a putative class action, against Defendants Argent Trust Company ("Argent"), Ryan Sasson, Daniel Blumkin, Ian Behar, Duke Enterprises LLC, Twist Financial LLC, Blaise Investments LLC, and Strategic Financial Solutions, LLC ("Strategic Financial").  Plaintiff alleges that Defendants are liable for various violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  The problem for Plaintiff is that none of his claims should be heard by this Court.

Plaintiff's claims are predicated on allegations that Argent caused the Strategic ESOP[1] (the "Plan") to overpay for shares of Strategic Family, Inc. ("Strategic Family")[2] stock purchased in 2017.  *See* Compl. ¶ 3.  At bottom, Plaintiff asserts that he is a participant in the Plan and, because of alleged misconduct, the Strategic Family shares in participants' Plan accounts (including his) are not worth as much as they should be.  All of Plaintiff's claims are premised on duties that arise under the Plan's governing plan document (the "Plan Document") and/or ERISA.  However, the same Plan Document under which Plaintiff claims he is entitled to

---

[1] The full name of the Plan is the "Strategic ESOP," and the term "ESOP" stands for "employee stock ownership plan," a type of employee benefit plan provided for under ERISA.  *See* 29 U.S.C. § 1107(d)(6) (defining "employee stock ownership plan" as "an individual account plan . . . which is a stock bonus plan which is qualified, or a stock bonus plan and money purchase plan both of which are qualified, under section 401 of title 26, and which is designed to invest primarily in qualifying employer securities").

[2] Strategic Family is a holding company, and its sole asset is 100% of the membership interests of Strategic Financial.

benefits contains provisions plainly mandating that Plan participants submit ERISA claims to individualized binding arbitration.

In seeking benefits granted to him through the Plan Document, but filing suit in federal court, Plaintiff attempts to cherry pick among Plan Document provisions.  The Court should apply the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and Second Circuit precedent to grant Defendants' motion to compel arbitration and stay the case, for the following reasons:

- Plaintiff has agreed to arbitrate under the terms of the Plan Document, because he has become and remained a participant under the Plan.

- All of Plaintiff's claims are "Covered Claims" as that term is defined in the Plan Document, and thus all fall within the scope of its arbitration provisions.

- All of Plaintiff's claims arise under ERISA, and the Second Circuit has held that ERISA claims are arbitrable.

- The case should be stayed because all of Plaintiff's claims must be arbitrated per the Plan Document.

Moreover, Defendants ask the Court to award the following relief, as provided under the Plan Document:

- Direct that any arbitration Plaintiff may pursue shall be on an individual basis, rather than in a representative capacity or class, collective, or group basis.

- Direct Plaintiff to reimburse Defendants for attorneys' fees, costs, and expenses that Defendants incurred in moving to compel arbitration.  Defendants' counsel notified Plaintiff on February 2, 2021 of the Plan Document's arbitration provisions and demanded that Plaintiff dismiss his Complaint voluntarily. Plaintiff thus far has refused, and the Plan Document provides for reimbursement

of a party's fees and expenses incurred in enforcing the Plan Document's arbitration provisions.

## FACTUAL BACKGROUND[3]

Plaintiff was a Senior Customer Service Representative at Strategic Financial from March 21, 2016 until April 2019.  Compl. ¶ 18.  He alleges that he "is and has been a Plan participant . . . since the adoption of the Plan effective on May 1, 2017" and he is "vested in shares of Strategic Family in his Plan account."  *Id.*

Strategic Financial established the Plan effective May 1, 2017.  Compl. ¶ 5.  The Plan's governing Plan Document[4] that was adopted at the time, and continues to be in effect, provides:

---

[3] The following background is drawn solely from the unproven allegations in the Complaint.  At this time, Defendants do not admit that any allegation in the Complaint is true or correct.

[4] Here, Plaintiff's Complaint expressly references the Plan Document and Trust Agreement, and thus they are appropriate to consider on a motion to compel.  *See* Compl. ¶¶ 5, 84-86, 130; *see also Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-4410, 2016 WL 297311, at *3 (S.D.N.Y. Jan. 21, 2016) ("In deciding a motion to stay or dismiss an action pending arbitration, . . . the Court may review and consider documents referenced in the complaint . . . ." (internal quotation marks and citations omitted)).  Moreover, for purposes of determining arbitrability the Court may consider the Plan Document, as well as other documents that Defendants submit in support of their Motion.  *See, e.g.*, *Murphy v. Canadian Imperial Bank of Commerce*, 709 F. Supp. 2d 242, 244 n.2 (S.D.N.Y. 2010) (noting that "a court is permitted to consider documents outside the pleadings for the purposes of determining the arbitrability of a dispute"); *Rodriguez v. N.Y. Found. for Senior Citizens Home Attendant Servs., Inc.*, No. 15-CV-9817 (VEC), 2016

(a)      As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant or Beneficiary receiving any contributions to his Accounts, or (iii) any Employee, Participant or Beneficiary receiving any benefit under the Plan, such Employee, Participant, or Beneficiary shall be bound by the provisions of this Section 17.10 (the "Arbitration Procedure") to resolve all Covered Claims (as defined in Section 17.10(b)).

(b)      Any claim by a Claimant (i) that arises out of, concerns or relates to the Plan or the Trust, including without limitation, any claim for benefits, (ii) asserting a breach of, or failure to follow, the Plan or Trust; or (iii) asserting a breach of, or failure to follow, any provision of ERISA or the [Internal Revenue] Code, including without limitation claims for breach of fiduciary duty, ERISA section 510 claims, and claims for failure to provide in a timely manner notices or information required by ERISA or the Code (collectively, "Covered Claims"), shall be settled by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes (the "Employment Dispute Rules") of the American Arbitration Association ("AAA") then in effect.

Plan Document, Section 17.10(a), (b), attached hereto as Exhibit A to the Declaration of David H. Williams (the "Williams Declaration").

The Plan Document defines "Claimant" as "a Participant, Beneficiary or any other person who believes he may be entitled to benefits under the Plan." Plan Document, Section 17.09(a). The Plan Document further provides that "each Employee who as of December 31, 2017 had attained age 21 and was employed by an Employer shall become a Participant as of the later of his date of employment or May l, 2017." Plan Document, Section 2.01(a).

The Plan Document contains at Section 17.10(f) a waiver of the right in arbitration to bring any representative, class, collective, or group action (the "Waiver Provision"), which provides:

All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each

WL 11707094, at *1 n.1 (S.D.N.Y. July 14, 2016) ("In order to determine the arbitrability of the dispute, the Court has considered the 2001 CBA and the 2015 MOA, even though they were not incorporated by reference or attached to the Second Amended Complaint.").

> arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy that has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant.

Plan Document, Section 17.10(f).  In addition, the Plan Document includes at Section 17.10(g) a provision that affects what relief a Claimant may obtain under ERISA section 502(a)(2)[5] (the "502(a)(2) Remedy Provision"), which provides:

> If a Covered Claim is brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely for the benefit of the Claimant's Accounts, or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant.

---

[5] Provisions under section 502 of ERISA are codified at 29 U.S.C. § 1132.  Pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2): "A civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Further, 29 U.S.C. § 1109 provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."  Plaintiff seeks relief under 29 U.S.C. § 1109 in Counts I, II, and III of his Complaint. *See* Compl. ¶¶ 97-98, 103-04, 112-13.

Plan Document, Section 17.10(g).

The Plan Document provides generally that questions of arbitrability are reserved to the arbitrator, but that the applicability and enforceability of the Waiver Provision and 502(a)(2) Remedy Provision are for the Court to decide, not subject to arbitration: "Except as to the applicability and enforceability of the requirements of Sections 17.10(f) and 17.10(g), the arbitrator(s) shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to the Arbitration Procedure."  Plan Document, Section 17.10(h).

The Plan Document also provides that "[t]he Arbitration Procedure shall apply to all Covered Claims, whether asserted solely against one or more of the Plan's fiduciaries or against the Employer or any other non-fiduciary (e.g., a Plan service provider)."  Plan Document, Section 17.10(q).  Similarly, the Strategic Employee Stock Ownership Trust (the "Trust Agreement") under which Argent was engaged provides:

> **Mandatory and Binding Arbitration of Participant and Beneficiary Claims**. Any Covered Claim brought by a Participant, Beneficiary or any other person who believes he may be entitled to benefits under the Plan shall be settled by arbitration in accordance with Section 17.10 of the Plan.

Trust Agreement, attached hereto as Exhibit B to the Williams Declaration, Section 4.4.  Argent is a signatory to the Trust Agreement, in addition to Strategic Financial.  Trust Agreement, pp. 17-18.

Plaintiff, by his admission, "is and has been a Plan participant" since the Plan was first adopted effective May 1, 2017.  *See* Compl. ¶ 18.  He nonetheless seeks to circumvent the Plan Document's Arbitration Procedure by filing a putative class action ERISA breach of fiduciary duty lawsuit against Defendants.  Defendants' counsel have written Plaintiff's counsel to demand that he dismiss this lawsuit voluntarily given the arbitration provisions and Waiver Provision, *see* Declaration of Lars C. Golumbic ("Golumbic Declaration"), Exhibit A, but Plaintiff has refused

to do so.  Under the express provisions of the governing Plan Document, however, Plaintiff is required to pursue such claims, if at all, solely on an individual basis via binding arbitration.  The Court should therefore compel Plaintiff to arbitrate his claims and stay this case in the meantime.

## LEGAL FRAMEWORK

The FAA was designed to "ensure judicial enforcement of privately made agreements to arbitrate."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985).  The Supreme Court has observed that the FAA "embod[ies] [a] national policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (second alteration in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).  Similarly, the Second Circuit has noted that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the Second Circuit has] often and emphatically applied."  *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006).  This policy "requires [the Court] to construe arbitration clauses as broadly as possible."  *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995).  To that end, "to the extent there is doubt about the scope of arbitrable issues, the Court must resolve that doubt in favor of arbitration."  *Rodriguez*, 2016 WL 11707094, at *2.

Pursuant Section 4 of the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The Second Circuit provides that courts should conduct four inquiries in evaluating a motion to compel arbitration: "(1) whether the parties agreed to arbitrate; (2) the scope [of] the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration."  *McAllister v. Conn. Renaissance Inc.*, 496 F. App'x 104, 106 (2d Cir. 2012).  As discussed

further below, each of these inquiries weighs clearly in favor of a decision to stay this case and compel Plaintiff to arbitrate his claims pursuant to the procedures required by the Plan Document.

## ARGUMENT

### I.   PLAINTIFF SHOULD BE COMPELLED TO PURSUE ALL OF HIS CLAIMS VIA BINDING ARBITRATION.

#### A.   The Plan Document Contains a Valid, Enforceable Arbitration Provision that Binds Plaintiff.

The Supreme Court has recognized that ERISA directs courts to enforce plan documents as written.  *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013).  Moreover, employers have "large leeway to design [employee benefit plans] as they see fit."  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013).  The written plan document binds participants, beneficiaries, and employers and governs claims made under the plan.  *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (holding that ERISA's statutory scheme is "built around reliance on the face of written plan documents").

The Plan Document became effective on May 1, 2017 and, since its adoption, has included a provision that, by its terms, requires Plaintiff to arbitrate "Covered Claims":

> (a)     As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant or Beneficiary receiving any contributions to his Accounts, or (iii) any Employee, Participant or Beneficiary receiving any benefit under the Plan, such Employee, Participant, or Beneficiary shall be bound by the provisions of this Section 17.10 (the "Arbitration Procedure") to resolve all Covered Claims (as defined in Section 17.10(b)).

Plan Document, Section 17.10(a).  Accordingly, the first question before the Court is whether the arbitration provisions in Section 17.10 of the Plan Document are binding on Plaintiff.  They are.

In *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 512 (9th Cir. 2019) (*Dorman II*),[6] the appeals court reversed the district court's refusal to enforce a binding arbitration provision contained in the plan document of a defined contribution 401(k) retirement plan. There, as here, the plaintiff (a former employee) brought ERISA claims for breach of fiduciary duty.  In holding that both the plan arbitration provision and the class action waiver provision were enforceable and binding on the plaintiff, the court first noted that, "[a]s every circuit to consider the question has held, ERISA contains no congressional command against arbitration, therefore an agreement to arbitrate ERISA claims is generally enforceable."  *Id.* at 513-14 (citations omitted).  In concluding that "[t]he Plan and [the plaintiff] both agreed to arbitration on an individual basis," the Court held: "A plan participant agrees to be bound by a provision in the plan document when he participates in the plan while the provision is in effect."  *Id.* at 512-14 (emphasis added) (citation omitted) (noting as well that "the Plan expressly agreed in the Plan document that all ERISA claims should be arbitrated").

Plaintiff alleges that he "is and has been a Plan participant . . . since the adoption of the Plan effective on May 1, 2017."  Compl. ¶ 18.  Consequently, he has agreed to be bound by

---

[6] *Dorman II* represents the second of two concurrently-issued opinions in that case addressing whether the district court erred in refusing to enforce the arbitration provision contained in the governing Schwab Retirement Savings and Investment Plan.  In *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) (known as *Dorman I*), the Court not only reversed the district court but also relied on intervening Supreme Court case law to overrule its prior precedent, *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir. 1984), holding that ERISA claims were not arbitrable.

Section 17.10 of the Plan Document by virtue of his being a participant for the entire time that the section has been in effect.  Here, there is no question but that Plaintiff is bound by the terms of the Plan that were in effect during the entire period of his participation.  *Cf., e.g.*, *Hensiek v. Bd. of Dirs. of Casino Queen Holding Co.*, No. 3:20-CV-377-DWD, 2021 WL 267655, at *6 (S.D. Ill. Jan. 25, 2021) (denying motion to compel arbitration where plan's arbitration provisions were added by amendment after the events giving rise to the plaintiffs' ERISA claims took place), *appeal docketed*, Nos. 21-1175, 21-1176, 21-1177 (7th Cir. Jan. 29, 2021). The Court should conclude that Section 17.10 is valid and binds Plaintiff with respect to the forum in which he can bring his "Covered Claims."

      **B.**     **Plaintiff's Claims Fall Within the Scope of the Arbitration Procedure.**

          **1.**   **Section 17.10 of the Plan Document is a "Broad" Arbitration Provision that "Justifies a Presumption of Arbitrability."**

As to the question of whether Plaintiff's claims fall within the scope of Section 17.10 of the Plan Document, the Second Circuit provides that the Court must first determine whether the arbitration clause at issue is a "broad clause" or a "narrow clause."  *See Hartford Aircraft Lodge 743, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Hamilton Sundstrand Corp.*, 213 F. App'x 31, 32 (2d Cir. 2007) ("At the outset, we ordinarily decide whether the clause is 'broad' or 'narrow.'").  Further, "the existence of any broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and "[d]oubts should be resolved in favor of coverage."  *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004).

In analyzing a contract clause that provided for "arbitration of 'any controversy or claim between [the parties] arising out of or relating to' the Agreement," the Second Circuit concluded

that the clause was "classically broad" and that it was "precisely the kind of broad arbitration

clause that justifies a presumption of arbitrability." *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d

44, 49 (2d Cir. 2000) (alteration in original).  Similarly, the Plan Document broadly defines a

"Covered Claim," in relevant part, as "[a]ny claim by a Claimant . . . asserting a breach of, or

failure to follow, any provision of ERISA or the [Internal Revenue] Code, including without

limitation claims for breach of fiduciary duty."  Plan Document, Section 17.10(b) (emphasis

added).  The Plan Document's arbitration provision covers all claims under the two statutes

(ERISA and the Code) that could potentially provide for liability with respect to an ERISA-

governed plan; therefore, the Court should find that Section 17.10 is a "classically broad"

provision that supports a "presumption of arbitrability."

### 2. All of Plaintiff's Claims Fall Within the Plain Language of the Definition of "Covered Claim" in the Plan Document.

Even if the Court did not find that Section 17.10 is a "broad" provision, and thus entitled

to a presumption of arbitrability, the plain language[7] of the Plan Document evinces that each of

Plaintiff's claims fall demonstrably within the scope of the "Covered Claim" definition in the

Plan Document, as explained below:

***First***, Plaintiff includes the following allegations in Count I: (1) "Argent caused the Plan

to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the

ESOP Transaction," Compl. ¶ 92; (2) "Argent received consideration for its own personal

---

[7] *See Verdier v. Thalle Constr. Co.*, No. 14-CV-4436 (NSR), 2017 WL 78512, at *5 (S.D.N.Y.
Jan. 5, 2017), *aff'd*, 771 F. App'x 20 (2d Cir. 2019) ("Generally, 'unambiguous language in an
ERISA plan must be interpreted and enforced in accordance with its plain meaning.") (quoting
*Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 149 (2d Cir. 1999)).

account from Strategic—fees and an indemnification agreement—as Trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3)," Compl. ¶ 95; and (3) "Argent caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction," Compl. ¶ 96.  All of Plaintiff's allegations in Count I describe "Covered Claims" because Plaintiff is "asserting a breach of, or failure to follow, any provision of ERISA"—namely, 29 U.S.C. § 1106(a), (b), and (b)(3).  Plan Document, Section 17.10(b).

*Second*, Plaintiff alleges in Count II that, for various reasons, "Argent breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1)."  Compl. ¶ 108.  Plaintiff's claims in Count II fall within the Plan Document's definition of "Covered Claims" because they are "claims for breach of fiduciary duty" under ERISA.  Plan Document, Section 17.10(b).

*Third*, in Count III Plaintiff alleges that an indemnification provision in an engagement agreement between Argent and Strategic Financial violates ERISA section 410(a), 29 U.S.C. § 1110(a), Compl. ¶¶ 111, 114-15, and "[t]o the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A)."  Compl. ¶ 116.  Again, these claims fall within the scope of the "Covered Claims" definition because Plaintiff is alleging that Argent violated sections of ERISA and breached fiduciary duties under the statute.  Plan Document, Section 17.10(b).

**Fourth**, Plaintiff pleads Count IV against the "Shareholder Defendants," which Plaintiff defines as "selling shareholders Ryan Sasson, Daniel Blumkin, and Ian Behar and their wholly owned limited liability companies Duke Enterprises LLC, Twist Financial LLC, and Blaise Investments LLC."  Compl. ¶ 1.  Plaintiff alleges that "[a]s parties in interest, the Shareholder Defendants are liable for violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D)."  Compl. ¶ 124.  Because Plaintiff is undisputedly "asserting a breach of, or failure to follow, any provision of ERISA" in Count IV, the count is a "Covered Claim" under Section 17.10.  Plan Document, Section 17.10(b).

**Fifth**, Plaintiff names Strategic Financial as the sole defendant under Count V, in which Plaintiff alleges that Strategic Financial should be liable for statutory penalties under ERISA for failing to respond to "a written request for documents required to be provided under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4)."  Compl. ¶¶ 131-35.  The definition of "Covered Claims" in Section 17.10 of the Plan Document includes "claims for failure to provide in a timely manner notices or information required by ERISA."  Plan Document, Section 17.10(b) (emphasis added). Accordingly, Count V of the Complaint is also subject to arbitration under the Plan Document.

Because the Plan Document contains "broad" arbitration provisions (similar to the provision that, as noted above, was enforced in *Mehler*, 205 F.3d at 49), the Plan Document's provisions should be entitled to a presumption that all of Plaintiff's claims are arbitrable. However, even absent a presumption, each of Plaintiff's claims fall within the plain language of the definition of "Covered Claims" in the Plan Document.  Accordingly, the Court should conclude that Plaintiff's claims fall within the scope of the Plan Document's arbitration provisions and should compel Plaintiff to arbitrate his claims.

13

C.    **The Second Circuit Recognizes that ERISA Claims are Arbitrable.**

Under Second Circuit precedent, the Court should evaluate next "whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable." *McAllister*, 496 F. App'x at 106.  Each of Plaintiff's counts alleges that one or more of the Defendants violated specified provisions of ERISA.  *See* Compl. ¶¶ 87-135.

The Second Circuit has held that "statutory claims arising under ERISA may be the subject of compulsory arbitration." *Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 122 (2d Cir. 1991).  In its analysis, the Court observed that "[a]ppellees have not sustained their burden of demonstrating that the text, legislative history, or underlying purposes of ERISA indicate that Congress intended to preclude a waiver of a judicial forum for claims arising under it." *Id.*; *see also Murphy*, 709 F. Supp. 2d at 247 (citing *Bird* and noting that "[t]he Second Circuit has held that Congress has not evinced an intention to preclude a waiver of judicial remedies for ERISA claims").  Given that Plaintiff's claims all allege violations of ERISA, and Congress did not intend to prohibit such claims from being arbitrated (per the Second Circuit), the third inquiry supports enforcing the Plan Document's arbitration provisions.

D.    **Plaintiff's Complaint Should Be Stayed While Any Arbitration Proceeds.**

Section 3 of the FAA directs courts to stay proceedings where, as here, alleged claims are arbitrable and a party has asked for a stay:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Further, the Second Circuit has concluded that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been

referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).

Here, all claims in Plaintiff's Complaint must be arbitrated under the Plan Document, for reasons discussed in Sections I.A and I.B *supra*.  Further, Defendants are requesting that the Court stay this proceeding in favor of arbitration, pursuant to Section 3 of the FAA. Accordingly, the Court should stay this case for Plaintiff to pursue his claims pursuant to the Plan Document's arbitration procedure.

## II.    PLAINTIFF'S CLAIMS MUST BE ARBITRATED ON AN INDIVIDUAL BASIS.

### A.    The Enforceability of the Plan Document's Waiver Provision and 502(a)(2) Remedy Provision is Non-Arbitrable.

The Plan Document contains a Waiver Provision, which provides:

<u>All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis</u>.  Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy that has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant.

Plan Document, Section 17.10(f) (emphasis added).

Further, the 502(a)(2) Remedy Provision in the Plan Document provides:

If a Covered Claim is brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely for the benefit of the Claimant's Accounts, or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant.

Plan Document, Section 17.10(g).

If Plaintiff were to contest that either of these provisions applied to any arbitration proceeding he might bring, the Plan Document specifies that this Court (rather than the arbitrator) should resolve that issue.

The Plan Document lays out the extent of authority provided to the arbitrator as such:

> [T]he arbitrator(s) shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to the Arbitration Procedure, including as to the jurisdiction of the arbitrator(s) or relating to the existence, scope, validity, enforceability or performance of the Arbitration Procedure or any of its provisions.

Plan Document, Section 17.10(h).  However, the Plan Document expressly carves out from the arbitrator's authority questions related to "the applicability and enforceability of the requirements of Sections 17.10(f) and 17.10(g)."  *See id.*  In other words, the Plan Document leaves for the Court to decide questions regarding the applicability and enforceability of the Waiver Provision and 502(a)(2) Remedy Provision.  *See, e.g.*, *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 718-19 (5th Cir. 2019) (holding that "class arbitrability is a gateway issue for courts, not arbitrators, to decide, absent clear and unmistakable language to the contrary").[8]

---

[8] It does not appear that the Second Circuit has directly addressed the question of whether, absent "clear and unmistakable language" to the contrary, class arbitrability is a "gateway" issue for the Court rather than an arbitrator.  But in reaching its holding in *20/20 Communications, Inc.* the Fifth Circuit noted that at least six other circuits had "concluded that class arbitrability is a gateway issue."  *See 20/20 Commc'ns, Inc.*, 930 F.3d at 718; *see also Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 877 (4th Cir. 2016); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013); *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 506-07 (7th Cir. 2018); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th

In addition, the Waiver Provision and 502(a)(2) Remedy Provision are "material and non-severable" terms of the overall Arbitration Procedure:

> The requirements of Sections 17.10(f) and 17.10(g) shall govern irrespective of any AAA rule or decision to the contrary and <u>shall be a material and non-severable term of the Arbitration Procedure</u>.  If an arbitrator(s) or a court of competent jurisdiction finds these requirements to be unenforceable or invalid, then the entire Arbitration Procedure shall be rendered null and void in all respects.

Plan Document, Section 17.10(h) (emphasis added).  Thus, the Court should compel arbitration on an individual, non-class, and non-representative basis.

### B.  Waivers of Class or Representative Actions are Enforceable.

The Supreme Court has made clear that provisions waiving the right to proceed on a non-individualized basis are enforceable.  *See Epic Sys. Corp.* v. *Lewis*, 138 S. Ct. 1612, 1619 (2018) ("In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."); *AT&T Mobility LLC*, 563 U.S. at 344 (invalidating California state law that required availability of class-wide arbitration and enforcing class arbitration waiver in arbitration agreement).

The Supreme Court has taken this view because class or collective arbitration fundamentally changes the nature of the "traditional individualized arbitration" envisioned by the FAA.  *Epic Sys. Corp.*, 138 S. Ct. at 1623.  In *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), the plaintiff employee sought to bring a putative class action against his employer for data breach despite the fact he had signed an employment agreement that contained a binding arbitration provision.  *Id.* at 1413.  The employer moved to compel arbitration on an individual

---

Cir. 2017); *Eshagh v. Terminix Int'l Co., L.P.*, 588 F. App'x 703, 704 (9th Cir. 2014) (unpublished); *JPay, Inc. v. Kobel*, 904 F.3d 923, 935-36 (11th Cir. 2018).

basis, although the language in the employment contract was ambiguous as to whether class

action arbitration was required or permitted.  *Id.*

In holding that state contract law regarding ambiguity cannot be used as justification for

compelling arbitration on a class-wide basis, the Court noted how class-wide arbitration runs

counter to the FAA:

> It is important to recognize the "fundamental" difference between class arbitration
> and the individualized form of arbitration envisioned by the FAA.  In individual
> arbitration, 'parties forgo the procedural rigor and appellate review of the courts in
> order to realize the benefits of private dispute resolution: lower costs, greater
> efficiency and speed, and the ability to choose expert adjudicators to resolve
> specialized disputes.'  Class arbitration lacks those benefits.  It 'sacrifices the
> principal advantage of arbitration—its informality—and makes the process slower,
> more costly, and more likely to generate procedural morass than final judgment.'
> Indeed, we recognized just last Term that with class arbitration 'the virtues
> Congress originally saw in arbitration, its speed and simplicity and
> inexpensiveness, would be shorn away and arbitration would wind up looking like
> the litigation it was meant to displace.'  Class arbitration not only 'introduces new
> risks and costs for both sides,' it also raises serious due process concerns by
> adjudicating the rights of absent members of the plaintiff class—again, with only
> limited judicial review.

*Id.* at 1416 (citations and alterations omitted).

In this case, there is no ambiguity.  The Waiver Provision in Section 17.10(f) of the Plan

Document expressly provides that: "All Covered Claims must be brought solely in the

Claimant's individual capacity and not in a representative capacity or on a class, collective, or

group basis."  *See Dorman II*, 780 F. App'x at 514 ("Because 'arbitration is a matter of contract,'

the Provision's waiver of class-wide and collective arbitration must be enforced according to its

terms, and the arbitration must be conducted on an individual basis.") (citation omitted).  In

addition, enforcing the 502(a)(2) Remedy Provision in Section 17.10(g) of the Plan Document

(which prohibits the Claimant from asking for damages on behalf of the Plan or any participant

other than himself) would not affect the remedy that Plaintiff could personally achieve under

ERISA section 502(a)(2).  That is because whether Plaintiff proceeded in arbitration or federal

court, and assuming he prevailed on a breach of fiduciary duty claim under ERISA section 502(a)(2), he personally would recover an amount limited only to the adverse impact on his individual Plan account.  *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) ("[A]lthough § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.").[9]  Consequently, this Court should order that any arbitration Plaintiff pursues must be on an individual basis.

## III.    THE COURT SHOULD DIRECT PLAINTIFF TO PAY DEFENDANTS' ATTORNEYS' FEES AND COSTS INCURRED IN MOVING TO COMPEL ARBITRATION, AS PROVIDED UNDER THE PLAN DOCUMENT.

On February 2, 2021, Defendants' counsel wrote to Plaintiff's counsel to inform Plaintiff that all the claims in his Complaint were "Covered Claims," as defined under the Plan Document, meaning that he needed to arbitrate his claims rather than pursue litigation before this Court.  Golumbic Decl., Ex. A.  In addition, the same day Argent produced to Plaintiff's counsel

---

[9] The Second Circuit's decision in *Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 17-2805, 2021 WL 821390 (2d Cir. Mar. 4, 2021), is not to the contrary.  There the Court reversed a district court decision compelling arbitration because it concluded that ERISA claims fell outside the scope of an arbitration provision contained in a separate employment agreement signed by the plaintiff.  The Court speculated in dicta that there might possibly be tension between a class action waiver in an employment agreement and ERISA's remedial provisions.  The Court's holding and observation in dicta are distinguishable from the facts in this case, because, among other reasons, the arbitration provisions at issue here are contained within the ERISA Plan Document itself rather than in an employment agreement between Plaintiff and Strategic Financial.

copies of the Plan Document and Trust Agreement, which contain the binding arbitration

provisions that preclude Plaintiff's instant lawsuit.  Golumbic Decl., Ex. A.  In Defendants'

counsels' letter, they asked Plaintiff to dismiss his Complaint; otherwise, Defendants would

move to compel arbitration under the FAA.  Golumbic Decl., Ex. A.  To date, Plaintiff has

refused to dismiss his Complaint.

> Pursuant to the Plan Document:
>
> In the event a Claimant makes an unsuccessful challenge to the validity, enforceability or scope of the Arbitration Procedure in any court, the Claimant shall, to the maximum extent permitted by law, reimburse the defendants in that action for all attorneys' fees, costs, and expenses incurred by them in defending against the Claimant's unsuccessful court challenge.

Plan Document, Section 17.10(r) (emphasis added).  Here, Plaintiff's refusal to dismiss his

Complaint voluntarily necessitated Defendants' filing the instant Motion.  For the reasons stated

above, all of Plaintiff's claims are covered under binding, mandatory arbitration provisions in the

Plan Document.  Under the Plan Document, therefore, Defendants are entitled to reimbursement

of attorneys' fees, costs, and any other expenses incurred with respect to moving to compel

arbitration.

This Court has recognized that "parties typically must bear their own attorneys' fees

under the 'American Rule,'" but there are exceptions—including "where a statute or enforceable

contract provides for an award of attorneys' fees." *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,

No. 10 CIV. 1853 PGG, 2011 WL 1002439, at *2 (S.D.N.Y. Mar. 16, 2011), *aff'd*, 483 F. App'x

634 (2d Cir. 2012) (emphasis added).  Courts in the Second Circuit have observed that ERISA

benefit plans—like the Plan at issue—are similar to contracts.  *See Estate of Kenyon v. L + M*

*Healthcare Health Reimbursement Account*, 404 F. Supp. 3d 627, 632 (D. Conn. 2019) ("ERISA

plans are contracts, and courts use 'familiar rules of contract interpretation' when addressing an

ERISA plan").

This Court has enforced similar provisions providing for fees if a party is forced to move to compel arbitration.  In *Barreto v. Jec II, LLC*, the Court awarded attorneys' fees to defendants who successfully moved to compel arbitration because "the plain text of the arbitration agreements provide for attorneys' fees."  *Barreto v. Jec II, LLC*, No. 16-CV-9729 (KBF), 2017 WL 3172827, at *6 (S.D.N.Y. July 25, 2017).  After granting a plaintiff's motion to compel arbitration, this Court awarded attorneys' fees under a provision stating: "If any party files a judicial or administrative action asserting a claim that is subject to arbitration and another successfully stays such action or compels arbitration, the party filing that action must pay the other party's costs and expenses incurred in seeking such stay or compelling arbitration, including attorneys' fees."  *Emilio v. Sprint Spectrum L.P.*, No. 08 CIV. 7147 (BSJ), 2008 WL 5329955, at *1 n.2 (S.D.N.Y. Dec. 15, 2008).  Given that the arbitration provisions in Section 17.10 of the Plan Document are valid and binding on Plaintiff, for reasons discussed above, the Court should reach the same conclusion as in *Barreto* and *Emilio* and order Plaintiff to pay Defendants' attorneys' fees and costs.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court enter an order compelling arbitration of Plaintiff's claims, providing that such arbitration be held solely on an individual basis, staying this case, and directing Plaintiff to reimburse Defendants for reasonable attorneys' fees and costs incurred in seeking this relief.

Dated:     March 5, 2021                     GROOM LAW GROUP, CHARTERED

                                             By:   */s/ Lars C. Golumbic*

                                                    Michael J. Prame
                                                    Lars C. Golumbic (admitted *pro hac vice*)

Sarah M. Adams (admitted *pro hac vice*)
Paul J. Rinefierd (admitted *pro hac vice*)
1701 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 861-6633
Facsimile: (202) 659-4503
mprame@groom.com
lgolumbic@groom.com
sadams@groom.com
prinefierd@groom.com

*Attorneys for Defendant Argent Trust Company*

MORGAN, LEWIS & BOCKIUS LLP

By:   */s/ Jeremy P. Blumenfeld*

Jeremy P. Blumenfeld
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
jeremy.blumenfeld@morganlewis.com

Antonia Moran (admitted *pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5298
Facsimile: (215) 963-5001
toni.moran@morganlewis.com

*Attorneys for Defendants Ryan Sasson, Daniel Blumkin, Ian Behar, Duke Enterprises LLC, Twist Financial LLC, Blaise Investments LLC, & Strategic Financial Solutions, LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this memorandum of law complies with the word limits of Section II.D of the Individual Practices of Judge John G. Koeltl (the "Individual Practices") because the memorandum contains 6,858 words, excluding the parts of the memorandum exempted under Section II.D.  The undersigned certifies further that this memorandum complies with the formatting and type-face requirements of Section II.D of the Individual Practices.

*/s/ Lars C. Golumbic*

Lars C. Golumbic
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 861-6615
Facsimile: (202) 659-4503
lgolumbic@groom.com

*Attorney for Defendant Argent Trust Company*