# EXHIBIT A

**Strategic ESOP**

**Effective May 1, 2017**

ARGENT_CEDENO_0000001

# Table of Contents

**ARTICLE I. Background of Plan**....................................................................................... 1
Section 1.01   History and Purpose............................................................................. 1
Section 1.02   Effective Date and Plan Year. ............................................................. 1
Section 1.03   Trustee. ................................................................................................ 1
Section 1.04   Plan Administration............................................................................. 1
Section 1.05   Employers. ........................................................................................... 1
Section 1.06   Plan Supplements. ............................................................................... 2

**ARTICLE II. Eligibility and Participation** ................................................................. 3
Section 2.01   Eligibility to Participate. ..................................................................... 3
Section 2.02   Participation Not Guarantee of Employment. ..................................... 4
Section 2.03   Leased Employees................................................................................. 4
Section 2.04   Military Service. .................................................................................. 4
Section 2.05   Omission of Eligible Employee............................................................ 4
Section 2.06   Inclusion of Ineligible Person.............................................................. 4

**ARTICLE III. Service and Compensation** .................................................................. 5
Section 3.01   Years of Service.................................................................................... 5
Section 3.02   Hour of Service..................................................................................... 5
Section 3.03   One Year Break in Service. ................................................................. 6
Section 3.04   Compensation. ..................................................................................... 6

**ARTICLE IV. Employer Contributions**..................................................................... 8
Section 4.01   Employer Contributions. ..................................................................... 8
Section 4.02   S Corporation Requirements. .............................................................. 9
Section 4.03   Code Section 409(p) Transfers. ......................................................... 11
Section 4.04   No Participant Contributions.............................................................. 12
Section 4.05   Due Date for Employer Contributions................................................ 12
Section 4.06   Payment of Acquisition Loans. .......................................................... 12
Section 4.07   Employer's Share of Contributions. ................................................... 13

**ARTICLE V. Company Stock; Acquisition Loans**.................................................... 14
Section 5.01   Company Stock.................................................................................... 14
Section 5.02   Acquisition Loans................................................................................ 14

**ARTICLE VI. Investment of Employer Contributions**............................................. 16
Section 6.01   ESOP Stock Account Investments in Company Stock......................... 16
Section 6.02   Diversification of Investments in Company Stock............................... 16
Section 6.03   Reinvestment of ESOP Stock Account. .............................................. 17

**ARTICLE VII. Accounting**........................................................................................ 18
Section 7.01   Participants' Accounts......................................................................... 18
Section 7.02   Loan Suspense Account....................................................................... 18
Section 7.03   Accounting Dates. ............................................................................... 18

**ARGENT_CEDENO_0000002**

Section 7.04    Transfer of Shares.............................................................. 18
Section 7.05    Adjustment of Participants' Accounts................................. 19
Section 7.06    Dividends on Company Stock............................................. 20
Section 7.07    Investment of Cash in Trust................................................ 21
Section 7.08    Fair Market Value of Company Stock................................. 22
Section 7.09    Stock Dividends and Capital Reorganizations. .................. 22
Section 7.10    Prohibited Allocations....................................................... 22

**ARTICLE VIII. Contribution and Benefit Limitations**................... 23
Section 8.01    Contribution Limitations.................................................... 23
Section 8.02    Combining of Plans............................................................ 24
Section 8.03    Highly Compensated Employee. ....................................... 24

**ARTICLE IX. Settlement Date**........................................................ 26
Section 9.01    Settlement Date.................................................................. 26
Section 9.02    Transfer of Employment..................................................... 26

**ARTICLE X. Vesting, Forfeitures and Reinstatement** ................... 27
Section 10.01   Vesting in Benefits. ........................................................... 27
Section 10.02   Forfeitures.......................................................................... 28
Section 10.03   Restoration of Forfeitures.................................................. 28
Section 10.04   Participant Forfeiture Accounts......................................... 29

**ARTICLE XI. Distributions Following Settlement Date** ................ 30
Section 11.01   Manner of Distribution....................................................... 30
Section 11.02   Determination of Account Balances................................... 30
Section 11.03   Timing of Distributions. .................................................... 31
Section 11.04   Direct Rollovers................................................................. 33
Section 11.05   Designation of Beneficiary................................................. 34
Section 11.06   Rollover by Non-Spouse Beneficiary................................. 36
Section 11.07   Missing Participants or Beneficiaries ................................ 36
Section 11.08   Facility of Payment............................................................ 37

**ARTICLE XII. Rights, Restrictions, and Options on Company Stock** ...... 38
Section 12.01   Right of First Refusal. ....................................................... 38
Section 12.02   Put Option........................................................................ 39
Section 12.03   Share Legend; Other Restrictions...................................... 40
Section 12.04   Nonterminable Rights........................................................ 40

**ARTICLE XIII. Voting and Tendering of Company Stock** ............. 41
Section 13.01   Voting and Tendering........................................................ 41
Section 13.02   Allocated Shares................................................................ 41
Section 13.03   Voting of Company Stock................................................. 41
Section 13.04   Tendering of Company Stock............................................. 42
Section 13.05   Trustee Reliance on Information. ....................................... 42

ARGENT_CEDENO_0000003

**ARTICLE XIV. General Provisions** .......................................................................... 43

Section 14.01  Interests Not Transferable. ................................................................ 43
Section 14.02  Absence of Guaranty. ......................................................................... 43
Section 14.03  Litigation by Participants or Other Persons........................................ 43
Section 14.04  Evidence. ............................................................................................. 43
Section 14.05  Waiver of Notice. ................................................................................ 43
Section 14.06  Controlling Law. ................................................................................. 43
Section 14.07  Statutory References. .......................................................................... 43
Section 14.08  Severability. ........................................................................................ 44
Section 14.09  Additional Employers. ........................................................................ 44
Section 14.10  Action By Employers. ......................................................................... 44
Section 14.11  Gender and Number. ........................................................................... 44
Section 14.12  Indemnification. .................................................................................. 44
Section 14.13  Participant Notices and Elections. ..................................................... 44

**ARTICLE XV. Restrictions as to Reversion of Trust Assets to the Employers** .................. 45

Section 15.01  Employers' Right to Trust Assets. ...................................................... 45
Section 15.02  Reversion of Trust Assets to Employers. ........................................... 45

**ARTICLE XVI. Amendment and Termination**......................................................... 46

Section 16.01  Amendment. ........................................................................................ 46
Section 16.02  Termination. ........................................................................................ 46
Section 16.03  Nonforfeitability and Distribution on Termination. ........................... 46
Section 16.04  Plan Merger, Consolidation, Etc........................................................ 46

**ARTICLE XVII. Administration** ............................................................................... 47

Section 17.01  The Administrator................................................................................ 47
Section 17.02  General Powers, Rights, and Duties. .................................................. 47
Section 17.03  Interested Administrator Member. ...................................................... 48
Section 17.04  Administrator Expenses....................................................................... 48
Section 17.05  Uniform Rules. ................................................................................... 48
Section 17.06  Information Required by the Administrator. ........................................ 48
Section 17.07  Review of Benefit Determinations. ..................................................... 48
Section 17.08  Administrator's Decision Final. .......................................................... 48
Section 17.09  Denial Procedure and Appeal Process.................................................. 49
Section 17.10  Mandatory and Binding Arbitration. ................................................... 50

**ARTICLE XVIII. Special Rules Applicable When Plan is Top-Heavy** ................................... 54

Section 18.01  Purpose and Effect............................................................................... 54
Section 18.02  Top-Heavy Plan. .................................................................................. 54
Section 18.03  Top Heavy Ratio. ................................................................................. 54
Section 18.04  Definitions. .......................................................................................... 55
Section 18.05  Minimum Vesting................................................................................. 56
Section 18.06  Minimum Employer Contribution. ...................................................... 56
Section 18.07  Coordination of Benefits. .................................................................... 57

Appendix A    Employers .......................................................................................... A-1
Appendix B    S Corporation Status ......................................................................... B-1

ARGENT_CEDENO_0000004

**Table of Defined Terms**
(references are to page numbers)

| | | | |
|---|---|---|---|
| "415 Compensation" | 25 | Direct Rollovers | 33 |
| "Top-Paid Group" | 24 | Disqualified Person | 9 |
| AAA | 50 | Dividend | 20 |
| Accounting Date | 18 | Effective Date | 1 |
| Accounting Period | 18 | Eligible Distributee | 33 |
| Accounts | 18 | Eligible Participant | 8 |
| Acquisition Loan | 14 | Eligible Retirement Plan | 33 |
| Administrator | 1 | Eligible Rollover Distribution | 33 |
| Allocated Financed Shares | 20 | Employee | 3 |
| Annual Addition | 24 | Employer | 1 |
| Arbitration Procedure | 50 | Employer Contribution | 8 |
| Beneficiary | 35 | Employment Dispute Rules | 50 |
| Board | 1 | EPCRS | 4 |
| C Corporation | 22 | ERISA | 1 |
| Claimant | 49 | ESOP Cash Account | 18 |
| Code | 1 | ESOP Portion | 11 |
| Company | 1 | ESOP Stock Account | 18 |
| Company Stock | 14 | FAA | 53 |
| Compensation | 6 | Financed Shares | 14 |
| Controlled Group Member | 2 | Forfeiture | 28 |
| Covered Claims | 50 | Highly Compensated Employee | 24 |
| Deemed-Owned Shares | 10 | Hour of Service | 5 |
| Determination Date | 54 | Impermissible Accrual | 10 |

ARGENT_CEDENO_0000005

| | | | | |
|---|---|---|---|---|
| Impermissible Allocation | 10 | Pledge Agreement | 45 |
| Inactive Participant | 17 | Principal Method | 19 |
| Inherited IRA | 36 | Qualified Election Period | 16 |
| Investment Income | 21 | Qualified Participant | 16 |
| IRS | 4 | Ratio Percentage Test | 8 |
| Key Employee | 55 | Related Company | 2 |
| Leased Employee | 4 | Related Defined Contribution Plan | 24 |
| Limitation Year | 23 | Required Aggregation Group | 56 |
| Loan Suspense Account | 18 | Required Commencement Date | 32 |
| Maximum Annual Addition | 23 | Right of First Refusal | 38 |
| Nonallocation Event | 11 | S Corporation | 9 |
| Nonallocation Period | 22 | Settlement Date | 26 |
| Nonallocation Year | 9 | Severance from Employment | 7 |
| Non-ESOP Portion | 11 | Special Accounting Date | 18 |
| Non-Key Employee | 56 | Spouse | 35 |
| Non-Spouse Designated Beneficiary | 36 | Synthetic Equity | 10 |
| Normal Retirement Age | 26 | Top Heavy Ratio | 54 |
| One Year Break in Service | 6 | Top-Heavy Plan | 54 |
| Participant | 3 | Trust | 1 |
| Participant Forfeiture Account | 29 | Trust Agreement | 1 |
| Permissive Aggregation Group | 56 | Trustee | 1 |
| Plan | 1 | Years of Service | 5 |

ARGENT_CEDENO_0000006

## ARTICLE I.

### Background of Plan

Section 1.01   History and Purpose.

(a)   Strategic Financial Solutions, LLC, a Delaware limited liability company (the "Company") hereby establishes the Strategic ESOP (the "Plan"), effective as of May 1, 2017.

(b)   The Plan is intended to be an employee stock ownership plan within the meaning of section 4975(e) (7) of the Internal Revenue Code of 1986, as amended (the "Code"), and section 407(d)(6) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). The Plan is intended to enable eligible Employees to acquire ownership interests in Company Stock. The Plan is specifically permitted and designed to invest up to 100% of its assets in Company Stock.

Section 1.02   Effective Date and Plan Year.

(a)   The effective date of the Plan is May 1, 2017 (the "Effective Date").

(b)   The Plan will be administered on the basis of a plan year (the "Plan Year"). The initial Plan Year will be a short Plan Year beginning on May 1, 2017 and ending on December 31, 2017. Thereafter, the Plan Year will be the 12-month period beginning on each January 1st.

Section 1.03   Trustee. Amounts contributed under the Plan are held in the Strategic Employee Stock Ownership Trust (the "Trust") and are invested, until distributed, by the trustee (the "Trustee") appointed by the Company acting by its Board of Directors (the "Board"). The Trustee acts in accordance with the terms of a trust agreement between the Company and the Trustee (the "Trust Agreement"). The Trust implements and forms a part of the Plan. The provisions of and benefits under the Plan are subject to the terms and provisions of the Trust Agreement. In the event of any conflict between the Plan and the Trust Agreement pertaining to the Trustee's duties and obligations, the terms of the Trust Agreement shall control.

Section 1.04   Plan Administration. The Plan is administered by a committee appointed by the Company, as described in Section 17.01 (the "Administrator"). Any notice or document required to be given to or filed with the Administrator will be properly given or filed if delivered or mailed, by registered or certified mail, postage prepaid, to the Administrator, in care of the Company at its corporate headquarters.

Section 1.05   Employers.

(a)   The Company and any Controlled Group Member or Related Company that adopts the Plan as a participating Employer pursuant to Section 14.09 are referred to collectively as the "Employers" and individually as an "Employer"; provided that, for all

I7465919 v2 \0216095 \0001

ARGENT_CEDENO_0000007

purposes under the Plan, a Controlled Group Member or Related Company that adopts the Plan as a participating Employer shall be an Employer as of the effective date of its participation in the Plan and during such participation, and shall not be an Employer for periods prior to the effective date of its participation in the Plan. The participating Employers in the Plan and the effective date of such Employer's participation are as set forth in Appendix A to the Plan.

(b)     For purposes of the Plan, reference to an Employer shall include any single member limited liability company of which the Employer is the sole member, and such single member limited liability company shall be treated as an Employer without having adopted the Plan as a participating Employer, unless the Company expressly excludes such limited liability company as an Employer by action of the Board.

(c)     A "Controlled Group Member" means any corporation that is a member of a controlled group of corporations with the Company (within the meaning of Code section 409(I)(4)).

(d)     A "Related Company" means the Company and any corporation or other entity treated as being in a controlled group of corporations or under common control with the Company, within the meaning of Code sections 414(b), (c), (m) or (o).

Section 1.06     Plan Supplements.     The provisions of the Plan may be modified by supplements to the Plan. The terms and provisions of each supplement are a part of the Plan and supersede the provisions of the Plan to the extent necessary to eliminate inconsistencies between the Plan and such supplement.

ARGENT_CEDENO_0000008

## ARTICLE II.

### Eligibility and Participation

Section 2.01    Eligibility to Participate.

(a)    A "Participant" in the Plan is an Employee who has satisfied the participation eligibility requirements of this Section 2.01(a). Subject to the terms and conditions of the Plan, (i) each Employee who as of December 31, 2017 had attained age 21 and was employed by an Employer shall become a Participant as of the later of his date of employment or May 1, 2017, and (ii) each Employee who does not satisfy the requirements of clause (i) shall become a Participant as of the first day of the Plan Year in which he has attained age 21 and first completes one Year of Service; provided that, in the case of clause (i) or clause (ii), the Employee is not:

(A)    a member of a group or class of Employees of an Employer whose terms and conditions of employment are covered by a collective bargaining agreement and retirement benefits were the subject of good faith negotiations between the Employer and a collective bargaining representative of such group or class of Employees, unless the Employee is subject to a collective bargaining agreement that provides for eligibility to participate in the Plan, in which case the Employee shall be eligible to participate in the Plan upon satisfying the requirements set forth above;

(B)    a Leased Employee;

(C)    a non-resident alien who receives no earned income from an Employer which constitutes income from sources within the United States;

(D)    an Employee whose sole Compensation is in the form of commissions; and

(E)    Ryan Sasson and Daniel Blumkin, due to the anticipated election of each such Employee for special tax treatment pursuant to Code section 1042 in connection with their sale of Company Stock to the Plan.

(b)    For all purposes of the Plan, an individual shall be an "Employee" of or be employed by an Employer only if such individual is treated as a common law employee by the Employer for purposes of employment taxes and wage withholding for Federal income taxes. If an individual is not considered to be an Employee of an Employer in accordance with the preceding sentence for a Plan Year, a subsequent determination by the Company or a Related Company, or by any governmental agency or court that the individual is a common law employee of the Employer, even if such determination is applicable to prior years, will not have a retroactive effect for purposes of eligibility to participate in the Plan.

(c)    A Participant who terminates employment but is reemployed by an Employer before incurring a One Year Break in Service shall continue to participate in the Plan in the same manner as if such termination had not occurred, effective as of the date he is

ARGENT_CEDENO_0000009

reemployed and completes or is credited with one Hour of Service. A Participant who terminates employment and is reemployed by an Employer after incurring a One Year Break in Service shall again participate in the Plan, effective as of the date he is reemployed; provided that he completes one Year of Service after the date he is reemployed.

(d)     No Employee who is eligible to become a Participant may waive participation in the Plan.

Section 2.02   Participation Not Guarantee of Employment. Participation in the Plan does not constitute a guarantee or contract of employment and will not give any Employee the right to be retained in the employ of an Employer nor any right or claim to any benefit under the terms of the Plan unless such right or claim has specifically accrued under the terms of the Plan.

Section 2.03   Leased Employees. A "Leased Employee" means any person described in Code section 414(n)(2), including any person who is not an Employee of an Employer, but who has provided services to an Employer, which services are performed under the primary direction or control of the Employer on a substantially full-time basis for a period of at least one year pursuant to an agreement between the Employer and a leasing organization. Notwithstanding the immediately preceding sentence, even if an individual would otherwise be considered a Leased Employee hereunder, that person shall not be considered a Leased Employee if:

(i)     he is covered by a money purchase pension plan which (A) covers all employees of the leasing organization (other than those rendering service directly to the leasing organization), (B) provides a nonintegrated employer contribution rate of at least 10% of compensation (as defined for purposes of Code section 415), and (C) allows immediate participation and full and immediate vesting, and

(ii)     Leased Employees (including, for this purpose, those who would be Leased Employees but for the operation of this sentence) do not constitute more than 20% of that part of the Employer's workforce consisting of non-Highly Compensated Employees. If an Employer subsequently employs a Leased Employee, the period during which a Leased Employee performs services for the Employer shall be taken into account for purposes of Section 3.01.

Section 2.04   Military Service. Notwithstanding any provision of the Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code section 414(u).

Section 2.05   Omission of Eligible Employee. If, in any Plan Year, an Employee who should be included as a Participant in the Plan is erroneously omitted, the Administrator shall correct such omission in accordance with the Employee Plans Compliance Resolution System ("EPCRS") set forth in Revenue Procedure 2013-12 (2013-4 IRB) or subsequent guidance or authority issued by the Internal Revenue Service ("IRS") or the Treasury Department.

Section 2.06   Inclusion of Ineligible Person. If, in any Plan Year, any person who should not have been included as a Participant in the Plan is erroneously included, the Administrator shall correct such error in accordance with EPCRS or subsequent guidance or authority issued by the IRS the Treasury Department.

ARGENT_CEDENO_0000010

## ARTICLE III.

### Service and Compensation

Section 3.01 Years of Service. The term "Years of Service" means an Employee's or Participant's period of service with an Employer, determined as follows:

(a)     For purposes of eligibility to participate in the Plan pursuant to Section 2.01(a):

(i)     If an Employee was employed by an Employer prior to the Effective Date, the determination of his Years of Service shall include periods prior to the Effective Date in which the Employee performed services for an Employer.

(ii)     An Employee shall be credited with one Year of Service if (A) he is employed by an Employer for a period of 12 months following the date he first completes an Hour of Service and (B) completes 1,000 Hours of Service during that period.

(iii)     If the Employee fails to satisfy the requirements of clause (ii), he shall be credited with one Year of Service for eligibility purposes if he is employed by an Employer during the 12 months of a Plan Year and completes 1,000 Hours of Service during that period, beginning with the Plan Year including the first anniversary of the date on which the Employee first completes an Hour of Service for an Employer.

(b)     For purposes of Vesting in Benefits pursuant to Section 10.01:

(i)     A Participant will be credited with one Year of Service for each Plan Year ending after the Effective Date in which he completes 1,000 Hours of Service.

(ii)     If a Participant is reemployed after a One Year Break in Service has occurred, his Years of Service shall include the Years of Service, if any, credited to him for periods prior to the One Year Break in Service.

Section 3.02 Hour of Service.

(a)     Subject to the provisions of this Section 3.02, the term "Hour of Service" means, with respect to any Employee:

(i)     each hour for which the Employee is directly or indirectly paid or entitled to payment by an Employer or, for vesting purposes, by a Related Employer, for the performance of duties;

(ii)     each hour for which the Employee is directly or indirectly paid or entitled to payment by an Employer or, for vesting purposes, by a Related Employer, for reasons other than the performance of duties (such as vacation, holiday, sickness, jury duty, disability, lay-off, military duty or leave of absence); and

ARGENT_CEDENO_0000011

(iii)    each hour for which back pay, irrespective of mitigation of damages, has been either awarded or agreed to by an Employer or a Related Employer.

These hours will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made. An Employee shall not receive credit for Hours of Service both under clause (i) or (ii), as the case may be, and under clause (iii). All Hours of Service shall be determined and credited in accordance with Department of Labor Regulations section 2530.200b-2.

(b)    An Employee or Participant shall not be credited with more than 501 Hours of Service for any single continuous period during which he performs no duties for an Employer or a Related Employer. Payments considered for purposes of the foregoing shall include payments unrelated to the length of the period during which no duties are performed but shall not include payments made solely as reimbursement for medically related expenses or solely for the purpose of complying with applicable workmen's compensation, unemployment compensation or disability insurance laws.

Section 3.03    One Year Break in Service. The term "One Year Break in Service" means any Plan Year during which an Employee or a Participant does not complete more than 500 Hours of Service. To the extent necessary to avoid a One Year Break in Service and to the extent Hours of Service are not otherwise credited as provided in Section 3.02, an Employee or Participant shall be credited with up to 501 Hours of Service during a Plan Year on account of an absence during such Plan Year due to:

(a)    the pregnancy of the Employee or Participant;

(b)    the birth of a child of the Employee or Participant;

(c)    the placement of a child with the Employee or Participant in connection with the adoption of such child by such Employee or Participant; and

(d)    caring for such child for a period beginning immediately following such birth or placement.

Section 3.04    Compensation. A Participant's "Compensation" for a Plan Year means the wages, defined in Code section 3401(a), paid to the Participant by an Employer and all other payments of compensation to the Participant for which the Employer is required to furnish the Participant with a written statement pursuant to Code sections 6041(d), 6051(a)(3) and 6052, subject to the following:

(a)    Compensation shall be determined without regard to any rules under Code section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code section 3401(a)(2)).

ARGENT_CEDENO_0000012

(b) Compensation includes:

(i) A Participant's salary reductions or deferrals during the Plan Year pursuant to an arrangement maintained by an Employer under Code sections 125(a), 132(f)(4), 402(e)(3), 402(h)(1)(B), 402(k), 403(b) or 457(b), and employee contributions described in Code section 414(h)(2) that are treated as employer contributions;

(ii) Amounts received by a Participant from an Employer within 2 ½ months following the date on which the Participant ceases to be an Employee of the Company or a Related Company ("Severance from Employment") or, if later, the end of the Plan Year which includes the Participant's Severance from Employment; provided, that such amounts represent payment of regular compensation for services during the Participant's regular working hours, compensation for services outside of the Participant's regular working hours (such as overtime or shift differential), commissions, bonuses or other similar payments, and such amounts would have been paid to the Participant by the Employer if the Participant had continued employment with the Employer; and

(iii) Except as described in Section 3.04(c), Compensation for a Participant's initial year of participation shall be recognized for the entire Plan Year.

(c) Compensation excludes:

(i) A Participant's Compensation in excess of the dollar limitation in effect under Code section 401(a)(17), as such limitation is adjusted from time to time by the Secretary of the Treasury pursuant to Code section 401(a)(17)(B); provided, that such dollar limitation with respect to a Plan Year consisting of fewer than 12 months shall be an amount equal to the otherwise applicable limitation multiplied by a fraction, the numerator of which is the number of months in the short determination period and the denominator of which is 12; and

(ii) Except as described in Section 3.04(b)(ii), amounts received by a Participant from an Employer following the Participant's Severance from Employment.

ARGENT_CEDENO_0000013

## ARTICLE IV.

### Employer Contributions

Section 4.01   Employer Contributions.

(a)   Timing, Form and Amount. Subject to the conditions and limitations of the Plan, the Company, in its sole discretion, may direct the Employers to make a contribution (the "Employer Contribution") to the Plan for any Plan Year. Any such Employer Contribution for a Plan Year shall be made in such amount, if any, as determined by the Company prior to the end of the Plan Year or within a reasonable period of time after the end of the Plan Year; provided, however, that the Company shall direct the Employers to make Employer Contributions at least in the amount which, when combined with Dividends which may lawfully be used to make payments on an Acquisition Loan, is sufficient to meet the Plan's obligations on all outstanding Acquisition Loans. Employer Contributions shall be made in cash or in Company Stock (in the discretion of the Company) as of the last day of the Plan Year.

(b)   Allocation of Employer Contributions -- General Rule.

(i)   An "Eligible Participant" for a Plan Year is a Participant who:

(A)   completed 1,000 Hours of Service during the Plan Year and is actively employed by an Employer on the last day of the Plan Year; or

(B)   terminated employment with the Employer during the Plan Year due to Normal Retirement, Disability Retirement or death (as described in Sections 9.01(a), (b) and (c), respectively).

(ii)   Except as otherwise provided herein, Employer Contributions for a Plan Year shall be allocated to the ESOP Stock Account or ESOP Cash Account, as applicable, of each Eligible Participant in the proportion that such Eligible Participant's Compensation for the Plan Year bears to the total Compensation of all Eligible Participants for such Plan Year.

(c)   Allocation of Employer Contributions -- Special Rules.

(i)   If in any Plan Year, as a result of excluding from the allocation for such year Participants who are not employed on the last day of the Plan Year as described in Section 4.01(b), the Plan would fail to qualify under Code section 401(a)(3) due to failure to comply with the "Ratio Percentage Test", then for such Plan Year a number of Participants as determined in the following sentence shall be treated as Eligible Participants, to the extent necessary to satisfy such Ratio Percentage Test, and the allocation of Employer Contributions shall be recomputed accordingly. The number of such Participants who were not otherwise Eligible Participants who shall become Eligible Participants shall be the minimum number of Participants as are necessary to permit the Plan to satisfy the Ratio Percentage Test, and the specific Participants who shall become Eligible Participants under the terms of this Section 4.01(c)(i) shall be those Participants whose Hours of Service for such Plan Year are the greatest. In the event more than one Employee has the same Hours of Service for the Plan Year, all such Employees shall be

ARGENT_CEDENO_0000014

Eligible Participants if any one of them would be so eligible. The Plan shall be deemed to comply with the Ratio Percentage Test if the percentage of non-Highly Compensated Employees benefiting under the Plan for a Plan Year is at least 70% of the percentage of Highly Compensated Employees benefiting under the Plan, excluding those Employees who were not employed by an Employer on the last day of the Plan Year for a reason other than Disability Retirement or death, as described in Sections 9.01(b) or (c), respectively. For this purpose, an Employee shall be considered to benefit under the Plan for a Plan Year if he receives an allocation of Employer Contributions for that Plan Year.

    (ii)    If, for any Plan Year, it is necessary to rely on the special rules of Code section 415(c)(6) to permit the Plan to comply with the limitations of Code section 415 for that year, and more than one third of the Employer Contributions for such Plan Year would be allocated in accordance with this Section 4.01 to the accounts of Highly Compensated Employees, then the following procedure shall be utilized instead of the procedure in Section 4.01(b): (A) exactly one third of the Employer Contributions shall be allocated to the accounts of the Highly Compensated Employees who are Eligible Participants, pro rata on the basis of such Eligible Participants' Compensation for such Plan Year, and (B) the remaining Employer Contributions shall be allocated to the accounts of the non-Highly Compensated Employees who are Eligible Participants, pro rata on the basis of such Eligible Participants' Compensation for such Plan Year.

    (iii)    If more than one class of Company Stock acquired with the proceeds of an Acquisition Loan is distributable, then each Participant or Beneficiary receiving a distribution must receive substantially the same proportion of each such class.

Section 4.02    S Corporation Requirements.

    (a)    S Corporation. An "S Corporation" means a corporation that has elected to be taxed under subchapter S of the Code. The S Corporation status of the Company and the Employers is set forth in Appendix B to the Plan.

    (b)    Prohibited S Corporation Allocations. Notwithstanding any provision of the Plan to the contrary, for any Plan Year in which the Company is an S Corporation, no portion of the assets of the Plan consisting of Company Stock or attributable to (or allocable in lieu of) Company Stock shall accrue or be allocated directly or indirectly for the benefit of a Disqualified Person under the Plan or any other plan of the Employer meeting the requirements of Code section 401(a): (i) to the extent such accrual or allocation would cause a Nonallocation Year to occur or (ii) during a Nonallocation Year.

    (c)    "Nonallocation Year" means a Plan Year, if at any time during such Plan Year (A) the Plan holds Company Stock consisting of stock in an S Corporation, and (B) Disqualified Persons own at least 50% of the number of shares of stock in the S corporation.

    (d)    "Disqualified Person" means any person if (A) the aggregate number of Deemed-Owned Shares of such person is at least 20% of the number of Deemed-Owned Shares of stock in the S Corporation, or (B) in the case of a person not described in clause (A), the number of Deemed-Owned Shares of such person is at least 10% of the number of Deemed-Owned Shares of stock in such corporation.

ARGENT_CEDENO_0000015

(e)    Impermissible Allocation. The allocations prohibited pursuant to Section 4.02(b) include an "Impermissible Allocation", which is any contribution or other annual addition (e.g. a forfeiture allocation) under the Plan or under another qualified plan, including a release and allocation from the Loan Suspense Account, that would have otherwise been added to the Disqualified Person's Account and invested in Company Stock or Company securities consisting of S Corporation Stock.

(f)    Impermissible Accrual. The allocations prohibited pursuant to Section 4.02(b) include an "Impermissible Accrual", which is all S Corporation shares that are Company securities and other Plan assets attributable to such shares (including Code section 1368 distributions, sale proceeds and earnings on such distributions or proceeds) that are held for a Disqualified Person's Account, whether attributable to current Plan Year contributions or prior Plan Year contributions.

(g)    Treatment of Synthetic Equity. The determination of whether someone is a Disqualified Person and whether a Plan Year is a Nonallocation Year shall be made by treating Synthetic Equity of the S Corporation as outstanding in accordance with Code section 409(p)(5) and the regulations thereunder. Synthetic Equity shall be treated as owned by a person in the same manner as the person's ownership of Deemed-Owned Shares. If, without regard to this, a person is treated as a Disqualified Person or a Plan Year is treated as a Nonallocation Year, this Section 4.02(g) shall not be construed to result in the person or Plan Year as not being so treated.

(h)    "Deemed-Owned Shares" means, with respect to any person: (A) Company Stock consisting of stock in an S Corporation which is allocated to his Account and (B) his share of such Company stock, determined in accordance with Code section 409(p)(4)(C)(ii), which is held by the Plan but is not allocated to Participant Accounts.

(i)    "Synthetic Equity" means any stock option, warrant, restricted stock, deferred issuance stock right, nonqualified deferred compensation under Treasury Regulations section 1.409(p)-1(f)(2)(iv) or similar interest or right that gives the holder the right to acquire or receive stock of the S Corporation in the future. Except to the extent otherwise provided in Treasury Regulations, Synthetic Equity also includes a stock appreciation right, phantom stock unit, or similar right to a future cash payment based on the value of such stock or appreciation in such value.

(j)    For purposes of this Section 4.02:

(i)    the attribution rules of Code section 318(a) shall apply for purposes of determining a person's ownership of Company Stock, except that Code section 318(a)(4) shall not apply and, in applying Code section 318(a)(1), the members of a person's family shall include the person's spouse and the person's and his spouse's ancestors, lineal descendants, brothers and sisters, including the spouses of such ancestors, lineal descendants, brothers and sisters, and the lineal descendants of such brothers and sisters;

(ii)    notwithstanding the employee trust exception in Code section 318(a)(2)(B)(i), a person shall be treated as owning Deemed-Owned Shares of the person; and

ARGENT_CEDENO_0000016

(iii)   solely for purposes of determining Synthetic Equity, the ownership rules of this Section 4.02(j) shall be applied after any other attribution rules pursuant to Section 4.02(i) necessary to determine Synthetic Equity have been applied.

### Section 4.03   Code Section 409(p) Transfers.

(a)   Non-ESOP Portion.   Assets held under the Plan in accordance with this Section 4.03 shall be held under a portion of the Plan (the "Non-ESOP Portion") which is not an employee stock ownership plan within the meaning of Code section 4975(e)(7). Amounts held in the Non-ESOP Portion shall be held in accounts that are separate from the accounts for the amounts held in the remainder of the Plan (the "ESOP Portion"). The statements provided to Participants and Beneficiaries to show their interest in the Plan shall separately identify the amounts held in each such portion. Except as specifically set forth in this Section 4.03, all of the terms of the Plan apply to any amount held under the Non-ESOP Portion in the same manner and to the same extent as to any other amount held under the Plan.

(b)   Transfers from the ESOP Portion to the Non-ESOP Portion of the Plan.

(i)   If the Administrator determines that an event would cause a Nonallocation Year to occur (a "Nonallocation Event"), shares of Company Stock held under the Plan before the date of such Nonallocation Event shall be transferred from the ESOP Portion of the Plan to the Non-ESOP Portion. Actions that may cause a Nonallocation Event include, but are not limited to, a contribution to the Plan in the form of shares of Company Stock, a distribution from the Plan in the form of shares of Company Stock, a change of investment within a Disqualified Person's Account that alters the number of shares of Company Stock held in such Account, or the issuance by the Company of Synthetic Equity.

(ii)   A Nonallocation Event occurs only if (A) the total number of shares of Company Stock held in the Accounts of those Participants who are or would be Disqualified Persons after taking into account the Participant's Synthetic Equity and the Nonallocation Event, exceeds (B) 49.9% of the total number of shares of Company Stock outstanding after taking the Nonallocation Event into account (causing a Nonallocation Year to occur). No transfer under this Section 4.03 shall be greater than the excess, if any, of (A) over (B). Before the Nonallocation Event occurs, the Administrator shall determine the extent to which a transfer is required to be made and shall take steps to ensure that all actions necessary to implement the transfer are taken before the Nonallocation Event occurs.

(iii)   Except as provided Section 4.03(b)(iv), at the date of the transfer, the total number of shares transferred, as provided in Section 4.03(b)(i), shall be charged against the Accounts of Participants who are Disqualified Persons (A) by first reducing the Account of the Participant who is a Disqualified Person whose account has the largest number of shares (with the addition of Synthetic Equity shares) and (B) thereafter by reducing the Accounts of each succeeding Participant who is a Disqualified Person who has the largest number of shares in his or her Account (with the addition of Synthetic Equity shares). Immediately following the transfer, the number of transferred shares charged against any Participant's Account in the ESOP Portion of the Plan shall be credited to an Account established for that Participant in the Non-ESOP Portion.

ARGENT_CEDENO_0000017

(iv)    Notwithstanding Section 4.03(b)(iii), the number of shares transferred shall be charged against the Accounts of Participants who are Disqualified Persons (A) by first reducing the Account of the Participant with the fewest shares (including Synthetic Equity) who is a Disqualified Person and who is a Highly Compensated Employee to cause the Participant not to be a Disqualified Person, and (B) thereafter reducing the Account of each other Participant who is a Disqualified Person and a Highly Compensated Employee, in the order of who has the fewest ESOP shares (including Synthetic Equity). A transfer under this Section 4.03(b)(iv) only applies to the extent that the transfer results in fewer shares being transferred than in a transfer under Section 4.03(b)(iii)

(v)    If two or more Participants described in Section 4.03(b)(iii) or (b)(iv) have the same number of shares, the Account of the Participant with the longest service shall be reduced first.

(vi)    For purposes of Section 4.03, Beneficiaries are treated as Participants.

(c)    Income Taxes. If the Trust owes income taxes as a result of unrelated business taxable income under Code section 512(e) with respect to shares of Company Stock held in the Non-ESOP Portion of the Plan, the income tax payments made by the Trustee shall be charged against the Accounts of each Participant or Beneficiary who has an Account in the Non-ESOP Portion, in proportion to the ratio of the shares of Company Stock in such Participant's or Beneficiary's Account in the Non-ESOP Portion to the total shares of Company Stock in the Non-ESOP Portion. The Company shall purchase shares of Company Stock from the Trustee with cash (based on the fair market value of the shares so purchased) from each such Account to the extent necessary for the Trustee to make the income tax payments.

Section 4.04   No Participant Contributions.    No contributions, including rollover contributions, will be permitted by Employees or Participants.

Section 4.05   Due Date for Employer Contributions.    Any Employer Contributions for a Plan Year shall be due on the last day of the Plan Year and, if not paid by the end of that Plan Year, shall be payable to the Trustee as soon as practicable thereafter, without interest, but not later than the time prescribed by law for filing the Company's Federal income tax return for such Plan Year, including extensions thereof.

Section 4.06   Payment of Acquisition Loans.    For each Accounting Period during which an Acquisition Loan is outstanding, the Trustee shall use any Employer Contributions made for such Accounting Period pursuant to Section 4.01 to make principal and interest payments then due on the Acquisition Loan or Acquisition Loans outstanding at the end of such Accounting Period. Each such payment by the Trustee will release shares of Company Stock from the Loan Suspense Account of the Trust as of each applicable Accounting Date. Except as provided in Section 7.06, Company Stock that is so released will be allocated to Participants' ESOP Stock Accounts as provided in Section 4.01. If no Acquisition Loan is outstanding at the end of an Accounting Period, the Trustee shall invest the contributions made for such Accounting Period as the Administrator directs, in accordance with the provisions of Article VI.

ARGENT_CEDENO_0000018

Section 4.07 Employer's Share of Contributions. The Company shall determine each Employer's share of Employer Contributions to be made pursuant to Section 4.01. The certificate of an independent certified public accountant selected by the Company as to the correctness of any amounts or calculations relating to the Employers' contributions under the Plan shall be conclusive as to all persons.

ARGENT_CEDENO_0000019

## ARTICLE V.

### Company Stock; Acquisition Loans

Section 5.01   Company Stock.

(a)     For purposes of the Plan, the term "Company Stock" shall mean common stock issued by the Company or by a Controlled Group Member that is readily tradable on an established securities market; provided, that if the Company's common stock or the Controlled Group Member's common stock, as applicable, is not readily tradable on an established securities market, the term Company Stock shall mean common stock issued by the Company or by a Controlled Group Member having a combination of voting power and Dividend rates equal to or in excess of: (i) that class of common stock of the Company or the Controlled Group Member, as applicable, having the greatest voting power; and (ii) that class of common stock of the Company or the Controlled Group Member, as applicable, having the greatest Dividend rights.

(b)     Non-callable preferred stock shall be treated as Company Stock for purposes of the Plan, if such stock is convertible at any time into stock that is readily tradable on an established securities market (or, if applicable, that meets the requirements of clauses (a)(i) and (a)(ii) above) and if such conversion is at a conversion price that, as of the date of the acquisition by the Plan, is reasonable.  For purposes of the immediately preceding sentence, preferred stock shall be treated as non-callable if, after the call, there will be a reasonable opportunity for a conversion that meets the requirements of the immediately preceding sentence. Company Stock shall be held under the Trust only if such stock satisfies the requirements of ERISA section 407(d)(5).

Section 5.02   Acquisition Loans.

(a)     An "Acquisition Loan" means the issuance of notes, a series of notes or other installment obligations incurred by the Trustee, in accordance with the Trust Agreement, in connection with the purchase of Company Stock.

(b)     The term "Financed Shares" means shares of Company Stock acquired by the Trustee with the proceeds of an Acquisition Loan.

(c)     The terms of each Acquisition Loan shall meet the applicable requirements of Treasury Regulations section 54.4975-7(b), including the following:

(i)     the loan shall be primarily for the benefit of Participants;

(ii)    the loan shall bear a reasonable rate of interest, be for a definite period (rather than payable on demand), and be without recourse against the Plan;

(iii)   the proceeds of the loan shall be used only to (A) acquire Company Stock, (B) repay the loan, or (C) repay a prior Acquisition Loan;

ARGENT_CEDENO_0000020

(iv)    the price of the Company Stock purchased with the proceeds of the loan shall not exceed the stock's fair market value;

(v)    at the time that the loan is made, the interest rate of the loan and the price of the Company Stock purchased with the proceeds of the loan shall not be such that Plan assets might be drained off;

(vi)    the only assets of the Plan that may be given as collateral are Financed Shares purchased with the proceeds of that loan or with the proceeds of a prior Acquisition Loan;

(vii)    no person entitled to payment under the loan shall have any right to Plan assets other than (A) the collateral for the loan, (B) contributions (other than of Company Stock) made to the Trust to meet its obligations under the loan, and (C) earnings on the collateral and the investment of such contributions;

(viii)    in the event of a default on the loan, the value of Plan assets transferred in satisfaction of such default must not exceed the amount of such default;

(ix)    payments made with respect to the loan during a Plan Year shall not exceed an amount equal to the sum of (A) Employer Contributions received by the Plan during the Plan Year or in a prior Plan Year; *plus* (B) cash Dividends paid and Investment Income received during the Plan Year or in a prior Plan Year on Financed Shares held in the Loan Suspense Account, *less* the amount of any such payments during prior Plan Years; and

(x)    Until the loan is repaid in full, the Plan shall maintain separate accounting of Employer Contributions and cash Dividends paid and Investment Income received on Financed Shares held in the Loan Suspense Account.

ARGENT_CEDENO_0000021

**Investment of Employer Contributions**

Section 6.01    ESOP Stock Account Investments in Company Stock.    Employer Contributions that are used to repay an Acquisition Loan shall be invested in Company Stock through the release of Financed Shares and the crediting of such shares to Participants' Accounts (as described in Section 7.04, 7.05 and 7.06).

Section 6.02    Diversification of Investments in Company Stock.    Pursuant to rules established by the Administrator, a Participant who is actively employed by an Employer (an "Active Participant") may elect to diversify a portion of his ESOP Stock Account, subject to the following:

(a)    Each Active Participant who has attained age 55 years and has been a Participant for at least ten years (a "Qualified Participant") may elect during each of the Participant's Qualified Election Periods to diversify up to 25% (50% in the case of the Participant's last Qualified Election Period) of the Qualified Participant's ESOP Stock Account balance eligible for diversification (as described in Section 6.02(b)), by receiving a cash distribution of the applicable amount.

(b)    The portion of a Qualified Participant's ESOP Stock Account balance subject to diversification shall equal 25% (50% in the case of the Qualified Participant's last year of the Qualified Election Period) of the total number of shares of Company Stock allocated to the Participant's ESOP Stock Account (including shares that the Participant previously elected to diversify pursuant to this Section 6.02), less the number of such shares previously diversified pursuant to the Qualified Participant's election under this Section 6.02.

(c)    For purposes of this Section 6.02, a "Qualified Election Period" means: (i) the 90-day period immediately following the last day of the first Plan Year in which the Participant becomes a Qualified Participant, and (ii) the 90-day period immediately following the last day of each of the five Plan Years immediately following the first Plan Year in which the Participant becomes a Qualified Participant. Any election made in accordance with the provisions of Section 6.02(a) with respect to any Qualified Election Period shall be given effect as of the regular Accounting Date occurring 90 days after the end of that Qualified Election Period.

(d)    The provisions of this Section 6.02 shall not apply to a Participant if the value of the Participant's ESOP Stock Account (determined as of the regular Accounting Date immediately preceding the first day on which the Participant would otherwise be entitled to make an election under this Section 6.02) is $500 or less.

ARGENT_CEDENO_0000022

Section 6.03 <u>Reinvestment of ESOP Stock Account</u>. If a Participant has had a Severance from Employment (an "<u>Inactive Participant</u>"), the Administrator shall exchange any shares of Company Stock in such Inactive Participant's ESOP Stock Account to the extent of any cash or other liquid assets held in an Active Participant's ESOP Cash Accounts. Such exchange shall be at a rate determined based on the most recent fair market value of Company Stock, as determined in accordance with the provisions of Section 7.08 and shall be made pro rata based on the Active Participants' ESOP Cash Account balances. In the event that there are not sufficient cash or other liquid assets in the Active Participants' ESOP Cash Accounts to exchange for all of the shares of Company Stock in the Inactive Participants' ESOP Stock Accounts, the exchange shall be pro rata based upon the Inactive Participants' ESOP Stock Accounts. The purpose of this exchange is to invest the Accounts of Active Participants in Company Stock to the maximum extent possible within the assets available to the Trust, and to invest the Accounts of Inactive Participants in assets other than Company Stock to the maximum extent possible within the assets available to the Trust.

ARGENT_CEDENO_0000023

## ARTICLE VII.

### Accounting

Section 7.01   Participants' Accounts. The Administrator shall maintain or cause to be maintained under the Plan the following accounts in the name of each Participant (to the extent applicable):

    (a)     An "ESOP Stock Account" to reflect shares of Company Stock allocated to such Participant.

    (b)     An "ESOP Cash Account" to reflect assets other than Company Stock allocated to such Participant.

In addition to the accounts described above, the Administrator may maintain such other accounts and subaccounts in the names of Participants or otherwise as the Administrator may consider necessary or advisable. Collectively, all accounts and subaccounts maintained for a Participant are referred to as the Participant's "Accounts". The Administrator may establish such nondiscriminatory rules and procedures relating to the maintenance, adjustment and liquidation of Participants' Accounts as the Administrator may consider necessary or advisable.

Section 7.02   Loan Suspense Account. The Administrator shall maintain or cause to be maintained in the Trust a "Loan Suspense Account" to reflect the Financed Shares acquired by the Trustee with the proceeds of an Acquisition Loan, if any, prior to the transfer of such Financed Shares to the Participants' ESOP Stock Accounts, any cash Dividends attributable to such shares or transferred to the Loan Suspense Account pursuant to Section 7.05, and any Investment Income attributable to such Dividends.

Section 7.03   Accounting Dates. The last day of each Plan Year shall be the "Accounting Date." The assets of the Plan and Participant Accounts shall be valued on each Accounting Date, and Participants' Accounts shall be adjusted on each Accounting Date. A "Special Accounting Date" is any date designated as such by the Administrator and a Special Accounting Date occurring under Section 16.03. The term "Accounting Date" includes an annual Accounting Date and a Special Accounting Date. Any references to an "Accounting Period" ending on an Accounting Date shall mean the period since the immediately preceding regular Accounting Date.

Section 7.04   Transfer of Shares. At the direction of the Administrator, the Trustee shall use the following to repay an Acquisition Loan:

    (a)     Employer Contributions under Section 4.01 and any Investment Income attributable to such contributions; and

    (b)     To the extent permitted by applicable law, cash Dividends paid on shares of Company Stock, as provided in Section 7.05 and 7.06, and any Investment Income attributable to such Dividends.

ARGENT_CEDENO_0000024

(c)     The repayment of an Acquisition Loan shall cause a release of shares of Company Stock from the Loan Suspense Account to the Participants' ESOP Stock Accounts in accordance with Section 7.05 and 7.06 as of each applicable Accounting Date, except as otherwise provided in Section 4.02 with respect to S Corporation Nonallocation Years. The number of shares to be released shall be determined by multiplying the number of shares in the Loan Suspense Account by a fraction, the numerator of which is the principal and interest payments during the applicable Accounting Period and the denominator of which is the sum of the numerator plus the total projected principal and interest payments during the remainder of the term of the Acquisition Loan.

(d)     If the requirements of Treasury Regulations section 54.4975-7(b)(8)(ii) are satisfied, the phrase "principal and interest" in Section 7.04(c) shall be replaced by the word "principal" (the "Principal Method"); provided, that the Principal Method shall be applied only if (A) the terms of such Acquisition Loan provide for annual payments of principal and interest at a cumulative rate which is not less rapid at any time than level annual payments of such amounts for a period of ten years, (B) the interest included in any payment is disregarded only to the extent that it would be determined to be interest under standard loan amortization tables, and (C) in the event of a renewal, extension or refinancing of such Acquisition Loan, the duration under such Acquisition Loan as renewed, extended or refinanced does not exceed ten years.

(e)     In determining the number of shares of Company Stock released from the Loan Suspense Account pursuant to Section 7.04(c), (i) the number of shares of Company Stock remaining in the Loan Suspense Account following such release must be definitely ascertainable and determined without regard to any extension of the Acquisition Loan; (ii) if the Acquisition Loan provides for interest at a variable rate, the interest payable for subsequent Plan Years must be computed based on the interest rate which is applicable as of the end of the Plan Year for which the determination is being made; and (iii) if more than one class of Company Stock has been allocated to the Loan Suspense Account, the number of shares released of each such class shall be determined by applying the fraction set forth in Section 7.04(c) separately to each such class, and allocations of each such class shall be accounted for separately, including the cost basis of shares of such class.

Section 7.05     Adjustment of Participants' Accounts.   Participants' Accounts shall be adjusted as follows:

(a)     Repayments of Acquisition Loans and Purchases of Company Stock.   For each Accounting Period, Financed Shares that are released from the Loan Suspense Account in accordance with Section 7.04 as a result of the use of Employer Contributions to make payments on an Acquisition Loan shall be credited to the Participants' ESOP Stock Accounts in accordance with the provisions of Section 4.01.   For each Accounting Period, Employer Contributions in cash shall be credited as of the applicable Accounting Date to the Participants' ESOP Cash Accounts as in accordance with the provisions of Section 4.01.   Upon the purchase of Company Stock with such cash, an appropriate number of shares of Company Stock shall be credited to the Participant's ESOP Stock Account as appropriate, and the Participant's ESOP Cash Account shall be charged by the amount of the cash used to buy such Company Stock.   At all times, cash in Participants' ESOP Cash Account may be used to purchase Company Stock from any source.

ARGENT_CEDENO_0000025

(b)　　Dividends. The term "Dividend" shall include both dividends as described in Code section 316 and all distributions made with respect to the shares of stock of an S Corporation. Subject to the provisions of Section 7.06:

(i)　　cash Dividends on shares of Company Stock in the Loan Suspense Account shall be used to repay the outstanding Acquisition Loan incurred in connection with the acquisition of such shares, and the released shares shall be credited to the Participants' ESOP Stock Accounts, in accordance with the provisions of Section 7.06; and

(ii)　　cash Dividends paid to the Trustee on shares of Company Stock held in a Participant's ESOP Stock Account on the record date shall be credited to such Participant's ESOP Cash Account. Such cash Dividends credited to a Participant's ESOP Cash Accounts may, to the extent permitted by law, be applied to the repayment of the Acquisition Loan incurred in connection with the acquisition of such shares, or, as determined in the discretion of the Administrator, be used to purchase shares of Company Stock, or be paid to the Participants as described in Section 7.06(c). The Administrator shall credit an appropriate number of shares of Company Stock to the ESOP Stock Account of such Participant, and the Participant's ESOP Cash Account shall then be charged by the amount of cash used to repay an Acquisition Loan or used to purchase such Company Stock for the Participant's ESOP Stock Account.

(c)　　Employer Contributions in Shares of Company Stock.　　For any Accounting Period in which Employer Contributions are made in the form of shares of Company Stock, such stock shall be credited to Participant ESOP Stock Accounts, as of the applicable Accounting Date, in accordance with the applicable provisions of Section 4.01.

(d)　　Appreciation, Depreciation, Etc.　As of each Accounting Date, before the allocation of any Employer Contributions under Section 4.01, any appreciation, depreciation, income, gains or losses in the fair market value of Participant ESOP Cash Accounts shall be allocated among and credited to the ESOP Cash Accounts of Participants, pro rata, according to the balance of each ESOP Cash Account as of the immediately preceding Accounting Date, reduced in each case by the amount of any charge to such ESOP Cash Account since the immediately preceding Accounting Date.

Section 7.06　　Dividends on Company Stock. The following shall apply with respect to Dividends on Company Stock:

(a)　　Dividends Credited to ESOP Cash Accounts. Any cash Dividends paid with respect to shares of Company Stock allocated to Participants' ESOP Stock Accounts or held in the Loan Suspense Account may, as determined by the Administrator, be allocated among and credited to Participant ESOP Cash Accounts in accordance with Section 7.05(b).

(b)　　Dividends Used to Repay Acquisition Loan.　To the extent required pursuant to the terms of an Acquisition Loan or as determined by the Administrator, cash Dividends paid with respect to Financed Shares which are allocated to Participant ESOP Stock Accounts ("Allocated Financed Shares") or held in the Loan Suspense Account shall be used to repay the Acquisition Loan with respect to such Financed Shares or to purchase additional shares of Company Stock pursuant to Section 7.05(b); provided that:

ARGENT_CEDENO_0000026

(i)    Financed Shares released from the Loan Suspense Account due to such use of cash Dividends shall be allocated to Participant ESOP Stock Accounts in the following order: (A) Financed Shares with a fair market value (determined as of the valuation coincident with or immediately preceding the Dividend declaration date) at least equal to the cash Dividends paid with respect to any Allocated Financed Shares shall be allocated to the ESOP Stock Accounts of each Participant holding such shares, pro rata based on the number of the Participant's Allocated Financed Shares held on the Dividend declaration date; and (B) any remaining Financed Shares released from the Loan Suspense Account shall be allocated to Participant ESOP Stock Accounts in accordance with Section 4.01; and

(ii)    if the fair market value of Financed Shares allocated to a Participant's ESOP Stock Account pursuant to Section 7.06(b)(i)(A) is less than the amount of the cash Dividends paid with respect to the Participant's Allocated Financed Shares, the Administrator shall, to the extent necessary to prevent a violation of Code section 4975(f)(7), cause Financed Shares released from the Loan Suspense Account on account of Employer Contributions to be allocated to the Participant's ESOP Stock Account.

(c)    Dividends Paid to Participants.  Subject to Section 7.06(b), any cash Dividends paid with respect to shares of Company Stock allocated to Participants' ESOP Stock Accounts may, as determined by the Administrator, be either paid by the Company directly in cash to Participants on a nondiscriminatory basis or paid to the Trustee and distributed by the Trustee to the Participants no later than 90 days after the end of the Plan Year in which paid to the Trustee, or at the election of the Participant or his Beneficiary paid to the Plan and reinvested in Company Stock.  Before the Dividend is paid or distributed to the Participant, the Administrator must give the Participant a reasonable opportunity to make the election, the Participant must have a reasonable opportunity to change a Dividend election at least annually, and if there is a change in the Plan terms governing the manner in which the Dividends are paid or distributed to Participants, a Participant must be given a reasonable opportunity to make an election under the new Plan terms prior to the date on which the first Dividend subject to the new Plan terms is paid or distributed.  If the Participant does not make an affirmative election to reinvest the cash Dividerds in Company Stock, the Administrator's decision regarding payment shall prevail.  Any cash dividends reinvested in Company Stock hereunder shall be fully vested and nonforfeitable.

Section 7.07  Investment of Cash in Trust.  At the direction of the Administrator, cash held in the Loan Suspense Account or Participants' ESOP Cash Accounts under the Trust will be invested by the Trustee, to the extent practicable, in short term securities or cash equivalents having ready marketability, mutual funds or in any other investment vehicle permitted under the terms of the Trust Agreement.  Investment Income resulting from such investments shall be credited to the account to which it pertains.  The term "Investment Income" means income resulting from the temporary investment of Employer Contributions in cash, cash Dividends and any other amounts.

ARGENT_CEDENO_0000027

Section 7.08  Fair Market Value of Company Stock.  For purposes of the Plan and Trust, the fair market value of Company Stock that is not readily tradable on an established securities market shall be determined, as of the last day of each Plan Year, by an "independent appraiser" who satisfies requirements similar to those of a "qualified appraiser" in Treasury Regulations under Code section 170(a)(1), and shall be determined in accordance with the terms of the Trust Agreement and the provisions of ERISA section 3(18); provided, however, that in the case of a transaction between the Plan and a disqualified person as determined under Treasury Regulations section 54.4975, value must be determined as of the date of the transaction.

Section 7.09  Stock Dividends and Capital Reorganizations.  Shares of Company Stock received by the Trustee that are attributable to stock dividends, stock splits or to any reorganization or recapitalization of the Company shall be credited to the Loan Suspense Account, if attributable to shares held in that account, or shall be credited to the released share account (including Participants' ESOP Stock Accounts) if attributable to shares held in the released share account, so that the interests of Participants immediately after any such stock dividend, split, reorganization or recapitalization are the same as such interests immediately before such event.

Section 7.10  Prohibited Allocations.  Notwithstanding any provision in this Plan to the contrary, if shares of Company Stock are sold to the Plan by a shareholder during a Plan Year in which the Company is taxed under subchapter C of the Code (a "C Corporation") in a transaction for which special tax treatment is elected by such shareholder (or his representative) pursuant to Code section 1042, no allocation of such shares may be made to the ESOP Stock Accounts of:

(a)  any person who owns (after the application of Code section 318(a)): (i) more than 25% of any class of the outstanding securities of the Controlled Group Members; (ii) more than 25% of any class of outstanding Company Stock; or (iii) more than 25% of the total value of any class of outstanding Company Stock; or

(b)  any person who sold shares to the Plan, and any person who is related to such shareholder (within the meaning of Code section 267(b)), but excluding lineal descendants of such shareholder as long as no more than 5% of the aggregate amount of all Company Stock sold by such shareholder or any other relative of the lineal descendant in a transaction to which Code section 1042 applies is allocated to lineal descendants of such shareholder during the Nonallocation Period.

No other allocations of Employer Contributions may be made to the Accounts of such persons unless additional allocations are made to other Participants, in accordance with the provisions of Code sections 401(a) and 410. The term "Nonallocation Period" means the period beginning on the date of sale and ending on the later of ten years after the date of sale or the date of the allocation attributable to the final payment on the Acquisition Loan incurred with respect to the sale.

ARGENT_CEDENO_0000028

## ARTICLE VIII.

### Contribution and Benefit Limitations

Section 8.01  Contribution Limitations.

(a)  Maximum Annual Addition.

(i)  For each Limitation Year, the Annual Addition to a Participant's Accounts shall not exceed the lesser of $54,000 (for the 2017 Plan Year and as adjusted for cost-of-living increases pursuant to Code sections 415(d)(1), 415(d)(3) and 415(d)(4) and Treasury Regulations section 1.415(c)-1) or 100% of the Participant's Compensation for that Limitation Year (the "Maximum Annual Addition").

(ii)  If the Participant is also covered under a Related Defined Contribution Plan, Annual Additions allocated to the Participant's Accounts under this Plan for the Limitation Year shall not exceed: (A) the Maximum Annual Addition, less (B) the Annual Additions allocated to the Participant's accounts under the Related Defined Contribution Plan.

(iii)  If a Participant's Annual Additions under this Plan are reduced pursuant to Section 8.01(a)(i) or (ii), the amount of such reduction which represents Employer Contributions may be allocated to other Eligible Participants.

(iv)  If Employer Contributions are applied to the repayment of an Acquisition Loan and shares of Company Stock are released from the Loan Suspense Account and allocated to Participants' ESOP Stock Accounts, each Participant's Annual Addition for a Limitation Year based on the allocated shares of Company Stock shall be calculated as the lesser of (A) the amount of such Employer Contributions credited to the Participant's Accounts, as adjusted by the preceding sentence, and (B) the fair market value of shares of Company Stock credited to the Participant's Accounts resulting from the application of such Employer Contributions to the repayment of the Acquisition Loan.

(b)  Certain Definitions.

(i)  The term "Limitation Year" means the Plan Year; provided, that (A) the Limitation Year may be changed only by an amendment to the Plan, pursuant to Section 16.01, designating a Limitation Year which is a 12-month period; (B) the limitation on Annual Additions with respect to a short Limitation Year resulting from a change pursuant to clause (A) shall be determined in accordance with Treasury Regulations section 1.415(j)-1(d)(2); and (C) if the Plan is terminated, pursuant to Section 16.02, effective as of a date other than the last day of a Limitation Year, the Plan shall be deemed to have changed the Limitation Year pursuant to clause (A).

ARGENT_CEDENO_0000029

(ii) The term "Annual Addition" means, for a Limitation Year, the total amount of Employer contributions, Employee contributions and forfeitures allocated to the accounts of a Participant under this Plan or a Related Defined Contribution Plan, provided, that Annual Additions shall not include (A) catch-up contributions as defined in Code section 414(v), (B) rollover contributions (as defined in Code sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3) and 457(e)(16)) or transferred funds, (C) a Participant's loan repayments to the Plan or a Related Defined Contribution Plan, (D) a Participant's repayments to the Plan or a Related Defined Contribution Plan of distributions pursuant to Code section 411(a)(3)(D) or 411(a)(7)(B), (E) Employee contributions to a simplified employee pension which are excludable under Code section 408(k)(6), or (F) if no more than one-third of the Employer Contributions to this Plan which are deductible under Code section 404(a)(9) are allocated to the Accounts of Highly Compensated Employees during the Plan Year, any Employer Contributions which are applied by the Trustee to pay interest on an Acquisition Loan, and any Financed Shares which are allocated as Forfeitures.

(iii) The term "Related Defined Contribution Plan" means a defined contribution plan, as defined in Treasury Regulations section 1.415(c)-1(a)(2)(i), which is maintained by the Company or a Related Company.

(c) Corrections. If a Participant's Annual Additions exceed the Maximum Annual Addition, the Administrator may correct such excess in accordance with EPCRS or subsequent guidance or authority issued by the IRS or the Treasury Department.

Section 8.02 Combining of Plans. In accordance with Section 8.01(c)(ii), it is intended that in complying with the limitation on Annual Additions under Code section 415(c) and the requirements of this Article VIII, a Participant's benefits under this Plan shall be limited after the Participant's benefits under a Related Defined Contribution Plan are limited.

Section 8.03 Highly Compensated Employee.

(a) With respect to any Plan Year, a "Highly Compensated Employee" means an eligible Employee who is a highly compensated employee as defined in Code section 414(q), which includes any Employee who:

(i) was at any time a 5% owner (as defined in Code section 416(i)) of any Employer or any Related Company during the Plan Year or the preceding Plan Year; or

(ii) for the preceding Plan Year (A) received 415 Compensation from an Employer or any Related Company in excess of $120,000 (for the 2017 Plan Year and as such amount may be adjusted annually by the Secretary of the Treasury) and (B) was in the Top-Paid Group. An Employee is in the "Top-Paid Group" for a Plan Year if such Employee is in the group consisting of the top 20% of Employees when ranked on the basis of Compensation paid during such Plan Year.

ARGENT_CEDENO_0000030

(b)    "4]5 Compensation" means Compensation; provided, that 415 Compensation excludes (A) contributions made by an Employer to a plan of deferred compensation to the extent that such contributions are not includible in the Participant's gross income for the taxable year in which contributed; (B) any distributions from a plan of deferred compensation; (C) amounts realized from the exercise of a non-qualified stock option, or when restricted stock (or property) held by a Participant either becomes freely transferrable or is no longer subject to a substantial risk of forfeiture and; (D) amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option.

(c)    A former Employee will be considered a Highly Compensated Employee if such former Employee was a Highly Compensated Employee either when he separated from service with the Employers, or at any time after he attained age 55. The determination of whether an Employee is a Highly Compensated Employee will be made with reference to the definitions provided in Code section 414(q) and any regulations issued by the Secretary of the Treasury thereunder (including any cost-of-living adjustments to the dollar figure above).

ARGENT_CEDENO_0000031

## ARTICLE IX.

### Settlement Date

Section 9.01    Settlement Date.  A Participant's "Settlement Date" is the date on which the first of the following occurs:

(a)    Normal Retirement:  the Participant's Severance from Employment is on or after the date on which he has attained age 65 ("Normal Retirement Age") and has been a Participant for at least five years.  A Participant's rights to the balances in his Accounts shall be nonforfeitable as of the Accounting Date coincident with or immediately preceding the date of his Normal Retirement pursuant to this Section 9.01(a).

(b)    Disability Retirement:  the Participant's Severance from Employment is on account of total and permanent disability in circumstances such that, as a result of a physical or mental impairment, the Participant would become eligible for Social Security disability benefits.  A Participant's rights to the balances in his Accounts shall be nonforfeitable as of the Accounting Date coincident with or immediately preceding the date of his Disability Retirement pursuant to this Section 9.01(b).

(c)    Death:  the Participant's death prior to Normal Retirement, Disability Retirement or Resignation or Dismissal, as described in Sections 9.01(a), (b) and (d) respectively.  A Participant's rights to the balances in his Accounts shall be nonforfeitable as of the Accounting Date coincident with or immediately preceding the date of his death pursuant to this Section 9.01(c).  Notwithstanding any contrary provision of the Plan, if a Participant's death occurs during a period of "qualified military service," as defined in Code section 414(u), his Account shall be treated, for all purposes under the Plan, as if the Participant had resumed employment with an Employer and then terminated employment due to death, and such Participant's Beneficiary shall be entitled to any additional benefits that the Participant would have been entitled to had the Participant resumed employment with an Employer and then terminated employment due to death.

(d)    Resignation or Dismissal:  the Participant's Severance from Employment is on account of resignation or dismissal prior to Normal Retirement, Disability Retirement or death, as described in Sections 9.01(a), (b), and (c), respectively.

Section 9.02    Transfer of Employment.  If a Participant is transferred from employment with an Employer to employment with a Related Company that is not an Employer, then for purposes of determining when the Participant's Settlement Date occurs under this Article IX, the Participant's employment with such Related Company (or any Related Company to which the Participant is subsequently transferred) shall be considered as employment with the Employers.

ARGENT_CEDENO_0000032

## ARTICLE X.

### Vesting, Forfeitures and Reinstatement

Section 10.01  Vesting in Benefits.

    (a)    Vesting Requirements.

        (i)    Except as provided in clause (iii), a Participant's Account shall be subject to vesting on the basis of his Years of Service for vesting purposes in accordance with the vesting schedule under Section 10.01(b); provided, that no allocations shall be made to a Participant's Accounts unless he is eligible for an allocation under Section 4.01.

        (ii)    The vested interest of the balances in all of a Participant's Accounts as of the Accounting Date coincident with or immediately preceding his Settlement Date (after all adjustments required under the Plan as of that date have been made) shall be nonforfeitable and shall be distributable to him, or in the event of his death, to his Beneficiary, under Section 11.01.

        (iii)    Notwithstanding clause (i), if a Participant's Settlement Date is due to Normal Retirement (as described in Section 9.01(a)), Disability Retirement (as described in Section 9.01(b)) or death (as described in Section 9.01(c)), the balances in all of his Accounts shall be fully vested and nonforfeitable as of the Accounting Date coincident with or immediately preceding his Settlement Date.

    (b)    Vesting Schedule.  Employer Contributions to a Participant's Account shall vest as follows:

| Years of Service | Vested Interest |
| --- | --- |
| Less than 2 years | 0% |
| 2 years but less than 3 years | 20% |
| 3 years but less than 4 years | 40% |
| 4 years but less than 5 years | 60% |
| 5 years but less than 6 years | 80% |
| 6 years or more | 100% |

    (c)    Amendments to Vesting Schedule.  If the Vesting Schedule in Section 10.01(b) is amended, (i) the vested interest of an Employee who is a Participant on the later of the adoption date or the effective date of such amendment shall not be less, as of such date, than the Participant's vested interest as determined without regard to such amendment, and (ii) an Employee who is a Participant on the later of the adoption date or the effective date of such amendment and has completed at least three Years of Service for vesting purposes as of such date may elect to have the vesting of his Account determined under the vesting schedule as amended or as in effect without regard to such amendment.

ARGENT_CEDENO_0000033

Section 10.02  Forfeitures.

(a)  To the extent that a Participant's Accounts are not distributable to him on his Settlement Date because such amounts are not vested pursuant to Section 10.01, such amounts shall constitute a "Forfeiture" upon the occurrence of the Participant's fifth consecutive One Year Break in Service; provided, that (i) Company Stock allocated to the Participant's ESOP Stock Account shall be forfeited only after all other assets in the Participant's Accounts have been forfeited, and (ii) if more than one class of Company Stock subject to an Acquisition Loan has been allocated to the Participant's ESOP Stock Account, then the same proportion of each such class of Company Stock shall be forfeited.

(b)  For purposes of this Section 10.02, (i) if the value of a Participant's vested Accounts is zero, then such Participant shall be deemed to have received a distribution of his entire vested Accounts as of the date of his termination of employment, and (ii) the non-vested portion of a Participant's Accounts shall be forfeited upon distribution or deemed distributions of such Accounts.

(c)  Forfeitures will be allocated in the same manner as Employer Contributions are allocated pursuant to Section 4.01.

(d)  If an amount must be restored to a re-employed Participant's Accounts in accordance with Section 10.03, such restoration shall be made, as directed by the Administrator, from Forfeitures, net income of the Trust which would otherwise be allocated to Participants, and/or from an Employer Contribution made for that purpose.

Section 10.03  Restoration of Forfeitures.

(a)  If a Participant is reemployed by an Employer after receiving a distribution of his entire vested Account under the Plan, the amount of such Participant's Forfeitures pursuant to Section 10.02 shall be restored to his Account, without adjustment for investment gains and losses; provided, that he repays the full amount of such distribution before the earlier of: (i) five years after the Participant's reemployment commencement date; or (ii) the date of the Participant's fifth consecutive One Year Break in Service beginning after the date of such distribution.

(b)  If a Participant is reemployed by an Employer after being deemed to have received a distribution of his entire vested Account under the Plan, the amount of such Participant's Forfeitures pursuant to Section 10.02 shall be restored to his Account, without adjustment for investment gains and losses; provided, that the Participant's reemployment commencement date is prior to the date of the Participant's fifth consecutive One Year Break in Service beginning after the date of such deemed distribution.

(c)  If a Participant's reemployment commencement date is after the date of the Participant's fifth consecutive One Year Break in Service, such Participant shall not be entitled to the restoration of Forfeitures pursuant to this Section 10.03.

ARGENT_CEDENO_0000034

Section 10.04 Participant Forfeiture Accounts.

        (a)     If a Participant (i) received a distribution of his entire vested Account under the Plan and (ii) a portion of his Account is subject to Forfeiture pursuant to Section 10.02, such portion of the Account which is subject to Forfeiture shall be transferred, effective as of the date of such distribution, to a separate account (a "Participant Forfeiture Account").

        (b)     Prior to Forfeiture pursuant to Section 10.02, a Participant Forfeiture Account shall be vested in an amount equal to $P(AB + R \times D)) - (R \times D)$, where (i) P is the percentage of the Participant's vested interest as of his Settlement Date, (ii) AB is the balance of the Participant Forfeiture Account, (iii) D is the amount of the Participant's distribution described in Section 10.04(a)(i), and (iv) R is the ratio of the Participant Forfeiture Account balance to the Participant Forfeiture Account balance immediately after the distribution described in Section 10.04(a)(i).

ARGENT_CEDENO_0000035

# ARTICLE XI.

## Distributions Following Settlement Date

Section 11.01 Manner of Distribution.

(a)    Distribution of Company Stock.  Distribution will be made in the form of whole shares of Company Stock, with cash equal to the value of any fractional shares.  However, if the Company's charter or bylaws restrict ownership of substantially all of the outstanding Company Stock to Employees and the Trust, or if the Company is an S Corporation, then the Participant's Accounts will be distributed in cash if the Administrator so elects, or distributed in kind subject to the provisions of Code section 409(h)(i)(B) as set forth in Sections 11.04(f) and 12.02.

(b)    Distribution Restrictions if Acquisition Loan Outstanding.    The distribution of a Participant's Account shall not include any Company Stock acquired with the proceeds of an Acquisition Loan until the close of the Plan Year in which such loan is repaid in full, except for: (i) distributions in connection with the diversification of investments in Company Stock pursuant to Section 6.02; (ii) distributions of small Account balances pursuant to Section 11.03(b); (iii) distributions upon a Participant's normal commencement date pursuant to Section 11.03(d); (iv) required minimum distributions pursuant to Section 11.03(e); and (v) distributions upon death pursuant to Sections 11.03(f) and (g), and Disability Retirement.

(c)    Mode of Distributions.    Subject to the conditions set forth below, distribution of the balances in a Participant's Accounts will be made to, or for the benefit of, the Participant or, in the case of the Participant's death, to or for the benefit of the Participant's Beneficiary, as directed by the Administrator, in the form of: (i) a lump sum; or (ii) substantially equal annual installments over a period not to exceed five years; provided, that each such installment shall be in an amount at least equal to the lesser of $1,000 or the remaining balance in the Participant's Accounts, even if this results in a complete distribution in a period less than five years.

(d)    Increased Distribution Period.  Notwithstanding the foregoing, the period over which distribution of a Participant's ESOP Stock Account may be made may be increased by one year, up to five additional years, for each $215,000 (or fraction thereof) by which the total balance of the Participant's Accounts exceeds $1,080,000. The aforementioned dollar amounts are for the 2017 Plan Year and shall be subject to cost-of-living adjustments prescribed by the Commissioner of Internal Revenue.

Section 11.02 Determination of Account Balances.  After a Participant's Settlement Date has occurred and pending complete distribution of the Participant's Account balances, the Participant's Accounts will be held under the Plan and will be subject to adjustment under Article VII.

ARGENT_CEDENO_0000036

Section 11.03 Timing of Distributions. Distribution of the balance of a Participant's Accounts shall be made as follows, subject to the provisions of this Article XI:

(a)  Distribution of Accounts -- General Rule. Except as otherwise provided in this Section 11.03, distribution of a Participant's Accounts shall commence as follows:

(i)  if a Participant's Settlement Date is due to Normal Retirement, Disability Retirement or death (as described in Sections 9.01(a), (b) and (c), respectively), distribution of the Participant's Accounts shall commence not later than one year after the end of the Plan Year in which the Participant's Settlement Date occurs; and

(ii)  if a Participant's Settlement Date is due to Resignation or Dismissal (as described in Section 9.01(d)), distribution of the Participant's Accounts shall commence not later than one year after the end of the Plan Year which is the fifth Plan Year following the Plan Year in which the Participant's Settlement Date occurs.

(b)  Distribution of Small Accounts. Notwithstanding any other provision of this Article XI, if the Administrator determines that a Participant's vested Account balances total $5,000 or less at any time on or after his Settlement Date, a mandatory distribution of the Participant's entire vested Account balances shall be made not less than 30 days and not more than 90 days (or such other time as permitted by law) after notification to the Participant satisfying the requirements of Code section 402(f), as follows:

(i)  if the Participant's vested Account balances total $1,000 or less, the Participant may elect to receive the distribution in a lump sum or in a direct rollover pursuant to Section 11.04; provided that, if the Participant fails to timely elect such distribution, the Administrator shall distribute such Account balance to the Participant in a lump sum; and

(ii)  if the Participant's account balance exceeds $1,000 but does not exceed $5,000, the Participant may elect to receive the distribution in a lump sum or in a direct rollover pursuant to Section 11.04; provided that, if the Participant fails to timely elect such distribution, the Administrator shall distribute the Account balance in an automatic direct rollover to an individual retirement plan within the meaning of Code section 7701(a)(37) (an "IRA") designated by the Administrator at a qualified financial institution that is unrelated to the Company or any Employer. Such IRA may be an individual retirement account or an individual retirement annuity, within the meaning of Code sections 408(a) and 408(b), respectively.

(c)  Participant Consent. Notwithstanding any other provision of this Article XI, if a Participant's vested Account balances total more than $5,000, no portion of his Account may be distributed to him before he attains Normal Retirement Age without his written consent. Failure to provide such consent within 30 days following solicitation of such consent by the Administrator shall defer the Participant's right to receive a distribution until his attainment of Normal Retirement Age (or his death, if earlier).

ARGENT_CEDENO_0000037

(d)     <u>Normal Commencement Date</u>. Unless the Participant otherwise elects, distribution of a Participant's Account balance shall commence not later than the 60th day following the close of the Plan Year in which the latest of the following occurs: (<u>i</u>) the Participant attains Normal Retirement Age; (<u>ii</u>) the tenth anniversary of the date on which the Participant commenced participation under this Plan; and (<u>iii</u>) the Participant terminates employment with the Related Companies.

(e)     <u>Required Minimum Distributions</u>. Notwithstanding any contrary provision of the Plan, distribution of a Participant's Account balance shall commence by his "<u>Required Commencement Date</u>."

(i)     The Required Commencement Date of a Participant who is not a 5% owner (as defined below) is April 1st of the calendar year next following the later of (<u>A</u>) the calendar year in which the Participant attains age 70½ or (<u>B</u>) the calendar year in which the Participant terminates his employment with the Related Companies.

(ii)     The Required Commencement Date of a Participant who is a 5% owner (as defined in Code section 416(i)) of an Employer or Related Company in the calendar year in which the Participant attains age 70½ shall be April 1st of the calendar year next following the calendar year in which the Participant attains age 70½.

(iii)     Required Minimum Distributions shall, at the Company's election, be made in annual installments in the minimum amounts required by regulations issued under Code section 401(a)(9) or in a lump sum.

(f)     <u>Death Before Required Commencement Date</u>. If a Participant dies before the Participant's Required Commencement Date, the Participant's benefits must be distributed over a period not exceeding the greater of: (<u>i</u>) five years from the death of the Participant; (<u>ii</u>) in the case of payments to a Beneficiary other than the Participant's Spouse, the life expectancy of such Beneficiary, <u>provided</u> that payments begin within one year after the Participant's death (or such later date as may be prescribed under Treasury Regulations); and (<u>iii</u>) in the case of payments to the Participant's Spouse, the life expectancy of such Spouse; <u>provided</u> that payments begin by the date the Participant would have attained age 70 ½.

(g)     <u>Death After Required Commencement Date</u>. If a Participant dies after the Participant's Required Commencement Date, the remaining portion of the Participant's benefits will be distributed at least as rapidly as under the method of distribution in effect at the Participant's death.

(h)     <u>In-Service Distributions After Age 70 ½</u>. A Participant who is not a 5% owner and who attains age 70½ while still employed by an Employer or a Related Company may elect to receive a distribution commencing April 1st of the calendar year next following the calendar year in which he attains age 70½, in installments as described in regulations issued under Code section 401(a)(9).

(i)     <u>Required Distributions</u>. Notwithstanding any contrary provision of the Plan, including this Section 11.03, distribution of the Account balance of a Participant shall be made in accordance with Code section 401(a)(9), Treasury Regulations sections 1.401 (a)(9)-2 through 1.401(a)(9)-2, and the incidental death benefit requirements of Code section

ARGENT_CEDENO_0000038

401(a)(9)(G). In the event of any inconsistency between the provisions of the Plan and the provisions of Code section 401(a)(9), the provisions of Code section 401(a)(9) shall control.

Section 11.04 Direct Rollovers. Certain individuals who are to receive distributions under the Plan may elect that such distributions be paid in the form of a direct rollover (as described in Code section 401(a)(31) and the regulations thereunder) to the trustee or custodian of a plan eligible to accept direct rollovers, subject to the following:

(a)     Eligible Rollover Distribution. A distribution may be paid in a direct rollover under this Section 11.04 only if the distribution constitutes an Eligible Rollover Distribution. An "Eligible Rollover Distribution" means a distribution under the Plan to an Eligible Distributee other than:

(i)     a distribution that is one of a series of substantially equal payments made annually or more frequently either over the life (or life expectancies) of the Participant or the joint lives (or life expectancies) of the Participant and his Beneficiary or over a specified period of ten years or more,

(ii)     a distribution required under Section 11.03(e) to meet the minimum distribution requirements of Code section 401(a)(9),

(iii)     any hardship distribution, or

(iv)     a distribution excluded from the definition of an Eligible Rollover Distribution under applicable Treasury Regulations.

Notwithstanding the foregoing, an Eligible Rollover Distribution includes only those amounts that would be includible in the gross income of the Eligible Distributee if such amounts were not rolled over to another plan as provided under Code section 402(c). The preceding sentence shall not apply to such distribution if the plan to which such distribution is transferred (A) is a qualified trust which is part of a plan which is a defined contribution plan and agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible, or (B) is an eligible retirement plan described in Code section 402(c)(8)(B)(i) or (ii).

(b)     Eligible Distributee. An "Eligible Distributee" is: (i) a Participant, (ii) a Participant's surviving Spouse who is entitled to receive payment of the Participant's Account balances after the Participant's death, or (iii) the Spouse or former spouse of a Participant who is an alternate payee under a qualified domestic relations order (as defined in Code section 414(p)(l)(A)).

(c)     Eligible Retirement Plan. A direct rollover of an Eligible Rollover Distribution may be made to no more than one Eligible Retirement Plan. Except as otherwise provided below, an "Eligible Retirement Plan" is:

(i)     an individual retirement account described in Code section 408(a),

(ii)     an individual retirement annuity described in Code section 408(b) (other than an endowment contract),

ARGENT_CEDENO_0000039

(iii)    an annuity plan described in Code section 403(a),

(iv)    a plan qualified under Code section 401(a) that by its terms permits the acceptance of rollover contributions,

(v)    an eligible deferred compensation plan described in Code section 457(b), which is maintained by a state, political subdivision of a state, any agency or instrumentality of a state or political subdivision of a state and any other organization (other than a governmental unit) which is exempt from tax pursuant to Code section 457(e)(1)(A), or

(vi)    an annuity contract described in Code section 403(b).

(d)    Minimum Amounts. An Eligible Distributee may elect a direct rollover of all or a portion of an Eligible Rollover Distribution only if the total amount of the Eligible Rollover Distributions expected to be received by the Eligible Distributee during the Plan Year is $200 or more (or such lesser amount as the Administrator may establish). An Eligible Distributee may elect payment of a portion of an Eligible Rollover Distribution as a direct rollover and may receive directly the remainder of such distribution, provided that the amount paid by direct rollover is at least $500 (or such lesser amount as the Administrator may establish).

(e)    Elections. An Eligible Distributee's election of a direct rollover pursuant to this Section 11.04 must be in writing on a form designated by the Administrator and must be filed with the Administrator at such time and in such manner as the Administrator shall determine. The Administrator shall establish such rules and procedures as it deems necessary to provide for distributions by means of a direct rollover.

(f)    Special Provisions for S Corporations. Company Stock consisting of stock in an S Corporation that is distributed to a Participant or Beneficiary shall, immediately prior to such distribution, be repurchased by the Company in the same manner as if the Participant or Beneficiary had elected a Put Option pursuant to Section 12.02 and the proceeds of such repurchase shall be distributed to such Eligible Retirement Plan in cash.

Section 11.05 Designation of Beneficiary.

(a)    Each Participant may designate any person or persons (who may be designated concurrently, contingently or successively) to whom the Participant's benefits are to be paid if the Participant dies before the Participant receives all of his benefits. A beneficiary designation must be made on a form furnished by the Administrator for this purpose, and the Participant must sign such form. A beneficiary designation form will be effective only when the form is filed with the Administrator while the Participant is alive and will cancel all of the Participant's beneficiary designation forms previously filed with the Administrator.

ARGENT_CEDENO_0000040

(b)     Notwithstanding the foregoing provisions of this Section 11.05 and any beneficiary designation filed with the Administrator in accordance with this Section 11.05, if a Participant dies and has a surviving Spouse on the Participant's date of death, the Account balances described in the preceding sentence shall be payable in full to the Participant's surviving Spouse in accordance with this Section 11.05 (treating such surviving Spouse as the Participant's Beneficiary), unless prior to the Participant's death the following requirements were met:

(i)     The Participant elected that the Participant's benefits under the Plan be paid to a person other than the Participant's surviving Spouse;

(ii)    The Participant's Spouse consented in writing to such election;

(iii)   The Spouse's consent acknowledged the effect of such election and was witnessed by a Plan representative or a notary public; and

(iv)    Such election designates a Beneficiary that may not be changed without further spousal consent, unless the Spouse executed a general written consent expressly permitting changes of the Beneficiary without any requirement of further consent of the Spouse.

(c)     For purposes of the Plan, and subject to the provisions of any qualified domestic relations order (as defined in Code section 414(p)(I)(A)), a Participant's "Spouse" means the person to whom the Participant is legally married at the earlier of the date of the Participant's death or the date payment of the Participant's benefits commenced and who is living on the date of the Participant's death. Pursuant to guidance provided in Internal Revenue Service Notice 2014-19, effective on and after June 26, 2013, any reference to "Spouse" in the Plan shall include an individual married to a Participant in a same-gender marriage that was validly entered into in a jurisdiction whose laws authorized such marriage, even if the Participant resides in a jurisdiction that does not recognize the validity of same-gender marriage.

(d)     If a deceased Participant failed to designate a Beneficiary as provided above, or if the Beneficiary dies before the Participant or before complete payment of the Participant's benefits, the Participant's benefits shall be distributed to the Participant's Spouse, or if there is none, to the legal representative or representatives of the estate of the last to die of the Participant and the Participant's Beneficiary.

(e)     The term "Beneficiary" as used in the Plan means the natural or legal person or persons designated by a Participant as the Participant's beneficiary under the last effective beneficiary designation form filed with the Administrator under this Section 11.05 and to whom the Participant's benefits would be payable under this Section 11.05; provided, that for purposes of Section 11.03, such Beneficiary shall also qualify as the Participant's designated beneficiary under Code section 401(a)(9) and Treasury Regulations section 1.401(a)(9)-4.

ARGENT_CEDENO_0000041

### Section 11.06  Rollover by Non-Spouse Beneficiary

(a)     Subject to Section 11.06(b), a Beneficiary who is other than the Participant's spouse and is a "designated beneficiary" within the meaning of Code section 401 (a)(9)(E) (a "Non-Spouse Designated Beneficiary") may elect a direct rollover pursuant to Section 11.04 of all or a portion of a death benefit to an individual retirement account under Code section 408(a) or an individual retirement annuity under Code section 408(b) established by the Non-Spouse Designated Beneficiary (an "Inherited IRA").

(b)     Notwithstanding Section 11.06(a), any amount payable to a Non-Spouse Designated Beneficiary that is deemed to be a minimum distribution pursuant to Section 11.03(e) may not be transferred into an Inherited IRA.

(c)     A direct rollover to an Inherited IRA elected by a Non-Spouse Designated Beneficiary pursuant to Section 11.06(a) shall be treated as an Eligible Rollover Distribution.

### Section 11.07  Missing Participants or Beneficiaries

(a)     Each Participant and each Beneficiary must file with the Administrator from time to time in writing his post office address and each change of post office address. If a Participant dies before the Participant receives all of the Participant's vested Account balances, the Participant's Beneficiary must file any change in his post office address with the Administrator.   Any communication, statement or notice addressed to a Participant or Beneficiary at the last post office address filed with the Administrator, or if no address is filed with the Administrator then, in the case of a Participant, at the Participant's last post office address as shown on the Employers' records, will be binding on the Participant and the Participant's Beneficiary for all purposes of the Plan.

(b)     If the amount of a Participant's or Beneficiary's distribution cannot be determined by the date on which a distribution is to commence, or if the Participant or Beneficiary cannot be located by such date, then distribution shall commence within 60 days following the date on which the amount of the distribution can be determined or after the date on which the Trustee locates the Participant or Beneficiary.

(c)     The Employers, the Trustee, and the Administrator shall not be required to search for or locate a Participant or Beneficiary. If the Administrator notifies a Participant or Beneficiary that the Participant or Beneficiary is entitled to a payment and also notifies the Participant or Beneficiary of the provisions of this Section 11.07, and the Participant or Beneficiary fails to claim his benefits or make his whereabouts known to the Administrator by the end of the third Plan Year following such notification, the benefits of the Participant or Beneficiary shall be deemed a Forfeiture, and allocated among the Eligible Participants for such Plan Year in accordance with Section 4.01.  If, after such a Forfeiture has occurred, such Participant or Beneficiary later claims his benefit, the amount so forfeited (but not any subsequent earnings thereon) shall be reinstated to the Participant's Account from the Employer Contributions and Forfeitures for the Plan Year in which such claim is made.

ARGENT_CEDENO_0000042

Section 11.08 <u>Facility of Payment</u>  When a person entitled to benefits under the Plan is under legal disability, or, in the Administrator's opinion, is in any way incapacitated so as to be unable to manage the person's financial affairs, the Administrator may direct the Trustee to pay the benefits to such person's legal representative.  Any payment made in accordance with the preceding sentence shall be a full and complete discharge of any liability for such payment under the Plan.

ARGENT_CEDENO_0000043

## ARTICLE XII.

### Rights, Restrictions, and Options on Company Stock

Section 12.01 Right of First Refusal.

(a)     Subject to the provisions of Section 12.01(g), shares of Company Stock distributed to Participants shall be subject to a "Right of First Refusal".

(b)     The Right of First Refusal shall provide that, prior to any subsequent transfer of Company Stock distributed to a Participant, the Participant (or the Participant's Beneficiary) must first make a written offer of such Company Stock to the Trust and to the Company at the then fair market value of such Company Stock, as determined by an "independent appraiser" who satisfies requirements similar to those of a "qualified appraiser" in Treasury Regulations under Code section 170(a)(1).

(c)     The Trust shall have the first priority to exercise the right to purchase Company Stock that is subject to a Right of First Refusal, and the Company shall have second priority to exercise such right.

(d)     A bona fide written offer from an independent prospective buyer shall be deemed to be the fair market value of such Company Stock for this purpose, unless the value per share, as determined by the independent appraiser as of the Accounting Date at the end of the immediately preceding Plan Year, is greater.

(e)     The Company and the Trust shall have a total of 14 days (from the date the offer is first received by the Company or the Trust) to exercise the Right of First Refusal on the same terms offered by the prospective buyer.

(f)     A Participant (or the Participant's Beneficiary) entitled to a distribution of Company Stock may be required to execute an appropriate stock transfer agreement (evidencing the Right of First Refusal) prior to receiving a certificate for Company Stock.

(g)     No Right of First Refusal shall be exercisable by reason of any of the following transfers:

(i)     Transfer upon disposition of any such shares by any legal representative, heir or legatee; provided, that following such transfer the shares shall remain subject to the Right of First Refusal;

(ii)     Transfer by a Participant or a Participant's Beneficiary in accordance with the Put Option pursuant to Section 12.02; or

(iii)     Transfer while Company Stock is listed on a national securities exchange registered under section 6 of the Securities Exchange Act of 1934, as amended, or quoted on a system sponsored by a national securities association registered under section 15A(b) of the Securities Exchange Act of 1934, as amended.

ARGENT_CEDENO_0000044

## Section 12.02  Put Option.

(a)      The Company shall issue a "Put Option" to each Participant or Beneficiary who receives a distribution of Company Stock if, at the time of distribution, Company Stock is not readily tradable on an established market.

(b)      The Put Option shall permit the Participant or Beneficiary to sell such Company Stock to the Company:

(i)      at its fair market value, determined in accordance with Section 7.08 as of the Accounting Date that is coincident with or immediately precedes the date of distribution, at any time during the 50-day period commencing on such date of distribution, and, if not exercised within that period, the Put Option will temporarily lapse; and

(ii)     if the Participant or Beneficiary does not exercise the Put Option prior to the temporary lapse pursuant to Section 12.02(b)(i), at its fair market value determined in accordance with Section 7.08 as of the Accounting Date that next follows the date of distribution, during the 60-day period commencing on the date in the Plan Year that next follows the date of distribution of the Administrator's written notification to the Participant or Beneficiary of such fair market value, and, if not exercised during such period, the Put Option will permanently lapse.

(c)      The Administrator, in its sole discretion, may extend the 60-day Put Option exercise period pursuant to Section 12.02(b)(i) to the extent necessary for the Company Stock to be valued by an independent appraiser as of the Accounting Date coincident with or immediately preceding the date the Company Stock was distributed.

(d)      The Trustee may be permitted by the Company to purchase Company Stock put to the Company under a Put Option.  Payment for Company Stock sold pursuant to a Put Option shall be made, as determined in the discretion of the Administrator, in the following forms:

(i)      If a Participant's ESOP Stock Account is distributed in a total distribution (that is, a distribution within one taxable year of the balance to the credit of the Participant's ESOP Stock Account), then payment for such Company Stock may be made with a promissory note that provides for substantially equal annual installments commencing within 30 days from the date of the exercise of the Put Option and over a period not exceeding five years, with interest payable at a reasonable rate (as determined by the Administrator) on any unpaid installment balance, with adequate security provided, and without penalty for any prepayment of such installments; or

(ii)     In a lump sum no later than 30 days after such Participant exercises the Put Option.

ARGENT_CEDENO_0000045

(e)    If the Company's charter or by-laws restrict ownership of substantially all of the outstanding Company Stock to Employees and the Trust or if the Company is an S Corporation, then shares of Company Stock distributed to or for the benefit of a Participant (or his Beneficiary) must be immediately sold to the Company in accordance with this Section 12.02 and the Participant will not be entitled to the two 60-day put periods.

Section 12.03 Share Legend; Other Restrictions.    Shares of Company Stock held or distributed by the Trustee may include such legend restrictions on transferability as the Company may reasonably require in order to comply with applicable Federal and state securities laws and the provisions of this Article XII. Except as otherwise provided in this Article XII, no shares of Company Stock held or distributed by the Trustee may be subject to a put, call or other option, or buy-sell or similar arrangement and the Trustee shall not obligate itself to acquire securities from a particular security holder at an indefinite time determined upon the happening of an event such as the death of the holder.

Section 12.04 Nonterminable Rights.    The provisions of this Article XII are nonterminable, and shall continue to be applicable to shares of Company Stock even if the Plan ceases to be an employee stock ownership plan within the meaning of Code section 4975(e)(7) or ERISA section 407(d)(6) or each Acquisition Loan has been repaid in full.

ARGENT_CEDENO_0000046

## ARTICLE XIII.

### Voting and Tendering of Company Stock

Section 13.01 <u>Voting and Tendering</u>. The voting of Company Stock held in the Trust, and if a tender offer is made for Company Stock, the tendering of such shares, shall be subject to the provisions of ERISA and the provisions of this Article XIII, to the extent such provisions are not inconsistent with ERISA.

Section 13.02 <u>Allocated Shares</u>. For purposes of this Article XIII, shares of Company Stock shall be deemed to be allocated and credited to a Participant's ESOP Stock Account in an amount to be determined based on the balance in such account on the Accounting Date coincident with or immediately preceding the record date of any vote or tender offer.

Section 13.03 <u>Voting of Company Stock</u>.

(a)     With respect to any corporate matter which involves the voting of:

(i)     Company Stock that is a registration-type class of securities; or

(ii)     Company Stock that is not a registration type class of securities with respect to the approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all of the assets of a trade or business, or such other transactions which may be prescribed by regulation,

each Participant may be entitled to direct the Trustee as to the exercise of any shareholder voting rights attributable to shares of Company Stock then allocated to his Accounts, but only to the extent required by Code sections 401(a)(22) and 409(e) and the Treasury Regulations thereunder. For purposes of this Section 13.03(a), each Participant shall be a Named Fiduciary of the Plan as described in ERISA section 402(a)(2).

(b)     The Administrator shall have the sole responsibility for determining when a corporate matter has arisen that involves the voting of Company Stock pursuant to Section 13.03(a), and the Administrator shall notify the Trustee on a timely basis of its determination.

(c)     If a Participant is entitled to direct the Trustee pursuant to Section 13.03(a), all allocated Company Stock as to which such instructions have been timely received by the Trustee (which may include an instruction to abstain) shall be voted by the Trustee in accordance with such instructions; provided, that the Trustee may vote the shares as it determines is necessary to fulfill the Trustee's fiduciary duties under ERISA.

(d)     Subject to the Trustee's fiduciary duties under ERISA, the Trustee shall vote: (i) any shares of Company Stock held in the Loan Suspense Account; (ii) any allocated shares of Company Stock as to which no voting instructions have been received; and (iii) all shares of Company Stock held in the Trust on any issue not subject to Participant voting rights pursuant to Section 13.03(a).

ARGENT_CEDENO_0000047

Section 13.04 Tendering of Company Stock. In the event of a tender offer or other offer to purchase shares of Company Stock held by the Trust, the Trustee shall tender or sell the shares as set forth in the Trust Agreement, subject to the Trustee's fiduciary duties under ERISA.

Section 13.05 Trustee Reliance on Information. In carrying out its responsibilities under this Article XIII, the Trustee may rely on information the Administrator furnishes to it, including the names and current addresses of Participants, the number of shares of Company Stock allocated to their Accounts, and the number of shares of Company Stock that the Trustee holds that have not yet been allocated.

ARGENT_CEDENO_0000048

## ARTICLE XIV.

### General Provisions

Section 14.01 <u>Interests Not Transferable</u>. The interests of Participants and their Beneficiaries under the Plan are not in any way subject to their debts or other obligations and, except as may be required by the tax withholding provisions of the Code or any state's income tax act, may not be voluntarily or involuntarily sold, transferred, alienated or assigned. Notwithstanding the foregoing, the Plan shall comply with any domestic relations order that, in accordance with procedures established by the Administrator, is determined to be a qualified domestic relations order (as defined in Code section 414(p)(1)(A)), and shall comply with any judgment or settlement to the extent permitted by Code section 401(a)(13)(C); provided that, subject to Article XI, a distribution to an "alternate payee" pursuant to such qualified domestic relations order shall not be permitted before the affected Participant has separated from service with the Related Companies or has reached his "earliest retirement age" under the Plan (as defined in Code section 414(p)(4)(B)).

Section 14.02 <u>Absence of Guaranty</u>. The Administrator, the Employers, and the Trustee do not in any way guarantee the Trust from loss or depreciation. The liability of the Administrator or the Trustee to make any payment under the Plan will be limited to the assets held by the Trustee that are available for that purpose.

Section 14.03 <u>Litigation by Participants or Other Persons</u>. To the extent permitted by law, if a legal action against the Trustee, an Employer, or the Administrator by or on behalf of any person results adversely to that person, or if a legal action arises because of conflicting claims to a Participant's or Beneficiary's benefits, the cost to the Trustee, an Employer, or the Administrator of defending the action will be charged to the extent possible to the sums, if any, that were involved in the action or were payable to the Participant or Beneficiary concerned.

Section 14.04 <u>Evidence</u>. Evidence required of anyone under the Plan may be by certificate, affidavit, document or other information that the person acting on it considers pertinent and reliable, and signed, made or presented by the proper party or parties.

Section 14.05 <u>Waiver of Notice</u>. Any notice required under the Plan may be waived by the person entitled to such notice.

Section 14.06 <u>Controlling Law</u>. To the extent not superseded by the laws of the United States, the laws of the State of New York (exclusive of conflict of law principles) shall be controlling in all matters relating to the Plan.

Section 14.07 <u>Statutory References</u>. Any reference in the Plan to a section of the Code or ERISA, or to a section of any other Federal law, shall include any comparable section or sections of any future legislation that amends, supplements or supersedes that section.

ARGENT_CEDENO_0000049

Section 14.08 Severability. In case any provisions of the Plan shall be held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining provisions of the Plan, and the Plan shall be construed and enforced as if such illegal and invalid provisions had never been set forth in the Plan.

Section 14.09 Additional Employers. With the consent of the Company, any Controlled Group Member may, by filing with the Company a written instrument to that effect, become an Employer hereunder by adopting the Plan and becoming a party to the Trust Agreement.

Section 14.10 Action By Employers. Any action authorized or required to be taken by the Company or an Employer under the Plan shall be by resolution of its board of directors, by resolution of a duly authorized committee of its board of directors, or by a person or persons authorized by resolution of its board of directors or such committee.

Section 14.11 Gender and Number. Where the context admits, words in the masculine gender include the feminine and neuter genders, the plural includes the singular, and the singular includes the plural.

Section 14.12 Indemnification. To the extent permitted by law, any member or former member of the Administrator, any person who was, is or becomes an officer or director of an Employer or a Related Company, or any Employee of an Employer to whom the Administrator or any other Employer has delegated any portion of its responsibilities under the Plan, and all employees and agents thereof, shall be indemnified and saved harmless by the Employers (to the extent not indemnified or saved harmless under any liability insurance contract or other indemnification arrangement with respect to the Plan) from and against any and all liability to which the Administrator and such other persons may be subject by reason of any act done or omitted to be done in good faith with respect to the administration of the Plan and the Trust, including all expenses reasonably incurred in their defense in the event that the Employers failed to provide such defense after having been requested in writing to do so.

Section 14.13 Participant Notices and Elections. The Administrator, in its discretion, may provide notices and may authorize Participants to make various requests for information, elections and other transactions under the Plan through the use of one or more of the following methods: (a) written communications; (b) electronic medium within the meaning of Treasury Regulations section 1.401(a)-21(e)(3); provided that, with respect to Participant notices and elections which are required to be in writing pursuant to applicable law, such use of electronic medium satisfies the consent requirements (including the right of Participants to withdraw such consent) of Treasury Regulations section 1.401(a)-21(b) and such electronic medium satisfies the requirements of Treasury Regulations section 1.401(a)-21(d); (c) telephonic, automated voice response system; (d) computer network; and (e) any other method designated by the Administrator.

ARGENT_CEDENO_0000050

## ARTICLE XV.

### Restrictions as to Reversion of Trust Assets to the Employers

Section 15.01 Employers' Right to Trust Assets. The Employers shall have no right, title or interest in the assets of the Trust, except as may be provided in a pledge agreement entered into between an Employer and the Trustee in connection with an Acquisition Loan (a "Pledge Agreement").

Section 15.02 Reversion of Trust Assets to Employers. No part of the assets of the Trust at any time will revert to or will be repaid to the Employers, directly or indirectly, except as follows:

(a) if the Internal Revenue Service initially determines that the Plan, as applied to an Employer, does not meet the requirements of a qualified plan under Code section 401(a), the assets of the Trust attributable to contributions made by the Employer under the Plan shall be returned to the Employer within one year of the date of denial of qualification of the Plan as applied to the Employer;

(b) if a contribution or a portion of a contribution is made by an Employer as a result of a mistake of fact, such contribution or portion of a contribution shall not be considered to have been contributed to the Trust by the Employer and, after having been reduced by any losses of the Trust allocable thereto, shall be returned to the Employer within one year of the date the amount is paid to the Trust; and

(c) each contribution made by an Employer is conditioned upon the deductibility of such contribution as an expense for Federal income tax purposes. If and to the extent the deduction for the contribution made by the Employer is disallowed, such contribution, or portion of such contribution, after having been reduced by any losses of the Trust allocable thereto, shall be returned to the Employer within one year of the date of disallowance of the deduction.

(d) If there is a default on an Acquisition Loan:

(i) an Employer may exercise its rights under the Pledge Agreement with respect to the shares of Company Stock subject to the Pledge Agreement (including, but not limited to, the sale of pledged shares, the transfer of pledged shares to the Employer, and the registration of pledged shares in the Employer's name); and

(ii) the value of Plan assets transferred in satisfaction of the Acquisition Loan must not exceed the default amount and, if the lender is a disqualified person (as defined in Code section 4975(e)(2)), the value of the Plan assets transferred must not exceed the amount by which there was a failure to satisfy the Acquisition Loan's payment schedule.

ARGENT_CEDENO_0000051

## ARTICLE XVI.

### Amendment and Termination

Section 16.01 Amendment. While the Company expects and intends to continue the Plan, the Company reserves the right to amend the Plan from time to time by action of the Board; provided, that:

(a)  An amendment may not change the duties and liabilities of the Administrator or the Trustee without the consent of the Administrator or the Trustee, whichever is applicable;

(b)  An amendment shall not reduce the value of a Participant's nonforfeitable benefits accrued prior to the later of the adoption or the effective date of the amendment;

(c)  Except as provided in Article XV, under no condition shall any amendment result in the return or repayment to the Employers of any part of the Trust or the income therefrom or result in the distribution of the Trust for the benefit of anyone other than Employees and former Employees of the Employers and any other persons entitled to benefits under the Plan; and

(d)  The Administrator shall notify the Trustee of any amendment to the Plan within a reasonable period of time.

Section 16.02 Termination. The Plan will terminate as to all Employers on any date specified by the Company. The Plan will terminate as to an individual Employer on the date it is terminated by that Employer upon 30 days' advance written notice of the termination is given to the Administrator, the Trustee and the other Employers.

Section 16.03 Nonforfeitability and Distribution on Termination. On termination or partial termination of the Plan or upon the complete cessation of Employer Contributions to the Plan, the rights of all affected Participants to benefits accrued as of the date of such termination or such complete cessation of contributions, after all adjustments then required have been made, shall be nonforfeitable. The Administrator shall specify the date of such termination or partial termination or complete cessation of contributions as a Special Accounting Date. All appropriate provisions of the Plan will continue to apply until the account balances of all such Participants have been distributed under the Plan.

Section 16.04 Plan Merger, Consolidation, Etc. In the case of any merger or consolidation with, or transfer of assets or liabilities to, any other plan, each Participant's benefits (if the Plan terminated immediately after such merger, consolidation or transfer) shall be equal to or greater than the benefits the Participant would have been entitled to receive if the Plan had terminated immediately before the merger, consolidation or transfer.

ARGENT_CEDENO_0000052

## ARTICLE XVII.

### Administration

Section 17.01 <u>The Administrator</u>. The Plan is administered by an Administrator appointed by the Company, which shall consist of one or more individuals constituting the Strategic ESOP Committee (who may but need not be Employees of the Employers) to conduct Plan administrative functions.

Section 17.02 <u>General Powers, Rights, and Duties</u>. The Administrator shall have all the powers necessary and appropriate to discharge its duties under the Plan, which powers shall be exercised in the sole and absolute discretion of the Administrator, including, but not limited to, the following:

      (a)    To construe and interpret the provisions of the Plan and to make factual determinations thereunder, including the power to determine the rights or eligibility under the Plan of Employees, Participants, or any other persons, and the amounts of their benefits (if any) under the Plan, and to remedy ambiguities, inconsistencies or omissions, and such determinations by the Administrator shall be binding on all parties.

      (b)    To adopt such rules of procedure and regulations as in its opinion may be necessary for the proper and efficient administration of the Plan and as are consistent with the Plan and Trust Agreement.

      (c)    To enforce the Plan in accordance with the terms of the Plan and the Trust Agreement and in accordance with the rules and regulations the Administrator has adopted.

      (d)    To direct the Trustee with respect to payments or distributions from the Trust in accordance with the provisions of the Plan.

      (e)    To furnish the Employers with such information as may be required by them for tax or other purposes in connection with the Plan.

      (f)    To employ agents, attorneys, accountants, actuaries or other persons (who also may be employed by the Employers) and to allocate or delegate to them such powers, rights and duties as the Administrator may consider necessary or advisable to properly carry out administration of the Plan; <u>provided</u>, that such allocation or delegation and the acceptance thereof by such agents, attorneys, accountants, actuaries or other persons, shall be in writing.

      (g)    To appoint an investment manager as defined in ERISA section 3(38) to manage (with power to acquire and dispose of) the assets of the Plan, which investment manager may or may not be a subsidiary of the Company, and to delegate to any such investment manager all of the powers, authorities and discretions granted to the Administrator hereunder or under the Trust Agreement (including the power to delegate and the power, with prior notice to the Administrator, to appoint an investment manager), and to remove any investment manager; <u>provided</u>, <u>however</u>, that the power and authority to manage, acquire, or dispose of any asset of

ARGENT_CEDENO_0000053

the Plan shall not be delegated except to an investment manager, and provided, further, that the acceptance by any investment manager of such appointment and delegation shall be in writing, and the Administrator shall give notice to the Trustee, in writing, of any appointment of, delegation to or removal of an investment manager.

(h)    To authorize the Trustee to act without the direction of the Administrator with regard to any matter concerning the purchase, sale, or voting of Company Stock, including the financing and other matters incidental to such purchase or sale, and upon the written consent of the Trustee to accept such responsibility, the Administrator shall have no authority or responsibility whatsoever with regard to the matters so delegated to the Trustee.

Section 17.03 Interested Administrator Member. If a member of the Administrator is also a Participant in the Plan, the Administrator member may not decide or determine any matter or question concerning distributions of any kind to be made to the Administrator member or the nature or mode of settlement of the Administrator member's benefits, unless such decision or determination could be made by the Administrator member under the Plan if the Administrator member were not serving as the Administrator.

Section 17.04 Administrator Expenses. All costs, charges and expenses reasonably incurred by the Administrator will be paid by the Company to the extent not paid from the assets of the Trust. No compensation will be paid to a member of the Administrator as such.

Section 17.05 Uniform Rules. The Administrator shall administer the Plan on a reasonable and nondiscriminatory basis and shall apply uniform rules to all persons similarly situated.

Section 17.06 Information Required by the Administrator. Each person entitled to benefits under the Plan shall furnish the Administrator with such documents, evidence, data or information as the Administrator considers necessary or desirable for the purpose of administering the Plan. The Employers shall furnish the Administrator with such data and information as the Administrator may deem necessary or desirable in order to administer the Plan. The records of the Employers as to an Employee's or a Participant's period of employment, Hours of Service, termination of employment and the reason therefore, leave of absence, reemployment and Compensation will be conclusive on all persons unless determined to the Administrator's satisfaction to be incorrect.

Section 17.07 Review of Benefit Determinations. The Administrator will provide notice in writing to any Participant or Beneficiary whose claim for benefits under the Plan is denied, and the Administrator shall afford such Participant or Beneficiary a full and fair review of its decision if so requested.

Section 17.08 Administrator's Decision Final.    Subject to applicable law, any interpretation of the provisions of the Plan and any decisions on any matter within the discretion of the Administrator made by the Administrator in good faith shall be final and binding on all persons. A misstatement or other mistake of fact shall be corrected when it becomes known, and the Administrator shall make such adjustment on account thereof as it considers equitable and practicable.

ARGENT_CEDENO_0000054

Section 17.09 Denial Procedure and Appeal Process.

    (a)    If a Participant, Beneficiary or any other person who believes he may be entitled to benefits under the Plan (a "Claimant") has an unresolved question about eligibility for benefits, the form of benefits, or the amount of benefits to be received or being received under the Plan after consulting with the Administrator or its representatives, the Claimant may submit a written request for formal review to the Administrator within 60 days after the Claimant's receipt of notification of Plan benefits or an estimate of Plan benefits.

    (b)    The Administrator shall make a review decision within 60 days after receipt of a request pursuant to subsection (a) (120 days in special circumstances). The Administrator shall inform the Claimant of such decision within 90 days after receipt of such request (180 days in special circumstances). However, if the Administrator fails to inform the Claimant of the decision within this period, the Claimant may request a further review by the Administrator, as described in subsection (d), as if the Claimant had received notice of an adverse decision at the end of that period.

    (c)    The Administrator's decision shall be written in a manner calculated to be understood by the Claimant, setting forth the specific reasons for any denial of a benefit or benefit option, specific reference to pertinent Plan provisions on which such denial is based, a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary, and an explanation of the Plan's claim review procedure.

    (d)    The Administrator shall advise the Claimant that (i) the Claimant or the Claimant's duly authorized representative may request a further review by the Administrator of the decision denying the claim by filing with the Administrator, within 60 days after such notice has been received by the Claimant, a written request for such review and (ii) the Claimant may review pertinent documents, and submit issues and comments in writing, within the same 60 day period.

    (e)    The Administrator shall review a request filed pursuant to subsection (d) within 60 days after receipt of such request, unless special circumstances require an extension of time for processing, in which case the review will be completed and decision rendered within 120 days. The Administrator shall provide the Claimant with written notice of the decision, which shall include specific reasons for the decision and specific references to pertinent Plan provisions on which the decision is based. Such decision by the Administrator shall be final and shall terminate the review process.

    (f)    Following the exhaustion of the claims procedure set forth in subsections (a) through (e), a Claimant whose claim for benefits has been partially or completely denied may initiate arbitration in accordance with Section 17.10; provided, that no such arbitration may be brought unless and until the Claimant (i) has submitted a timely claim for benefits in accordance with subsections (a) through (e); (ii) has been notified by the Administrator that the claim has been denied (or such claim is deemed denied); (iii) filed a written request for a review of the claim in accordance with subsections (a) through (e); and (iv) has been notified in writing of an adverse benefit determination on review.

ARGENT_CEDENO_0000055

(g)     Any arbitrator's decision will be premised solely on the terms of the Plan and the record developed during the administrative review process, and the determination made by the Administrator will be reviewed under an abuse of discretion standard.

Section 17.10  Mandatory and Binding Arbitration.

(a)     As a condition to (i) any Employee becoming eligible to participate in the Plan, (ii) any Employee, Participant or Beneficiary receiving any contributions to his Accounts, or (iii) any Employee, Participant or Beneficiary receiving any benefit under the Plan, such Employee, Participant, or Beneficiary shall be bound by the provisions of this Section 17.10 (the "Arbitration Procedure") to resolve all Covered Claims (as defined in Section 17.10(b)).

(b)     Any claim by a Claimant (i) that arises out of, concerns or relates to the Plan or the Trust, including without limitation, any claim for benefits, (ii) asserting a breach of, or failure to follow, the Plan or Trust; or (iii) asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty, ERISA section 510 claims, and claims for failure to provide in a timely manner notices or information required by ERISA or the Code (collectively, "Covered Claims"), shall be settled by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes (the "Employment Dispute Rules") of the American Arbitration Association ("AAA") then in effect.

(c)     The AAA Supplementary Rules for Class Arbitrations shall not be used in arbitration pursuant to the Arbitration Procedure.

(d)     If the Covered Claims solely involve (i) claims under ERISA section 502(a)(1)(B) to recover benefits due to the Claimant under the terms of the Plan, to enforce the Claimant's rights under the terms of the Plan, or to clarify the Claimant's rights to future benefits under the terms of the Plan, or (ii) claims for penalties under ERISA section 502(c), then Covered Claims shall be submitted to and decided by only one (1) arbitrator.  For all other disputes, the Covered Claims shall be submitted to and decided by three (3) arbitrators.

(e)     The Claimant shall assert all Covered Claims in the same arbitration and shall not split Covered Claims.  The judgment on the final award rendered by the arbitrator may be entered in any court having jurisdiction thereof and shall be *res judicata* as to all Covered Claims the Claimant asserted or could have asserted in the arbitration demand.

(f)     All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis.  Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy that has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant.

(g)     If a Covered Claim is brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where

ARGENT_CEDENO_0000056

such pro-rated amount is intended to provide a remedy solely for the benefit of the Claimant's Accounts, or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant.

(h) The requirements of Sections 17.10(f) and 17.10(g) shall govern irrespective of any AAA rule or decision to the contrary and shall be a material and non-severable term of the Arbitration Procedure. If an arbitrator(s) or a court of competent jurisdiction finds these requirements to be unenforceable or invalid, then the entire Arbitration Procedure shall be rendered null and void in all respects. Except as to the applicability and enforceability of the requirements of Sections 17.10(f) and 17.10(g), the arbitrator(s) shall have exclusive authority to resolve any dispute or issue of arbitrability with respect to the Arbitration Procedure, including as to the jurisdiction of the arbitrator(s) or relating to the existence, scope, validity, enforceability or performance of the Arbitration Procedure or any of its provisions. Any dispute or issue as to the applicability or validity of the requirements of Sections 17.10(f) and 17.10(g) shall be determined solely by the court designated in Section 17.10(r). Nothing in the Arbitration Procedure shall preclude a party from seeking interim or provisional relief or remedies in aid of arbitration from such court.

(i) The arbitrator(s) shall be mutually acceptable to all parties to the dispute and must be attorney(s) with prior experience with ERISA claims. The arbitrator(s) need not be selected from the AAA's panel of arbitrators; provided, that the parties to the dispute agree on the selection of the arbitrator(s). If, however, the parties cannot agree on the selection of the arbitrator(s) within twenty-one (21) days of the demand for arbitration, then the arbitrator(s) shall be selected pursuant to the Employment Disputes Rules; provided, that (i) the list of potential arbitrators provided by the AAA shall be limited to attorneys with prior ERISA experience; (ii) for an arbitration to be heard by one arbitrator, the AAA shall provide a list of seven (7) potential arbitrators from which the parties shall alternatively strike names until only one name remains, with the Claimant striking first; and (iii) for an arbitration to be heard by three (3) arbitrators, the AAA shall provide a list of eleven (11) potential arbitrators from which the parties shall alternatively strike names until only three (3) names remain, with the Claimant striking first.

(j) Arbitration proceedings shall be held in New York, New York, or at such other place as may be selected by mutual agreement of the parties. A Claimant may initiate arbitration by serving a demand for arbitration on the Administrator and, if applicable, the Trustee, and by filing such demand with the appropriate office of the AAA. In order to save time and expenses, the parties may agree to have the arbitrator(s), and not the AAA, administer the arbitration. In the absence of such an agreement, the AAA will administer the arbitration. Covered Claims which are not submitted to arbitration within the earlier of the applicable statutory period of limitations or three (3) years of the date on which it accrued shall be barred as untimely. Any demand for arbitration involving a claim under ERISA section 502(a)(1)(B) shall be served on the Administrator and, if applicable, the Trustee, and filed with the AAA within twelve (12) months of the date on which the claim denial is issued by the Administrator in accordance with Section 17.09, or the ERISA section 502(a)(1)(B) claim shall be barred as untimely.

ARGENT_CEDENO_0000057

(k)     The arbitrator(s) will apply the same standards of review as would apply to the claims if asserted in federal court. In any arbitration over an ERISA section 502(a)(1)(B) claim, including a claim for benefits under the Plan, discovery will be limited to Plan documents and the record developed during the administrative review process, and the determination made by the Administrator during the administrative review process will be reviewed under an "abuse of discretion" (a/k/a "arbitrary and capricious") standard of review. Similarly, it is intended that in any arbitration over a claim involving the review of any action, inaction or determination by a Plan fiduciary for which the fiduciary had been granted discretionary authority, such fiduciary's action, inaction or determination will also be reviewed under an "abuse of discretion" (a/k/a "arbitrary and capricious") standard of review, even if such alleged action, inaction or determination involves an alleged breach of fiduciary duty or violation of ERISA or the Code. Subject to these limitations, the arbitrator(s) shall have the discretion to order such discovery as permitted under the Employment Disputes Rules. All disputes regarding discovery shall be decided by the arbitrator(s).

(l)     Any arbitration award shall be in writing. In rendering the award, the arbitrator(s) shall determine the respective rights and obligations of the parties under federal law, or, if federal law is not applicable, the laws of the State of New York. The arbitration award shall be binding on all parties solely with respect to the Claimant's individual claims and it shall have no effect with respect to claims of any other Participant or Beneficiary.

(m)     Except as may be awarded by the arbitrator(s) in a final award: (i) fees and expenses of the arbitrator(s) and arbitration shall be advanced by the Employer; and (ii) except as may be otherwise provided in the Plan, each party shall bear the expense of his, her or its own counsel, experts, witnesses, and preparation and presentation of evidence. The arbitrator(s) may include in his, her or their final award: (A) an award of arbitration fees and expenses or attorneys' fees and expenses to the extent allowed under ERISA; and (B) with respect to attorneys' fees and costs that a prevailing party is entitled to on a statutory claim or that a party is entitled to pursuant to a written agreement between the parties, an award of reasonable attorneys' fees and costs in accordance with the applicable statute or written agreement; provided, that the arbitrator(s) shall resolve any dispute as to the reasonableness of any fee or cost that may be awarded.

(n)     Neither the Claimant nor the arbitrator(s) may disclose the existence, subject matter, or results of any arbitration without the Employer's prior written consent. This confidentiality and nondisclosure restriction shall apply to all aspects of the arbitration proceeding, including without limitation, discovery, testimony, other evidence, briefs, and the award. In the event of a breach or threatened breach of this restriction, the Employer may seek temporary, preliminary and/or permanent injunctive relief to prevent such breach or threatened breach, as well as any damages suffered by the Employer, the Administrator or the Trustee. In the event the Employer brings an action to enforce this confidentiality and nondisclosure restriction and receives any remedy (whether temporary or permanent), the Claimant or arbitrator(s) responsible for the breach or threatened breach shall pay the Employer's attorneys' fees and expenses. In any action to confirm or set aside the arbitration award, the parties shall cooperatively seek to file the arbitration award under seal or for an in camera inspection by the court without the award being filed in the public record.

ARGENT_CEDENO_0000058

(o)     The parties intend that the arbitrator(s) be independent and impartial. To this end, the arbitrator(s) shall disclose to the parties, both before and during the arbitration proceedings, any professional, family, or social relationships, past or present, with any party or counsel.

(p)     The Arbitration Procedure shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"). Subject to the provisions of the FAA, the final award rendered by the arbitrator(s) shall be final and binding on the parties to the arbitration with respect to the Claimant's individual claims only.

(q)     The Arbitration Procedure shall apply to all Covered Claims, whether asserted solely against one or more of the Plan's fiduciaries or against the Employer or any other non-fiduciary (e.g., a Plan service provider).

(r)     If a Claimant wishes to pursue any Covered Claim, the Claimant shall comply with the Arbitration Procedure and shall not file any such claim in a state or federal court. To the extent that any Claimant fails or refuses to comply with the Arbitration Procedure or wishes to challenge its legal enforceability, or to the extent the Arbitration Procedure is invalidated, such action or challenge shall be filed exclusively in the United States District Court for the district in which the Plan is administered. In the event a Claimant makes an unsuccessful challenge to the validity, enforceability or scope of the Arbitration Procedure in any court, the Claimant shall, to the maximum extent permitted by law, reimburse the defendants in that action for all attorneys' fees, costs, and expenses incurred by them in defending against the Claimant's unsuccessful court challenge.

ARGENT_CEDENO_0000059

## ARTICLE XVIII.

### Special Rules Applicable When Plan is Top-Heavy

Section 18.01 <u>Purpose and Effect</u>. The purpose of this Article XVIII is to comply with the requirements of Code section 416. The provisions of this Article XVIII are effective for each Plan Year beginning on or after the Effective Date in which the Plan is a "<u>Top-Heavy Plan</u>" within the meaning of Code section 416(g).

Section 18.02 <u>Top-Heavy Plan</u>. In general, the Plan will be a Top-Heavy Plan for any Plan Year if, as of the last day of the preceding Plan Year (the "<u>Determination Date</u>"):

     (a)    the Plan's Top Heavy Ratio exceeds 60% and the Plan is not part of a Required Aggregation Group or a Permissive Aggregation Group;

     (b)    the Top Heavy Ratio of the Plan's Required Aggregation Group exceeds 60% and the Plan is not part of a Permissive Aggregation Group; or

     (c)    the Top Heavy Ratio of both the Plan's Required Aggregation Group and its Permissive Aggregation Group exceeds 60%.

Section 18.03 <u>Top Heavy Ratio</u>. The "<u>Top Heavy Ratio</u>" shall be determined as follows:

     (a)    If the Required Aggregation Group or Permissive Aggregation Group, as applicable, consists entirely of defined contribution plans, or if the Plan is not part of a Required Aggregation Group or Permissive Aggregation Group, the Top Heavy Ratio shall be the following fraction:

          (i)    a numerator equal to the sum of the account balances of all Key Employees under such plans or the Plan, as applicable, and

          (ii)    a denominator equal to the sum of the account balances of all participants under such plans or of all Participants, as applicable.

     (b)    If the Required Aggregation Group or Permissive Aggregation Group, as applicable, includes a defined benefit plan which, during the Plan Year ending on the Determination Date, covered or could cover an Active Participant, the Top Heavy Ratio shall be the following fraction:

          (i)    a numerator equal to the sum of the account balances of all Key Employees under such plans which are defined contribution plans, *plus* the sum of the present value of accrued benefits of all Key Employees under such plans which are defined benefit plans, and

          (ii)    a denominator equal to the sum of the account balances of all participants under such plans, *plus* the sum of the present value of accrued benefits of all participants under such plans which are defined benefit plans.

ARGENT_CEDENO_0000060

(c)     For purposes of determining the Top Heavy Ratio:

(i)     A participant's account balance in a defined contribution plan shall be determined as of the Determination Date;

(ii)    the present value of a participant's accrued benefit in a defined benefit plan shall be determined as of the date such plan determines costs for minimum funding that falls within 12 months of the most recent Determination Date, except as provided in Code section 416 with respect to the first and second plan years of such plan;

(iii)   a participant's account balances or accrued benefits shall be increased by the aggregate distributions, if any, made with respect to the participant during the one year period ending on the Determination Date, including distributions under a terminated plan that, if it had not been terminated, would have been required to be included in the Required Aggregation Group or Permissive Aggregation Group; provided, that in the case of a distribution made for a reason other than Severance from Employment, death, or disability, this provision shall be applied by substituting "five year period" for "one year period";

(iv)    the account balances or accrued benefits of a participant who was previously a Key Employee, but who is no longer a Key Employee, shall be disregarded;

(v)     the account balances or accrued benefits of a beneficiary of a participant shall be considered Accounts or accrued benefits of the participant;

(vi)    the account balances or accrued benefits of a participant who has not performed services for an Employer or a Related Company at any time during the one year period ending on the Determination Date shall be disregarded; and

(vii)   any rollover contribution (or similar transfer) from a plan maintained by a corporation other than an Employer under this Plan initiated by a participant shall not be taken into account as part of the participant's aggregate account balances.

Section 18.04     Definitions.

(a)     "Key Employee." In general, a Key Employee is an Employee (or a former or deceased Employee) who, at any time during the Plan Year that includes the Determination Date, is (in accordance with Code section 416(i)(1) and the applicable regulations and other guidance of general applicability issued thereunder):

(i)     an officer of the Employer having annual Compensation greater than $145,000 (as adjusted under Code section 416(i)(1));

(ii)    a 5% owner of the Employer; or

(iii)   a 1% owner of the Employer having annual Compensation of more than $150,000.

ARGENT_CEDENO_0000061

(b)    "Non-Key Employee." A Non-Key Employee is any Active Participant who is not a Key Employee, including an Active Participant who is a former Key Employee.

(c)    "Permissive Aggregation Group." A Permissive Aggregation Group is the Required Aggregation Group plus any other defined contribution plan and defined benefit plan of an Employer or a Related Company which, when considered as a group with the Required Aggregation Group, would satisfy the requirements of Code sections 401(a)(4) and 410.

(d)    "Required Aggregation Group." The Required Aggregation Group is each other defined contribution plan and defined benefit plan maintained by an Employer that (i) covers or covered a Key Employee as a participant at any time during the Plan Year ending on the Determination Date or during the four Plan Years preceding the Determination Date (whether or not such plan is terminated as of the Determination Date), or (ii) is maintained by an Employer in order for a plan covering a Key Employee to satisfy Code sections 401(a)(4) or 410.

Section 18.05  Minimum Vesting. For any Plan Year in which the Plan is a Top-Heavy Plan, a Participant shall be vested in his Account pursuant to the following vesting schedule:

| Years of Service | Vested Interest |
|---|---|
| Less than 2 years | 0% |
| 2 years but less than 3 years | 20% |
| 3 years but less than 4 years | 40% |
| 4 years but less than 5 years | 60% |
| 5 years but less than 6 years | 80% |
| 6 years or more | 100% |

If this Section 18.05 becomes effective, and the Plan subsequently ceases to be a Top-Heavy Plan, no Participant shall have his vested percentage reduced.

Section 18.06  Minimum Employer Contribution.

(a)    Subject to this Section 18.06 and Section 18.07, for any Plan Year in which the Plan is a Top-Heavy Plan, the Employer contribution credited to each Non-Key Employee shall not be less than 3% of such Non-Key Employee's Compensation for that year.

(b)    A Non-Key Employee's eligibility for a minimum Employer contribution pursuant to this Section 18.06 shall not be subject to a minimum number of Hours of Service or minimum amount of Compensation.

(c)    The total Employer contribution credited in any year to a Non-Key Employee (expressed as a percentage of such Participant's Compensation) shall not exceed the maximum total Employer contribution credited in that year to a Key Employee (expressed as a percentage of such Key Employee's Compensation).

(d)    Contributions made by an Employer under the Plan pursuant to Participants' income deferral authorizations shall not be deemed Employer contributions for purposes of this Section 18.06.

ARGENT_CEDENO_0000062

(e)     The amount of a Non-Key Employee's minimum Employer contribution otherwise required under this Section 18.06 shall be reduced by the amount of Employer Contributions allocated to such Participant for a Plan Year ending with or within that Plan Year under any other tax-qualified defined contribution plan maintained by an Employer.

(f)     Employer matching contributions shall be taken into account for purposes of satisfying the minimum Employer contribution requirements under this Section 18.06. If the Plan provides that the minimum Employer contribution requirement shall be met in another plan, this Section 18.06(f) shall apply with respect to matching contribution under such other plan. Employer matching contributions that are used to satisfy the minimum Employer contribution requirements shall be treated as matching contributions for purposes of the actual contribution percentage test and other requirements of Code section 401(m).

Section 18.07  Coordination of Benefits.  For any Plan Year in which the Plan is a Top-Heavy Plan:

(a)     if a Non-Key Employee is entitled to a minimum Employer contribution under another defined contribution plan or a defined benefit plan of an Employer or a Related Company, the minimum contribution pursuant to Section 18.06 shall be made under this Plan only to the extent that such contribution is not made under such other plan; and

(b)     if a minimum Employer contribution is required to be made under the Plan to a Non-Key Employee who is a participant in a defined benefit plan of an Employer or a Related Company, such minimum contribution shall not be less than 5% of such Non-Key Employee's Compensation for such Plan Year.

*— Signature Page follows —*

ARGENT_CEDENO_0000063

**IN WITNESS WHEREOF,** the Company has adopted the foregoing Plan this 28th day of December, 2017, effective as of May 1, 2017.

Strategic Financial Solutions, LLC

By: _____

Name: Ryan Sasson
Title: President

*-- Signature Page to the Strategic ESOP --*

ARGENT_CEDENO_0000064

## Appendix A
## Employers

The participating Employers in the Plan as of October 31, 2017 and the effective date of such Employer's participation are set forth below.  This Appendix A will be updated to reflect any change in the participating Employers.

| | |
|---|---|
| Strategic Financial Solutions, LLC | May 1, 2017 |
| Strategic Client Support, LLC | May 1, 2017 |
| Strategic Consulting, LLC | May 1, 2017 |
| Strategic I D., LLC | May 1, 2017 |
| Strategic Family, Inc. | October 31, 2017 |

ARGENT_CEDENO_0000065

## Appendix B
## S Corporation Status

Pursuant to Section 4.02(a), set forth below is the S Corporation status of the Company and each participating Employer as of October 31, 2017. This Appendix B will be updated to reflect any change in the S Corporation status of the Company or of any participating Employer.

| | |
|---|---|
| Strategic Financial Solutions, LLC | Single Member LLC |
| Strategic Family, Inc. | C Corporation |
| Strategic Client Support, LLC | Single member LLC |
| Strategic Consulting, LLC | Single member LLC |
| Strategic I.D., LLC | Single member LLC |

ARGENT_CEDENO_0000066