# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term 2022

No. 21-2891-cv

RAMON DEJESUS CEDENO,

*Plaintiff-Appellee,*

v.

RYAN SASSON, ARGENT TRUST CO., DANIEL BLUMKIN, IAN BEHAR, STRATEGIC
FINANCIAL SOLUTIONS, LLC, DUKE ENTERPRISES LLC, TWIST FINANCIAL LLC,
BLAISE INVESTMENTS LLC,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Southern District of New York
No. 20-cv-9987-JGK
John G. Koeltl, District Judge, Presiding.
(Argued February 2, 2023; Decided May 1, 2024)

Before:      LOHIER, MENASHI, and ROBINSON, *Circuit Judges.*

Defendants-Appellants Argent Trust Company, Ryan Sasson, Daniel
Blumkin, Ian Behar, Strategic Financial Solutions, LLC, Duke Enterprises LLC,
Twist Financial LLC, and Blaise Investments LLC appeal from an order of the
District Court denying their motion to compel arbitration.

Plaintiff Ramon Dejesus Cedeno was an employee of Strategic Financial
Solutions, LLC, and a participant in its Strategic Employee Stock Ownership

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug 22 2024

Plan, a defined contribution retirement plan. Argent, the trustee for the Plan, represented the Plan in the purchase of Strategic Family, Inc. from selling shareholders Sasson, Blumkin, Behar, and their wholly owned LLCs. Cedeno sued in the United States District Court for the Southern District of New York under the Employee Retirement Income Security Act (ERISA), alleging the transaction caused the Plan to incur substantial losses and that Argent breached fiduciary duties owed to Plan participants and beneficiaries under ERISA. Cedeno brought claims under ERISA Section 502(a)(2) on behalf of the Plan, and sought relief including restoration of Plan-wide losses, a surcharge, accounting, constructive trust on wrongfully held funds, disgorgement of profits from the transaction, and further equitable relief as the court deemed just.

Defendants moved to compel arbitration under the Federal Arbitration Act (FAA), pointing to a provision in the Plan's governing document that required Plan participants to resolve any claims related to the Plan in arbitration, and specifically limiting the relief available in the arbitration proceeding to remedies impacting the participant's own account and forbidding any relief that would benefit any other employee, participant, or beneficiary. The District Court (Koeltl, *J.*) denied the motion, reasoning that the agreement was unenforceable because it would prevent Cedeno from effectuating rights guaranteed by Congress through ERISA, namely, the plan-wide relief available under Section 502(a)(2) to enforce the rights established in ERISA Section 409(a). We agree that the arbitration provision is unenforceable because it would prevent Cedeno from pursuing the Plan-wide remedies Sections 409(a) and 502(a)(2) unequivocally provide. Accordingly, we **AFFIRM** the decision of the district court.

Judge Menashi dissents in a separate opinion.

> PETER K. STRIS (Rachana A. Pathak,
> Douglas D. Geyser, John Stokes, Tillman
> J. Breckenridge, *on the brief*), Stris &
> Maher LLP, Los Angeles, CA and
> Washington, D.C., *for Plaintiff-Appellee*.
>
> ALYSSA C. GEORGE (Seema Nanda, G.
> William Scott, Jeffrey M. Hahn, *on the
> brief*), U.S. Department of Labor, Office

of the Solicitor, Washington, D.C., as
*Amicus Curiae in support of Plaintiff-
Appellee.*

SARAH M. ADAMS (Lars C. Golumbic,
Michael J. Prame, Paul J. Rinefierd, *on
the brief*), Groom Law Group, Chartered,
Washington, D.C., *for Defendant-
Appellant Argent Trust Co.*

Jeremy P. Blumenfeld, Margaret M.
McDowell, Jared R. Killeen, Antonia M.
Moran, Michael E. Kenneally, Morgan,
Lewis & Bockius LLP, Philadelphia, PA
and Washington, D.C., *for Defendants-
Appellants Ryan Sasson, Daniel Blumkin,
Ian Behar, Duke Enterprises LLC, Twist
Financial LLC, Blaise Investments LLC, and
Strategic Financial Solutions, LLC.*

Jennifer B. Dickey, U.S. Chamber
Litigation Center, Washington, D.C.,
Andrew J. Pincus, Archis A.
Parasharami, Daniel E. Jones, Erica A.
White, Nancy G. Ross, Jed W.
Glickstein, Washington, D.C. and
Chicago, IL.

Mark D. Taticchi, Elizabeth M. Casey,
Richard J. Pearl, Faegre Drinker Biddle
& Reath LLP, Philadelphia, PA and
Chicago, IL, *for Amici Curiae the ESOP
Association and the American Benefits
Council in support of Defendants-
Appellants.*

3

ROBINSON, Circuit Judge:

This case requires us to consider the enforceability under the Federal Arbitration Act (FAA) of certain provisions in an arbitration agreement that limit the remedies an employee benefit plan participant or beneficiary can pursue under Section 502(a)(2) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(2). Sections 502(a)(2) and 409(a) of ERISA, 29 U.S.C. § 1109(a), allow employee benefit plan participants and beneficiaries to seek equitable relief on behalf of the plan against plan fiduciaries for various statutory violations and breaches of fiduciary duties, and do not include a distinct set of remedies directed solely at individuals. The provisions within the parties' arbitration agreement at issue here, on the other hand, purport to limit participants or beneficiaries to seeking relief in arbitration solely for the benefit of their own individual plan accounts, and preclude relief that would benefit other account holders. At issue is whether those provisions are enforceable under the FAA.

Plaintiff-Appellee Ramon Dejesus Cedeno sued his former employer, Defendant-Appellant Strategic Financial Solutions, LLC, along with Defendant-Appellant Argent Trust Company—the trustee of his Strategic Employee Stock Ownership Plan (the "Plan")—and the selling shareholders of Strategic Family,

Inc.: Defendants-Appellants Ryan Sasson, Daniel Blumkin, Ian Behar, and their wholly owned LLCs Duke Enterprises LLC, Twist Financial LLC, and Blaise Investments LLC (collectively "Defendants"). Cedeno's primary allegation is that Argent breached fiduciary duties owed to the Plan in connection with the Plan's purchase of shares of Strategic Family for more than fair market value. Cedeno's complaint seeks several forms of relief under Section 502(a)(2) of ERISA, including restoration of Plan-wide losses, surcharge, accounting, constructive trust on wrongfully held funds, disgorgement of profits gained from the transaction, and further equitable relief as the court deems necessary.

Defendants moved to compel arbitration, citing a provision in the Plan's governing document that required Plan participants to resolve any legal claims arising out of or relating to the Plan in individualized arbitration. Two provisions within the arbitration agreement explicitly limited any relief sought under Section 502(a)(2) of ERISA to the restoration of losses within the participant's individual account, and they prohibited any relief that would benefit any other employee, participant, or beneficiary, or otherwise bind the Plan, its trustee, or administrators.

The United States District Court for the Southern District of New York (Koeltl, J.) denied the motion. *See Cedeno v. Argent Trust Co.*, No. 20-cv-9987, 2021

5

WL 5087898 (S.D.N.Y. Nov. 2, 2021).  The district court concluded that the

agreement was unenforceable because it would prevent Cedeno from pursuing

remedies under Section 502(a)(2) that were, by their nature, Plan-wide.  For the

reasons explained below, we agree with the district court that the contested

provisions within the arbitration agreement are unenforceable because they

amount to prospective waivers of participants' substantive statutory rights and

remedies under ERISA.  Accordingly, we AFFIRM the district court's denial of

the Defendants' motion to compel arbitration.

## BACKGROUND

### I.  Facts[1]

Ramon Dejesus Cedeno worked as a senior customer service

representative at Strategic Financial Solutions, LLC—a financial services firm—

from 2016 to 2019.  He has participated in the Plan since May 1, 2017, the date the

Plan was adopted.  An employee stock ownership plan is "a type of pension plan

that invests primarily in the stock of the company that employs the plan

---

[1] The facts are drawn from the record before the district court when it adjudicated the
Defendants' motion to compel arbitration, chiefly Cedeno's complaint and the exhibits to the
Defendants' motion.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("In
deciding motions to compel, courts . . . consider all relevant, admissible, evidence submitted by
the parties and contained in pleadings, depositions, answers to interrogatories, and admissions
on file, together with . . . affidavits.") (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155
(2d Cir. 2002)) (internal quotation marks omitted).  Although the truth of Cedeno's allegations
may be disputed, the content of his allegations and most relevant facts are not.

6

participants." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014). The Plan is subject to ERISA, a federal statute that sets certain minimum standards, including fiduciary duties, for voluntarily established retirement plans in private industry. *See* 29 U.S.C. § 1001.

This case arises from Defendants' alleged violations of ERISA in connection with the management of the Plan and implicates several specific Plan provisions.

### A. Defendants' Alleged Breaches

Because the details of Defendants' alleged breaches are ancillary to the issues in this appeal, we include only a general overview. Cedeno's primary allegations under Sections 409(a) and 502(a)(2) are that Argent violated its fiduciary obligations under ERISA in connection with the Plan's purchase of shares in Strategic Family (the "Transaction").

The Transaction involved the following players. As noted above, Defendant Strategic Financial, LLC is a financial services firm that employed Cedeno and the Plan's administrator. Strategic Family, Inc. is Strategic Financial's parent company. It is a private company with no public market for its stock. Defendant Argent Trust Company is an investment management firm that was the trustee of the Plan through October 31, 2019, when it was replaced

as trustee.  As trustee, it had "exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to authorize and negotiate the . . . Transaction on the Plan's behalf."  App'x 17.  Defendants Ryan Sasson, Daniel Blumkin, and Ian Behar were selling shareholders in the Transaction via their wholly owned LLCs, Defendants Duke Enterprises LLC, Twist Financial LLC, and Blaise Investments LLC.  These selling shareholders, who controlled Strategic Family at the time of the Transaction, retained control afterward by controlling the board of directors and holding leadership positions, including CEO, President, and Chief Sales Officer.

The Plan's purchase of the Strategic Family shares was financed through notes payable by the Plan to the selling shareholders.  Cedeno alleges that the Plan overpaid for the shares by well over one hundred million dollars, allowing the selling shareholders to "unload their interests in Strategic Family above fair market value . . . and saddle the Plan with tens of millions of dollars of debt."  App'x 14-15.  As a result, the value of the Plan to its beneficiaries and participants, including Cedeno, suffered "substantial[ly]."  App'x 31.

Argent, as trustee of the Plan, negotiated the Transaction.  Cedeno alleges that Argent violated its fiduciary duties to Plan participants like him by causing the Plan to overpay for the Strategic Family shares.  Argent allegedly accepted

8

unreasonably optimistic financial projections by Strategic Family; conducted

poor due diligence; improperly included a control premium in valuing the shares

rather than applying a control discount, even though the Plan did not assume

control of Strategic Family upon its purchase of the company; and improperly

approved a term that caused the Plan, subsequent to the initial purchase, to

assume an additional obligation of over $100 million for the Strategic Family

stock.  Cedeno further alleges that Argent received fees from and an

indemnification agreement with Strategic Family and Strategic Financial, and

that these benefits provided a motive for Argent to accept an inflated value for

Strategic Family's shares.

B.  *The Plan*

Several features of the Plan are relevant to the issues in this case.

First, the Plan is a "defined contribution plan," with a separate individual

account for each participant.  App'x 21.  A defined contribution plan "promises

the participant the value of an individual account at retirement, which is largely

a function of the amounts contributed to that account and the investment

performance of those contributions."  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552

U.S. 248, 250 n.1 (2008).  In contrast, a "defined benefit plan" "generally promises

the participant a fixed level of retirement income, which is typically based on the

9

employee's years of service and compensation." *Id.* The defined contribution framework has overtaken the defined benefit paradigm as the more common type of employee retirement plan. *See, e.g.*, James F. Parker, *Revival of Substantive Equity: Increased Household Risk, Safety Valve Litigation, and Availability of the Stock Drop Jury*, 21 WASH. & LEE J. OF C.R. & SOC. JUST. 425, 433 (2015) (citing Edward A. Zelinsky, *The Defined Contribution Paradigm*, 114 YALE L.J. 451, 471 (2004)).

The Plan, adopted in 2017, is governed by the terms of the Plan Document, subject to the requirements of ERISA. Section 17.10 of the Plan Document is titled "Mandatory and Binding Arbitration." App'x 105. The relevant provisions of Section 17.10 are as follows:

> (b) Any claim by a Claimant[2] (i) that arises out of, concerns or relates to the Plan or the Trust, including without limitation, any claim for benefits, (ii) asserting a breach of, or failure to follow, the Plan or Trust; or (iii) asserting a breach of, or failure to follow, any provision of ERISA . . . including without limitation claims for breach of fiduciary duty. . . (collectively, "Covered Claims"), shall be settled by binding arbitration . . . .

> (f) All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims and that Claimant may not seek or receive any remedy that has the purpose or effect of providing

---

[2] A "claimant" under the Plan is defined as a "Participant, Beneficiary, or any other person" who claims entitlement to benefits under the Plan or has unresolved questions about benefits under the Plan. App'x 104.

additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant.

(g) If a Covered Claim is brought under ERISA section 502(a)(2) to seek relief under ERISA section 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's Accounts resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely for the benefit of the Claimant's accounts, or (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant.

App'x 105-06.

Additionally, Section 17.10(h) includes a non-severability clause which provides that if a court finds the requirements of Sections 17.10(f) or 17.10(g) "unenforceable or invalid, then the entire Arbitration Procedure shall be rendered null and void in all respects." App'x 106.

## II. District Court Proceedings

In 2020, Cedeno filed a class action complaint. In it, he alleged that Argent breached its fiduciary duties by causing the Plan to enter into the Transaction and pay more than fair market value for the Strategic Family shares. Among other provisions of ERISA, Cedeno brought claims for relief under Sections 409

and 502(a)(2) based on Argent's alleged breach of its fiduciary duties. He sought

various forms of relief, including:

- A declaration that Argent breached its fiduciary duties to the Plan under ERISA;
- An order requiring that each Defendant found to have violated ERISA make good to the Plan the losses resulting from the breaches of ERISA and restore any profits made through use of the Plan assets;
- An order requiring Defendants to provide "other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;"
- An order requiring that Argent "disgorge any fees it received in conjunction with its services as Trustee for the Plan" in the Transaction in addition to any earnings or profits made; and
- "[S]uch other and further relief as the Court deems equitable and just."

App'x 41-42.

Defendants moved to compel arbitration pursuant to the FAA. They

asserted that Cedeno was bound by the mandatory arbitration provision in

Section 17.10 of the Plan Document. Defendants specifically requested that the

district court compel arbitration "on an individual basis, rather than in a

representative capacity or class, collective, or group basis." D. Ct. Dkt. No. 60

(Memorandum in Support of Motion to Compel) at 2. Defendants argued that

compelling individual arbitration would "not affect the remedy that [Cedeno]

could personally achieve under ERISA section 502(a)(2)," asserting that Cedeno

could, in any event, recover losses only within his individual plan account.  *See*

*id.* at 18-19 (citing *LaRue*, 552 U.S. at 256).

The district court denied the Defendants' motion to compel arbitration.

*See Cedeno v. Argent Trust Co.*, No. 20-cv-9987, 2021 WL 5087898 (S.D.N.Y. Nov. 2,

2021).  The court concluded that the arbitration provision acted as a "prospective

waiver[] of [a] statutory right[]," and thus was unenforceable.  *Id.* at *5.  The

district court explained that ERISA Section 409(a) provides for restitution to the

entire plan and ERISA Section 502(a)(2) authorizes a plan participant to bring a

civil action to obtain "restitution of the entirety of the loss to the plan."  *Id.* at *3.

Because the arbitration provision limited Cedeno to recovering losses within his

individual plan account, the provision would impermissibly limit the availability

of Plan-wide remedies explicitly authorized by ERISA, and thus was

unenforceable.  *Id.* at *3-5.  The district court further concluded that because the

Plan Document provided that the remedy section of the arbitration provision

was non-severable, the entire arbitration provision was unenforceable.  *Id.* at *6.

Accordingly, the district court denied the Defendants' motion.  Defendants

appealed.

## DISCUSSION

We have appellate jurisdiction because the FAA "permits interlocutory appeals from the denial of a motion to compel arbitration."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 72 (2d Cir. 2017) (citing 9 U.S.C. § 16).  We review the district court's denial of Defendants' motion to compel arbitration without deference.  *See, e.g., id.*  And the proper interpretation of ERISA and the FAA are questions of law that we also review without deference.  *Coan v. Kaufman*, 457 F.3d 250, 254 (2d Cir. 2006) (ERISA); *Wash. Nat'l Ins. Co. v. OBEX Group LLC*, 958 F.3d 126, 136 (2d Cir. 2020) (FAA).

On appeal, Defendants argue that the district court erred by not enforcing the arbitration agreement.  Specifically, they argue that the FAA "requires courts to enforce arbitration agreements rigorously according to their terms," including agreements for individualized arbitration, and that the district court erred in applying a "theoretical exception to the FAA" in concluding the arbitration provision here would result in a prospective waiver of participants' statutory rights under ERISA.  Appellant's Br. at 16 (citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018)).  They further argue that the district court "manufactured a . . . conflict by misreading ERISA [Sections] 502(a)(2) and 409(a) as giving participants an unwaivable right to pursue recovery on behalf of all other plan participants as well as themselves," and that because Section 502(a)(2) claims can

14

be pursued on a "purely individualized basis," a plan participant's right to "seek

remedies on behalf of other participants' accounts . . . is waivable." *Id.* at 16-17

(citing *LaRue*, 552 U.S. at 250).

We disagree. Because Cedeno's avenue for relief under ERISA is to seek a

plan-wide remedy, and the specific terms of the arbitration agreement seek to

prevent Cedeno from doing so, the agreement is unenforceable.[3] To explain our

conclusion, we consider the Supreme Court's guidance and our own caselaw

concerning the reach of the FAA, controlling Supreme Court caselaw establishing

the framework that applies to claims under Sections 409(a) and 502(a)(2) of

---

[3] We briefly note what is *not* in dispute on this appeal. Defendants do not dispute the Plan is subject to ERISA, that Argent is a plan fiduciary under ERISA, and that Cedeno is a plan participant for purposes of ERISA and therefore can properly bring a Section 502(a)(2) claim. Nor do Defendants dispute that the relief Cedeno seeks is available under Section 502(a)(2). Cedeno does not dispute that the arbitration agreement applies to the claims he brings against the Defendants. He contends only that the challenged provisions are unenforceable. Nor does Cedeno contend that mandatory binding arbitration provisions cannot be enforced with respect to ERISA claims in general; this Court has long held that ERISA claims for breach of fiduciary duty may be remanded to arbitration. *See Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.3d 116, 119 (2d Cir. 1991). Cedeno challenges the enforceability of Sections 17.10(f) and 17.10(g) of the Plan, not the arbitration requirement itself. And finally, neither party disputes that if this Court concludes that either Section 17.10(f) or 17.10(g) is unenforceable, the entire arbitration provision would be unenforceable due to the non-severability clause.

Additionally, we note that Cedeno presents an alternate ground for affirmance, namely, that the arbitration provision is unenforceable because he did not consent to arbitration. *See* Appellee's Br. at 44-49. Because we affirm on the basis that the arbitration provision is unenforceable insofar as it would prevent Cedeno from vindicating certain statutory remedies under ERISA, we do not reach this argument.

ERISA, and the application of these legal principles to the arbitration provisions at issue in this case.

## I.   The Federal Arbitration Act

Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The statute was enacted "in response to widespread judicial hostility to arbitration."  *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 232 (2013).  To correct this impulse, "courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted."  *Id.* at 233 (internal citations, quotation marks, and alterations omitted).

A core concern of the FAA is protecting the enforceability of agreements to vindicate substantive rights through an arbitral *forum* using arbitral *procedures*. *See, e.g., Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).  But the FAA does not purport to reach agreements to waive *substantive rights and remedies*, and courts will invalidate provisions that prevent parties from effectively vindicating

their statutory rights.  *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273-74 (2009).

The Supreme Court recently reemphasized that the FAA "does not require courts to enforce contractual waivers of substantive rights and remedies" in *Viking River Cruises, Inc. v. Moriana*.  596 U.S. 639, 653 (2022).  The Court explained:

> The FAA's mandate is to enforce *arbitration agreements*.  And as we have described it, an arbitration agreement is a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.  An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed.  And so we have said that by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral … forum.

*Id*. (internal quotation marks, brackets, and citations omitted) (emphasis and alterations in original).

The Court also made it clear that the policy favoring enforcement of agreements *to arbitrate* does not automatically extend to enforcement of *any* provision within an arbitration agreement.  *Id*. at 1919 n.5.  The Court explained that the basis of the principle that the FAA does not mandate enforcement of waivers of substantive rights is "that the FAA requires only the enforcement of

17

'provisions' to settle a controversy 'by arbitration,' and not any provision that happens to appear in a contract that features an arbitration clause." *Id.* (internal citation omitted); *see also Mitsubishi Motors*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").

For that reason, terms in an arbitration agreement that have the effect of prospectively waiving a party's statutory remedies are not enforceable. As the Court noted in considering an arbitration agreement in *Mitsubishi*, "[I]n the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy." 473 U.S. at 637 n.19.

Although the Supreme Court has never invalidated a provision in an arbitration agreement on this basis, it has repeatedly recognized the general principle that provisions within an arbitration agreement that prevent a party from effectively vindicating statutory rights are not enforceable. *See, e.g., Italian Colors*, 570 U.S. at 235-36, 238 (declining to apply "effective-vindication exception" to invalidate contractual waiver of class arbitration merely because

18

plaintiff's cost of individually arbitrating a federal statutory claim exceeded the potential recovery); *14 Penn Plaza LLC*, 556 U.S. at 273-74 ("[A]lthough a substantive waiver of federally protected civil rights will not be upheld, we are not positioned to resolve in the first instance whether the [collective bargaining agreement] allows the Union to prevent respondents from 'effectively vindicating' their 'federal statutory rights in the arbitral forum.'" (internal citations omitted)); *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000) ("[E]ven claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute serves its functions." (internal quotation marks and brackets omitted)); *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 28 (1991) ("So long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." (citing *Mitsubishi*, 473 U.S. at 637) (internal quotation marks and brackets omitted)).

This Court has recognized the effective vindication doctrine and applied it to invalidate arbitration agreements that purport to waive enforcement of federal statutory rights. *See, e.g., Gingras v. Think Finance, Inc.*, 922 F.3d 112, 127 (2d Cir.

2019), *cert. denied*, 140 S. Ct. 856 (2020).  In *Gingras*, we considered an arbitration

provision in a "payday loan" agreement that provided for application of

Chippewa Cree tribal law to any disputes and that disclaimed the applicability of

any state or federal laws.  *Id*. at 126-27.  We noted that "the Supreme Court has

made clear that arbitration agreements that waive a party's right to pursue

federal statutory remedies are prohibited."  *Id*. at 127.  Recognizing that the

provisions appeared wholly to foreclose the borrowers from vindicating rights

granted by federal and state law, we held that "the just and efficient system of

arbitration intended by Congress when it passed the FAA may not play host to

this sort of farce."  *Id*. (citing *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 674 (4th

Cir. 2016)) (internal quotation marks and brackets omitted).  We accordingly

declined to enforce the arbitration agreements because they sought to prevent

borrowers from "pursu[ing], much less vindicat[ing]," federal and state statutory

rights provided by consumer protection laws.  *Id.*

The lesson from these binding decisions—that courts will not enforce

provisions in arbitration agreements that prevent a party from effectively

vindicating their statutory rights and securing their statutory remedies—

critically informs our analysis here.

## II. ERISA Section 502(a)(2) Claims

20

At issue in this case is how this lesson applies to Cedeno's claims under ERISA Section 502(a)(2).  The text of the statute and two Supreme Court decisions establish a framework for our analysis and inform our conclusion that ERISA contemplates plan-wide remedies, and only plan-wide remedies, to address certain breaches of fiduciary duties by plan fiduciaries.

A. *ERISA*

ERISA Sections 409(a) and 502(a)(2) work in tandem to allow plan participants to bring civil actions against plan fiduciaries who breach their duties to the plan.  Section 409(a), titled "Liability for breach of fiduciary duty," provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses to the plan resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphases added).  Section 502(a)(2), titled "Civil enforcement," is essentially the enforcement mechanism of Section 409(a).  It enables the Secretary of Labor or participants, beneficiaries, or fiduciaries of a

plan to bring civil actions to seek "appropriate relief" under Section 409.  29

U.S.C. § 1132(a)(2).

These two provisions together establish the vehicle for individual plan

participants to pursue claims based on a plan fiduciary's breach of its duties

pursuant to Section 409(a).  ERISA provides avenues for individual participants

to pursue claims for *other kinds* of violations by plan fiduciaries.  *See, e.g.*, 29

U.S.C. § 1132(a)(1) (allowing civil actions by a participant or beneficiary to

recover benefits due under the plan, to enforce rights under terms of plan, to

clarify rights to future benefits under the plan, or to address plan administrator's

refusal to supply certain information); *id.* § 1132(a)(4) (allowing civil actions for

appropriate relief by the Secretary or a participant or beneficiary arising from

violations of plan's statutory reporting obligations).  But the Supreme Court has

repeatedly recognized that Section 502(a)(2) is the enforcement mechanism for

violations of Section 409(a).  *See, e.g.*, *LaRue*, 552 U.S. at 253 (explaining that

statutory duties imposed on fiduciaries pursuant to Section 409(a) relating to

"the proper management, administration, and investment of fund assets" are

enforceable through Section 502(a)(2) (citation and internal quotation marks

omitted)); *see also Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996) (suggesting that

Section 409(a), which is enforceable by participants and beneficiaries through

22

Section 502(a)(2), reflects "a special congressional concern about plan asset management").

   B.  *Massachusetts Mutual Life Insurance Company v. Russell*

   The foundational case for purposes of the issue here is *Massachusetts Mutual Life Insurance Company v. Russell*.  473 U.S. 134 (1985).  In *Russell*, the Supreme Court concluded that Section 502(a)(2) claims can only be brought to pursue relief on behalf of a plan, and cannot be used as a mechanism to seek individual equitable relief for losses arising from the mismanagement of a plan. Russell, a beneficiary of an ERISA-backed insurance plan, sought to recoup damages arising from the delayed processing of a medical claim via a Section 502(a)(2) claim.  *Id.* at 136.  She specifically argued that the defendants had violated the fiduciary duties outlined in Section 409(a) when they failed to timely process her claim, giving her an individual cause of action under Section 502(a)(2).  *Id.* at 138.

   The Supreme Court disagreed, holding that although Section 502(a)(2) authorized a beneficiary to bring an action against a fiduciary who violated Section 409, any recovery for such an action "inures to the benefit of the plan as a whole."  *Id.* at 140.  Justice Stevens, writing for the Court, explained that the text of Section 409 emphasized that the fiduciary was liable "to make good *to such*

23

*plan* any losses *to the plan* . . . and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan*." *Id.* at 140 (quoting 29 U.S.C. § 1109(a)) (alterations and emphases in original). Justice Stevens continued, "[a] fair contextual reading of the statute makes it abundantly clear that its [drafters] were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142. Thus, Russell could not use Section 502(a)(2) to recoup her personal losses caused by the delayed processing of her claim, because such losses would benefit her individually, and not the entire plan. *See also Coan*, 457 F.3d at 259 (recognizing that section 502(a)(2) contemplates litigation in a "representative capacity on behalf of the plan," and requiring a plaintiff take adequate steps to properly act in such a representative capacity (quoting *Russell*, 473 U.S. at 142 n.9)).

   *C. LaRue v. DeWolff, Boberg & Associates, Inc.*

   One issue in this case is whether and to what extent the Supreme Court's subsequent decision in *LaRue* casts doubt on the Court's conclusion that Sections 502(a)(2) and 409(a) together establish a framework pursuant to which a plan participant aggrieved by a breach of duty by a plan fiduciary may seek remedies only on behalf of and for *the plan*.

In *LaRue*, the Supreme Court allowed a plaintiff to use a Section 502(a)(2) claim to recover for losses sustained in his individual account within a defined contribution plan. 552 U.S. at 250. The plaintiff was a participant in a defined contribution plan that allowed him to "direct the investment of [his] contributions." *Id.* LaRue alleged that defendants failed to make certain changes to *his* investments as he directed and that, as a result, *his interest* in the plan was depleted by approximately $150,000. *Id.* at 251. He sought to recoup those losses through a Section 502(a)(2) claim. *Id.* The question was whether he could do so.

Justice Stevens—again writing for the Court—held that he could, and that this result directly flowed from the rationale of *Russell*. *Id.* at 250. The Court explained that the misconduct LaRue alleged fell "squarely" within the category of breached fiduciary obligations to the plan addressed in Section 409(a), and thus that LaRue could pursue his claim under Section 502(a)(2). *Id.* at 253. The Court distinguished *Russell*, explaining that the plaintiff there had "received all the benefits to which she was contractually entitled, but sought consequential damages arising from a delay in the processing of her claim"—a remedy unavailable under Section 409(a) because such relief would not benefit the plan. *Id.* at 254. In short, a critical distinction between *Russell* and *LaRue* was that Russell did not allege a breach of fiduciary duties as defined in Section 409(a)—

that is, fiduciary duties "*with respect to a plan*"—but LaRue did.  29 U.S.C. §

1109(a) (emphasis added).  Consequently, LaRue could pursue a claim through

Section 502(a)(2), whereas Russell could not.

In its discussion, the *LaRue* court walked back some of the broad language

in *Russell* that suggested that the only violations cognizable under Section 409(a)

are those that impact the "entire plan."  *LaRue*, 552 U.S. at 254-55.  The Court

explained that "*Russell*'s emphasis on protecting the 'entire plan' from fiduciary

misconduct reflects the former landscape of employee benefit plans."  *Id.* at 254.

By the time of *LaRue*, the "landscape [had] changed," as defined contribution

plans had come to "dominate the retirement plan scene."  *Id.* at 254-55.  "Unlike

the defined contribution plan in this case, the disability plan at issue in *Russell*

did not have individual accounts; it paid a fixed benefit based on a percentage of

the employee's salary."  *Id.* at 255 (citing *Russell v. Mass. Mut. Life Ins. Co.*, 722

F.2d 482, 486 (9th Cir. 1983)).  The Court recognized that in contrast to defined

benefit plans, where mismanagement by plan administrators affects an

*individual's* entitlement to a defined benefit only if it creates or enhances the risk

of default by *the entire plan*, in the context of defined contribution plans,

mismanagement of plan assets by plan administrators *can* injure participants at

the individual account level.  *Id.*  The Court continued:

> Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the [drafters] of § 409.  Consequently, our references to the "entire plan" in *Russell*, which accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context.

*Id*. at 256.  The Court reinforced its conclusion by pointing to other provisions of ERISA that indicate that fiduciaries can be liable for losses experienced only at the individual account level.  *Id.*  The Court then concluded: "We therefore hold that *although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries*, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."  *Id.* (emphasis added).

The *LaRue* Court thus recognized that Section 409(a) protects against breaches of fiduciary duty involving the management of assets within defined contribution plans, *whether the injury is felt at the plan level or directly at the individual account level*, and that such breaches are thus actionable under Section 502(a)(2).  But the Court also held firm to its conclusion in *Russell* that even in such cases, Section 502(a)(2) provides no remedy for "individual injuries distinct from plan injuries."  *Id.*

The dissent's suggestion that *LaRue* in any way abrogated *Russell*'s holding that section 502(a)(2) provides a remedy only for injuries to *the plan*, dissent at 8 and 15 n.14, is thus squarely at odds with the Supreme Court's own holding.  At most, *LaRue* recognized that Section 502(a)(2) provides a remedy for injuries to the plan that are felt only at an individual account level; the Court did not suggest that Section 502(a)(2) allows individualized relief for injuries that *are* felt at *the plan* level.[4]

We recently affirmed this view in a post-*LaRue* decision, explaining, "Sections 502(a)(2) and 409, read together, mean that a plaintiff suing for breach of fiduciary duty under [Section] 502(a)(2) . . . *may seek recovery only for injury done to the wronged plan*."  *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 180 (2d Cir. 2021) (citing *LaRue*, 552 U.S. at 256) (emphasis added); *see also Munro v. Univ. of Southern Cal.*, 896 F.3d 1088, 1093 (9th Cir. 2018) ("[In *LaRue*], the [Supreme] Court made clear that it had not reconsidered its longstanding recognition that it is the plan, and not the individual beneficiaries and participants, that benefit

---

[4] Defendants' alleged breach of fiduciary duties here had plan-wide impact; in contrast to *LaRue*, the impact of the breach was not felt only at the individual account level.  The Plan's purchase of Strategic Family shares at above-market rates, saddling the Plan with millions of dollars of debt, allegedly undermined the value of the Plan "to the substantial detriment of the Plan and its participants and beneficiaries," including Cedeno.  App'x 31.

from a winning claim for breach of fiduciary duty, even when the plan is a defined contribution plan.").  In sum, nothing about *LaRue* alters *Russell's* holding that remedies under Section 502(a)(2) are limited to providing relief *to the plan*.

## III.     Application

In light of this legal framework, we conclude that Sections 17.10(f) and (g) of the arbitration agreement, which waive Cedeno's statutory remedies under Sections 409(a) and 502(a)(2), are unenforceable.  We are not swayed by Defendants' arguments to the contrary, and find support for our view in the persuasive decisions of sister circuits.  Because these provisions within the arbitration agreement are unenforceable, and in light of the non-severability provision, we conclude that the arbitration agreement itself is unenforceable.

### A. *Enforceability of Sections 17.10(f) and (g)*

On their face, Sections 17.10(f) and (g) prevent claimants like Cedeno from pursuing the substantive statutory remedies available to them under Sections 409(a) and 502(a)(2) of ERISA, leaving them without effective avenues for vindicating their substantive rights under Section 409(a).  Because the provisions operate as a prospective waiver of claimants' statutory rights and remedies, they are unenforceable.

Sections 17.10(f) and (g) prevent Cedeno from pursuing remedies on behalf of the Plan.  In particular, Section 17.10(f) requires claimants like Cedeno to bring their claims solely in their "individual capacity and not in a representative capacity," and prohibits them from seeking or receiving "any remedy that has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant or Beneficiary other than the Claimant."  App'x 105.  Section 17.10(g) limits a claimant's remedy to recovering for the alleged losses *to the claimant's accounts*, a *pro-rated* portion of the profits allegedly made by a fiduciary through the use of Plan assets, and other remedial or equitable relief as long as it "does not include or result in the provision of additional benefits or monetary relief to any Employee, Participant, or Beneficiary other than the Claimant, and is not binding on the Administrator or the Trustee with respect to any Employee, Participant or Beneficiary other than the Claimant."  *Id.* at 105-06.

These restrictions effectively preclude Cedeno from pursuing the remedies available to him under Section 502(a)(2) for Defendants' violations of their obligations under Section 409(a).  As explained above, this Court recognized in *Russell*, and reaffirmed in *LaRue*, that the statutory remedies available to claimants like Cedeno under Section 502(a)(2) run only to *the Plan*.  *See* Section II,

above.  Though Section 409(a) codifies fiduciary duties that protect a plan as a

whole, as well as holders of individual accounts within the plan, the Section

502(a)(2) vehicle for enforcing Section 409(a) provides for only plan-wide

remedies.  *Russell*, 473 U.S. at 142; *LaRue*, 552 U.S. at 256.  If Sections 17.10(f) and

(g) prevent Cedeno from pursuing the statutory plan-wide remedies available

under Section 502(a)(2), then they effectively prevent him from vindicating his

substantive statutory rights under Section 409(a) and remedies under Section

502(a)(2).

 And, for the reasons set forth above, if the provisions within the arbitration

agreement operate as a "prospective waiver of [Cedeno's] right to pursue

statutory remedies" under Sections 409(a) and 502(a)(2), then it follows that they

are unenforceable.  *Mitsubishi*, 473 U.S. at 637 n.19.

 *B.  Response to Defendants' Arguments*

 Relying on a line of cases upholding provisions requiring individualized

arbitration rather than proceedings in which claims are aggregated, Defendants

argue that Cedeno has no unwaivable statutory right to pursue collective, as

opposed to individualized, arbitration.  They contend that ERISA contains no

"clearly expressed congressional intention" to displace the FAA and create a

right to engage in legal proceedings on a group basis.  Appellant's Br. at 26-35.

And they argue that, like the plaintiff in *LaRue*, Cedeno can effectively vindicate his statutory rights by pursuing individualized claims for relief that make him whole without impacting the rights of other participants and beneficiaries. Defendants' arguments are unavailing.

### 1. Waivers of Collective-Action Procedures

Defendants argue that "[a] long series of Supreme Court rulings, involving a variety of statutory rights, recognizes that agreements to waive the ability to pursue claims in an aggregated manner—such as through a representative, class or collective action—must be enforced under the FAA." Appellant's Br. at 24 (citing *Epic Systems v. Lewis*, 138 S. Ct. 1612, 1627-28 (2018); *Italian Colors*, 570 U.S. at 233; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Gilmer*, 500 U.S. at 35). They contend that the same result is warranted here, as there is no unwaivable right to proceed through collective action.

This argument misses the mark for at least two reasons. For one thing, Cedeno is not asserting a free-floating right to proceed through collective action for its own sake; he is asserting a right to pursue the full range of statutory remedies to enforce his *substantive* statutory rights under Section 409(a). Sections 17.10(f) and (g) do not simply take off the table the means to secure a claimant's statutory rights and remedies through collective action, while leaving intact an

alternative path through individual arbitration.  As we've explained, these provisions, if enforced, would leave claimants like Cedeno without *any* means of securing the full range of statutory remedies available to him.

That fact distinguishes this case from the line of authority Defendants rely upon.  For example, in *Epic Systems*, in the context of claims against employers under the Fair Labor Standards Act, the Supreme Court upheld an arbitration agreement that required "individualized arbitration."  138 S. Ct. at 1620.  Nothing in the *Epic Systems* decision suggests that the "individualized arbitration" provision had the effect of waiving any party's substantive statutory rights and remedies.  *Id.* at 1628.  Similarly, in *Italian Colors*, the Court enforced a contractual waiver of class arbitration in the context of a merchant's antitrust action against American Express.  570 U.S. at 239.  The merchant argued that the high cost of pursuing such a claim on an individualized basis precluded it from vindicating its rights.  *Id.* at 231.  The Supreme Court disagreed, emphasizing that the class-action waiver "no more eliminates [the] parties' right[s] to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938."  *Id.* at 236 (citations omitted).  As in *Epic Systems* and the other cases Defendants rely on, in *Italian Colors* the restrictive arbitration

provisions did not effectively eliminate the merchant's substantive rights and remedies.

Defendants' argument misses a second critical point: in considering the enforceability of provisions in arbitration agreements that prohibit "representational" arbitration of various sorts, the Supreme Court has not adopted a one-size-fits-all approach because not all "representational" arbitration is the same. The Court has recognized a qualitative difference between waivers of collective-action procedures like class actions, and waivers that preclude a party from arbitrating in a representational capacity *on behalf of a single absent principal,* a point it recently drove home in *Viking River*. *See* 596 U.S. at 656-58.

In *Viking River*, the Court considered whether, and to what extent, the FAA preempts a California law that invalidates contractual waivers of the right to assert representative claims as provided for in California's Labor Code Private Attorneys General Act of 2004 (PAGA). *Id.* at 643. In doing so, the Court distinguished between two kinds of "representational" claims: those in which a plaintiff is authorized by statute to act as an agent or proxy of a single principal—the State, in the case of PAGA—and those in which a representative plaintiff's individual claims are a basis to "adjudicate claims of multiple parties

at once, instead of in separate suits." *Id.* at 654 (quoting *Shady Grove Orthopedic*

*Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010)) (internal quotation

marks omitted).

The Court explained that in the latter category of representative claims,

including class-action claims, "the changes brought about by the shift from

bilateral arbitration to *class-action arbitration* are too fundamental to be imposed

on parties without their consent." *Id.* at 657 (citation and internal quotation

marks omitted) (emphasis in original).  But claims in which a single agent

arbitrates in a representative capacity on behalf of a single principal are a

different matter.  The Court explained,

> Nothing in the FAA establishes a categorical rule mandating
> enforcement of waivers of standing to assert claims on behalf of
> absent principals.  Non-class representative actions in which a single
> agent litigates on behalf of a single principal are part of the basic
> architecture of much of substantive law.  Familiar examples include
> shareholder-derivative suits, wrongful-death actions, trustee actions,
> and suits on behalf of infants or incompetent persons.  Single-agent,
> single-principal suits of this kind necessarily deviate from the strict
> ideal of bilateral dispute resolution posited by Viking [River Cruises].
> But we have never held that the FAA imposes a duty on States to
> render all forms of representative standing waivable by contract.  Nor
> have we suggested that single-agent, single-principal representative
> suits are inconsistent [with] the norm of bilateral arbitration as our
> precedents conceive of it.

*Id.* at 641.

The Court explained that in contrast to class-action arbitration, arbitration between one party and a single agent acting in a representative capacity on behalf of an absent principal does not involve a "degree of deviation from bilateral norms" that is "alien to traditional arbitral practice." *Id.* at 658. Thus, PAGA's restriction on the enforceability of waivers of representative capacity litigation on behalf of a single principal—namely, the State of California—was not preempted by the FAA. *Id.* at 662-63.

The aspect of PAGA that *did* run afoul of the FAA was the statute's built-in mechanism of claim joinder, which allowed an aggrieved employee to use the Labor Code violations the employee personally suffered as a basis to join to the action any claims that could have been raised by the State in an enforcement proceeding, whether or not those claims were related to the aggrieved employee's own grievances. *Id.* at 659. The Court reasoned that such a rule would leave parties to choose between an arbitration "in which the range of issues under consideration is determined by coercion rather than consent" and forgoing arbitration altogether. *Id.* at 661. To the extent that California law provided that PAGA actions could not be divided into individual and non-individual claims, the Court concluded that rule was preempted and Viking River Cruises was entitled to compel arbitration of the plaintiff's individual

claims. *Id.* at 662. Having so concluded, and because PAGA provided no mechanism to enable a court to adjudicate non-individual claims once the individual claim has been sent to arbitration, the Court concluded that the non-individual claims should be dismissed. *Id.* at 663.

Although *Viking River* explored the reach of the FAA's preemption of state laws prohibiting parties from waiving representational arbitration—a context distinct from this case—its core insight that from the perspective of the FAA there is a qualitative difference between arbitrating on behalf of an absent principal and arbitrating on behalf of a class of individuals is instructive. The line of cases upholding "individualized arbitration" provisions all deal with the latter scenario. This case involves the former.

The dissent's challenges to the analogy between a plaintiff seeking relief for the plan under Section 502(a)(2) for fiduciary breaches that violate Section 409(a) and specific other kinds of representative litigants miss the point. Dissent at 10-11. The common thread is that, as in those other cases, a plaintiff seeking relief under Section 502(a)(2) acts in a representative capacity seeking relief for a single entity—the plan—as opposed to a collection of individuals. That an individual must have a personal stake in the relief sought on behalf of the plan to have Article III standing for a suit under Section 502(a)(2) does not mean the

plaintiff therefore litigates in an individual capacity to recover for the plaintiff's own individual injuries rather than in a representative capacity to secure relief for the plan. Dissent at 8-9 (citing *Thole v. U.S. Bank*, 590 U.S. 538, 543 (2020)). Neither *Thole* nor logic suggests otherwise. *See id.*; 590 U.S. at 546 (noting that plaintiff participants in a defined-benefit plan did not assert that mismanagement of the plan put their future pension benefits at risk).

Moreover, the fact that this Court requires that a participant seeking relief under Section 502(a)(2) "take adequate steps under the circumstances properly to act in a 'representative capacity on behalf of the plan,'" reinforces that a Section 502(a)(2) claim is inherently representational. *Coan*, 457 F.3d at 261 (citation omitted). It thus makes sense that Cedeno invoked Federal Rule of Civil Procedure 23 in his complaint even though this is not actually a class action; we recognized in *Coan* that compliance with the requirements of Rule 23 is likely sufficient to properly act in a representative capacity for purposes of a Section 502(a)(2) claims. *Id.* The dissent asserts that *Coan*'s holding that a participant bringing a Section 502(a)(2) claim acts in a representative capacity did not survive *LaRue*. Dissent at 15, n.14. That assertion is flatly contradicted by the Supreme Court's own holding in *LaRue*. *See* pages 27-28, above.

2. Clear Statement of Congressional Intent

In arguing that *ERISA* contains no "clearly expressed Congressional intention" to prohibit agreements to engage in individualized arbitration, Appellant's Br. at 29, Defendants likewise respond to an argument Cedeno has not made.

In *Epic Systems*, the Supreme Court considered an argument that the National Labor Relations Act (NLRA) overrides the FAA's ordinary guidance that provisions in arbitration agreements, including provisions requiring individualized arbitration, should be enforced according to their terms. 138 S. Ct. at 1623-30. The Court explained that a party suggesting that two statutes cannot be harmonized, and that one displaces the other, "bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." *Id.* at 1624 (internal quotation marks omitted). It discerned no such clearly expressed intent in the NLRA. *Id.* at 1624-27. Rather, the Court explained the NLRA was silent about any class or collective action procedures required in litigation or arbitration. *Id.* at 1628.

The problem for Defendants, and for the dissent, is that Cedeno does not argue that ERISA and the FAA conflict such that ERISA overrides the FAA. Instead, he argues that specific provisions in the arbitration agreement prevent him from vindicating statutory remedies provided by ERISA, making those

provisions unenforceable.  *See* Appellee's Br. at 13-15 (summarizing argument).

As the Supreme Court explained in *Italian Colors*, after considering whether any

clear congressional command required it to reject the contested waiver of class

arbitration, "Our finding of no 'contrary congressional command' does not end

the case."  *Id.* at 235.  The Court went on to consider separately whether the

waiver at issue prevented the aggrieved merchant from effectively vindicating its

statutory rights.  *Id.* at 235-38.

In short, Defendants' contention that ERISA reflects "no clear

congressional intent" to displace the FAA with respect to matters involving

individualized arbitration is inapposite to Cedeno's arguments and our analysis.

### 3.  Cedeno's Individualized Rights and Remedies

Finally, with respect to Defendants' argument that *LaRue* suggests that

Cedeno *can* effectively vindicate his substantive rights if Sections 17.10(f) and (g)

are enforceable, we reiterate that *LaRue* reinforced, rather than undermined, the

Supreme Court's holding in *Russell* that the remedies available under Section

502(a)(2) for fiduciary breaches that violate Section 409(a) inure to the benefit of

*the plan*, thereby providing only indirect relief to individual plan participants and

beneficiaries.  *See* Section II.C, above.  In *LaRue*, the defendant's alleged breach

under Section 409(a) caused a loss solely within LaRue's individual account.

Accordingly, the remedy available to him, while directed at the plan, impacted only LaRue's individual account within the plan. 552 U.S. at 256. But nothing in *LaRue* suggests that an individual claimant like Cedeno who is aggrieved by a breach of fiduciary duty that has a plan-wide impact can seek a remedy under Section 502(a)(2) that benefits solely that individual's account. That notion is inconsistent with the plain language of Section 409(a), which speaks solely of injuries *to the plan*, and flies in the face of the Supreme Court's reading of the statute in *Russell* and *LaRue*. *See* 29 U.S.C. § 1109(a); *Russell*, 473 U.S. at 140-42; *LaRue*, 552 U.S. at 256 ("[Section] 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries.").

Moreover, contrary to Defendants' argument, Cedeno cannot vindicate his substantive statutory rights if Sections 17.10(f) and (g) are enforceable. Those provisions take the only available statutory vehicle for vindicating Cedeno's rights under Section 409(a)—a suit under Section 502(a)(2) seeking remedies directed at the Plan—off the table. The alternative enforcement framework spelled out in the arbitration agreement, which contemplates relief directed solely at Cedeno's account within the plan and allows recovery only of Cedeno's *pro rata* shares of a fiduciary's misbegotten gains, implicitly rests on the fiction that such a statutory enforcement mechanism exists. It doesn't. Nothing in

41

Section 409(a) or 502(a)(2) allows a court or arbitral forum to slice and dice individual plan participants' and beneficiaries' injuries resulting from mismanagement by fiduciaries in the way Sections 17.10(g) and (f) suggest.

And even if there were a mechanism for making Cedeno financially whole through adjustments only to his individual account within the Plan, contrary to Defendants' claims, there is no legal way to provide many of the equitable remedies allowed by statute and sought by Cedeno without impacting the accounts of other plan participants and beneficiaries or binding the Plan Administrator and Trustee vis-à-vis other participants.  In addition to seeking restoration of *plan-wide losses*, Cedeno is also seeking relief that is by definition plan-wide, including a surcharge, accounting for profits, the imposition of a constructive trust on any funds wrongfully held by Defendants, and disgorgement of fees, earnings, or profits Argent received from the Transaction. These are plan-wide remedies that fall squarely within the scope of the relief Sections 409(a) and 502(a)(2) make available to plan participants.  *See* 29 U.S.C. § 1109(a); *see also Munro*, 896 F.3d at 1093-94 (holding *LaRue* could not allow defendants to limit plan participant plaintiffs to individualized relief in arbitration because "claims brought by the [plaintiffs] arise from alleged

fiduciary misconduct as to the Plans in their entireties and are not, as in *LaRue*, limited to mismanagement of individual accounts.").

The dissent's suggestion that Cedeno could, in fact, secure these kinds of plan-wide equitable relief in an individualized arbitration makes no sense. Dissent at 16-17. Echoing the Defendants, the dissent suggests that a plan participant like Cedeno could secure equitable relief such as replacement of the plan administrator (relief Cedeno does not seek in this case). But the Defendants argue (and the dissent suggests) that even an arbitral order for that relief would not be binding on the administrator or trustee "with respect to someone other than him." Oral Argument Transcript at 4; *see* dissent at 17-18. Whether Defendants would be precluded from declining to replace the plan administrator in the context of challenges by *other* participants would be another question for another court on another day. Oral Argument Transcript at 7. But ERISA doesn't contemplate different plan administrators for different participants within the same group; "plan administrator" is a unitary position. *See* 29 U.S.C. § 1002(16)(A) (defining the term "administrator" to mean "the person" specifically designated by the plan, "the plan sponsor" if no administrator is designated, or "such other person as the Secretary may by regulation prescribe"). Defendants' position that Cedeno could secure through individual arbitration equitable relief

that is plan-wide in nature, but that is not binding on any other participant, is

thus incoherent.

### C.  Sister Circuit Decisions

Our conclusion that the challenged provisions in the arbitration agreement

operate as an impermissible prospective waiver of Cedeno's substantive

statutory rights is bolstered by three decisions from our sister circuits in closely

analogous cases.  Each case involved provisions in arbitration agreements

seeking to compel individualized arbitration of Section 502(a)(2) claims and

limiting the remedies available in such arbitrations.  Two of those cases involved

language nearly identical to the contested arbitration provisions here.

First, in *Smith v. Board of Directors of Triad Manufacturing, Inc.*, the Seventh

Circuit held that a nearly identical individual arbitration provision could not be

enforced because it would prevent a plaintiff from vindicating statutory rights

guaranteed by ERISA under Section 502(a)(2).  13 F.4th 613, 615 (7th Cir. 2021).

The provision restricted each arbitration solely to a claimant's claims, and

prohibited claimants from seeking or receiving "any remedy which has the

purpose or effect of providing additional benefits or monetary or other relief to

any Eligible Employee, Participant or Beneficiary other than the Claimant."  *Id.* at

616.  Smith, an employee and beneficiary of his employer's benefit plan who

alleged fiduciary violations, sought "wide-ranging" relief under Section

502(a)(2), including removal of the plan's trustee, appointment of an

independent fiduciary, and "such other and further relief . . . that is equitable

and just." *Id.* at 617 (internal quotation marks omitted).

The *Smith* court, noting that the effective vindication doctrine applies

where "a provision in an arbitration provision forbid[s] the assertion of certain

statutory rights," concluded that the arbitration provision at issue had done just

that. *Id.* at 621 (quoting *Italian Colors*, 570 U.S. at 236) (internal quotation marks

omitted). The court explained:

> Recall that Smith invokes § [502](a)(2)'s cause of action to seek relief
> for (alleged) fiduciary breaches under § [409](a). That relief, by statute,
> includes "such other equitable or remedial relief as the court may
> deem appropriate, including removal of such fiduciary." Yet the
> plan's arbitration provision, which also contains a class action waiver,
> precludes a participant from seeking or receiving relief that "has the
> purpose or effect of providing additional benefits or monetary or
> other relief to any Eligible Employee, Participant or Beneficiary other
> than the Claimant." Removal of a fiduciary—a remedy expressly
> contemplated by § [409](a)—would go beyond just Smith and extend
> to the entire plan, falling exactly within the ambit of relief forbidden
> under the plan.

*Id.* at 621 (quoting 29 U.S.C. § 1109(a)). Thus, the arbitration provision acted as a

waiver of Smith's right to pursue statutory remedies, and the provision could not

be enforced. *Id.* The Seventh Circuit rejected the defendants' suggestion that it

must "harmonize" the FAA and ERISA in light of the strong federal policy favoring arbitration, observing, "the conflict in need of harmonization is not between the FAA and ERISA; it is between ERISA and the plan's arbitration provision, which precludes certain remedies that [Sections 502(a)(2) and 409(a)] expressly permit." *Id.* at 622-23.

It is true that *Smith* is distinguishable insofar as Cedeno does not seek removal of the plan fiduciary—Argent has already been replaced as the Plan's trustee. But Cedeno seeks other forms of plan-wide relief that would either benefit other participants or bind the Plan's administrator and trustee as to other participants, *see* App'x 41-42, so the reasoning in *Smith* is on point.

Similarly, in *Harrison v. Envision Management Holding, Inc.*, the Tenth Circuit held a nearly identical provision within an arbitration agreement was unenforceable when applied to a Section 502(a)(2) claim. 59 F.4th 1090, 1094 (10th Cir. 2023).[5] *Harrison*, like Cedeno, was a participant in a defined contribution retirement plan established by his former employer, for which Argent also served as trustee. *Id.* at 1093-94. *Harrison* alleged that the defendants, assisted by Argent, financially benefitted from the sale of their

---

[5] *Harrison* was issued after briefing and argument in this case, but the parties addressed its impact in Rule 28(j) letters before this Court.

company to their employee benefit plan for "significantly more than it was worth, while at the same time leaving the [plan] with a $154.4 million debt." *Id.* at 1095.  Harrison sued under Section 502(a)(2), seeking "plan-wide relief on behalf of the [plan]."  *Id.* at 1095.  He specifically sought, among other things, to enjoin the defendants from future violations of their fiduciary duties, to require them to disgorge their profits, and to remove Argent and appoint a new trustee. *Id.* at 1102.  The defendants moved to compel arbitration, again on the basis of a nearly identical set of arbitration provisions.  *See id.* at 1104-05.

The Tenth Circuit upheld the district court's denial of the defendants' motion to compel arbitration.  The court explained that the arbitration provision's "prohibition on class or collective actions" standing alone did not invalidate the arbitration agreement, *id.* at 1106, but it concluded that the contested arbitration provision effectively prevented Harrison from vindicating many of the statutory remedies that he sought under [Section] 502(a)(2).  *Id.* at 1101.  The court further observed that it was "not clear what remedies Harrison would be left with" if the arbitration provision was enforced as written.  *Id.* at 1107.

Finally, in *Henry on behalf of BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, the Third Circuit likewise declined to

47

enforce a provision in an arbitration agreement requiring individual arbitration

where a plan participant sought plan-wide remedies under Section 502(a)(2). 72

F.4th 499, 505-07 (3d Cir. 2023).

These decisions of our sister circuits reinforce our conclusion that Sections

17.10(f) and (g) are unenforceable with respect to Cedeno's Section 502(a)(2)

claims.[6]

---

[6] The parties spend much time in their briefing sparring over the significance of a pair of Ninth Circuit cases—one published, one not—that seem to point in opposite directions as to the arbitrability of Section 502(a)(2) claims. Neither case relies on the principle that provisions preventing a party from effectively vindicating statutory rights and remedies are unenforceable, but the reasoning in these cases also supports our holding.

In *Munro v. University of Southern California*, the Ninth Circuit concluded that an arbitration agreement could not be enforced as to a Section 502(a)(2) claim brought by plaintiffs seeking to recover plan losses caused by alleged mismanagement of retirement savings plans. 896 F.3d at 1090. The employer-defendant, USC, moved to compel arbitration on an individual basis, arguing among other things that its *employee agreements*—not, as here, the plan document—barred employees from litigating claims on behalf of the plan. *Id.* at 1091. The *Munro* court, analogizing to *qui tam* suits brought on behalf of the government, held that the employment agreement limiting employees to arbitrating their own individual claims did not cover the Section 502(a)(2) claims, which are brought for recovery "only for injury done for the plan." 896 F.3d at 1093. Accordingly, it held the arbitration agreement did not apply to the claims at issue. *See also Hawkins v. Cintas Corp.*, 32 F.4th 625, 634 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 564 (2023) (employee agreement containing individualized arbitration agreement did not apply to Section 502(a)(2) claims brought on behalf of employee benefit plan). To the extent *Munro* recognizes that Section 502(a)(2) claims brought *on behalf of the plan* as a whole cannot be remanded to individualized arbitration, we find it persuasive but not as closely analogous as *Smith*, *Harrison*, and *Henry*.

In contrast, in *Dorman v. Charles Schwab Corporation*, the Ninth Circuit concluded that a district court erred in refusing to compel arbitration of a Section 502(a)(2) claim. 780 F. App'x 510, 512 (9th Cir. 2019). The arbitration provision at issue was within a plan document, and the *Dorman* court did not consider an argument invoking the effective vindication doctrine. *See* 780 F. App'x at 513-14 (finding arbitration agreement enforceable under the FAA because plan consented to arbitration based on plan document). Because it does not address the primary argument at issue here, *Dorman* is not persuasive.

48

# CONCLUSION

For the reasons stated above, we conclude that Sections 17.10(f) and (g) are unenforceable. Section 17.10(h) of the Plan contains a non-severability clause providing that if a court finds the requirements of Sections 17.10(f) or 17.10(g) "unenforceable or invalid, then the entire Arbitration Procedure shall be rendered null and void in all respects." App'x 106. Accordingly, we conclude the entire arbitration provision is null and void, and we **AFFIRM** the district court's order denying the motion to compel arbitration.